UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02469-RM-MJW

RANDALL J. HATLEE and
RONALD L. SWIFT

Plaintiffs,
vs.

CINDY HARDEY,
BOBBI PRIESTLY,
MONTE GORE
FRED WEGENER and
ASHLEIGH OLDS,

Defendants.
_____

**PLAINTIFFS' FIRST AMENDED COMPLAINT AND JURY DEMAND**
_____

NOW COME the Plaintiffs, Randall J. Hatlee and Ronald L. Swift, by and through their attorney, Brice A. Tondre, and for their first amended complaint against Defendants named hereinafter state as follows:

**PARTIES**

1.  Plaintiff, Randall J. Hatlee ("Mr. Hatlee"), was at all relevant times engaged in horse ranching in Park County, Colorado

2.  Plaintiff Ronald L. Swift ("Mr. Swift") was at all relevant times engaged in horse ranching in Park County, Colorado.

3.  Defendant Cindy Hardey ("Deputy Hardey") was at all relevant times a law enforcement officer employed by the Park County Sheriff's Office.

4. Defendant Bobbi Priestly, who held the rank of Sergeant ("Sgt. Priestly"), was at all relevant times a law enforcement officer employed by the Park County Sheriff's Office and was the supervisor of Deputy Hardey.

5. Defendant Monte Gore, who was the Undersheriff ("Undersheriff"), was at all relevant times a law enforcement officer employed by the Park County Sheriff's Office and was the supervisor of Deputy Hardey and Sgt. Priestley.

6. Defendant Fred Wegener ("Sheriff Wegener") was at all relevant times the duly elected sheriff of Park County, Colorado. Sheriff Wegener is sued in both his official capacity and his individual capacity. He was involved in the investigation and decisions to seize Plaintiffs' property and prosecute them which are the subject of this action. The office of the sheriff was party to a contract with Plaintiffs which was breached.

7. Defendant Ashleigh Olds, D.V.M. ("Dr. Olds") is a licensed veterinarian whose baseless statements to the other Defendants, animal cruelty activists and the news media resulted in the seizure of Plaintiffs' property and their prosecution.

## JURISDICTION

8. This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1367 in that two of the causes of action alleged herein arise under the laws and constitution of the United States and the other causes of action are so related to the federal causes of action that they form part of the controversy under Article III of the United States Constitution.

## FACTS COMMON TO ALL CLAIMS

9. On February 13, 2012, Routt County officer Dawn Smith called Defendant Priestly and reported that, while conducting a follow-up at the Echo Valley Ranch of a matter

which resulted in a mare and a colt being brought to Echo Valley Ranch, she noted that seven of the other horses were very thin.

10. On February 14, 2012, Defendant Priestley informed Defendant Hardey of the report from Routt County officer Smith. Defendant Hardey arranged to do a welfare check of the horses at the Echo Valley Ranch on February 16, 2012.

11. On February 16, 2012, Defendants Hardey and Olds and Agent Smith arrived at Echo Valley Ranch. Defendant Olds was there to aid Agent Smith with the seizure of Bear and Defendant Hardey was there to conduct a welfare check of the other horses. Defendant Hardey found that seven of the horses were thin and that 34 were in good condition, that one of the seven thin horses was down and under the care of a veterinarian and that the seven thin horses had hay and water available.

12. Bear was to be transported to Defendant Olds' clinic for evaluation and treatment. Defendant Olds demanded that the seven thin horses be ordered seized by Defendant Hardey and taken to Dr. Olds' clinic for evaluation. Without factual basis or investigation, Defendant Olds stated that the seven thin horses had been starved, mistreated and were suffering from neglect. Defendant Olds made this demand these statements without conducting the requisite evaluation of the horses pursuant to the Henneke Body Condition Scoring System, without interviewing Messrs. Hatlee and Swift with respect to their belief regarding why the seven horses were thin, without contacting the veterinarian for the herd and without developing a differential diagnosis, all of which was below the standard of care for a veterinarian.

13. Dr. Olds statement that the seven thin horses and Bear had been starved, mistreated and were suffering from neglect was below the standard of care for a veterinarian. She failed to

3

establish a differential diagnosis and evaluate each potential cause of the condition of the eight horses. Faced with a herd of 40 horses, 32 of which are in excellent condition, starvation, mistreatment and neglect had to be low on the differential list of any reasonably trained veterinarian. Dr. Olds purports to have ruled out botulism in Bear but did nothing to rule out other toxic causes of the condition of the eight horses. This was below the standard of care for a veterinarian. Making a report to the Park County Sheriff's Office that the eight horses were starved, mistreated and suffering from neglect was without reasonable cause to know or suspect that the statement was true. Ultimately, after reasonable professional investigation, it was determined that the probable cause of the illness of the seven horses was the consumption of toxic weeds.

14. Dr. Olds was acting under color of state law, to wit C.R.S. §12-64-121, when she made the false statements to the Sheriff's Office.

15. Dr. Horton, the herd veterinarian, was of the opinion that much more analysis had to be done before a conclusion as to what was causing the condition of the seven horses could be reached.

16. Defendant Olds' demands were reported to Defendant Priestley who instructed Defendant Hardey to tell Defendant Olds to leave with the horse being seized by Agent Smith.

17. Defendant Priestly then conferred with Kate Anderson, D.V.M., a Colorado Department of Agriculture veterinarian, Scott Dutcher, chief investigator with the Bureau of Animal Protection, Dr. Britt of Rocky Top Veterinary Services and Defendant Hardey, all of whom agreed that the appropriate thing to do was to issue a notice of warning and leave the seven horses in the care of the Plaintiffs, giving Plaintiffs thirty days to demonstrate that the

horses were not being mistreated. Defendant Hardey did not believe that leaving the horses with Plaintiffs would endanger them and, based upon unanimous agreement, issued the warning.

18. Defendant Olds was infuriated by the decision to allow the seven horses to remain under the care of Messrs. Hatlee and Swift. After returning to her clinic, Dr. Olds contacted Channel 7 News and Harmony HorseWorks and made her unsubstantiated claims of animal cruelty for the purpose of generating an outcry from Harmony Horse Works, a major client of Dr. Olds. Her intent was to cause an outcry which would force the Sheriff's Office to seize the seven horses and place them in Dr. Olds' care. Her unsubstantiated claims were broadcast on the evening and night of the day after she made the demand for seizure of the seven horses. Dr. Olds on February 16, 2012 at 4:35 p.m. by e-mail to Defendant Hardey again made the still unfounded statement that the horses were suffering from a "very clear cut case of starvation and malnutrition"

19. When Harmony HorseWorks became aware of the consensus decision of the Park County Sheriff's Office and the Department of Agriculture, in reliance on the opinions of and at the urging of Defendant Olds, it mounted an outcry demanding that the horses be removed from the management of the Plaintiffs. In the words of Harmony HorseWorks on February 18, 2012, "wait and see what happens after the email blast goes out." This outcry was directed at Defendants Wegener and Gore, the sheriff and undersheriff, who succumbed to the political pressure and asked Defendants Priestly and Hardey to arrange for removal of the six horses from Echo Valley Ranch. One of the horses died on February 16, 2012, from an abscess of the heart which was established by necropsy to not be the result of malnutrition or neglect.

20. In consideration for agreeing to move the six horses into protective custody, the

Sheriff's Office, acting through Defendants Wegener, Gore, Priestly and Hardey, agreed to allow the horses to remain under the management and control of Plaintiffs for 30 days, thus allowing them to demonstrate that they were not abusing or neglecting the horses. The Sheriff's Office hoped and believed that this agreement would satisfy the activists and relieve it of the need to head off a nasty and potentially violent confrontation.

21. On February 19, 2012, Defendant Hardey requested that Plaintiffs place the six horses in protective custody. The Plaintiffs agreed to place them in the custody of Kirsten LeBeau.

22. The protective agreement did not satisfy Harmony HorseWorks, which was emboldened by the unsupported conclusions of Dr. Olds. Harmony HorseWorks continued to cry out for the Park County Sheriff's Office to seize the six horses. Defendant Olds joined in the outcry and advocated prosecution of Plaintiffs for animal cruelty. Defendant Hardey remained of the opinion that leaving the horses with the owners would not endanger them.

23. On February 21, 2012, Defendant Priestley received a call from Dr. Horton, D.V.M., Plaintiffs' treating veterinarian who told her that it was not clear what caused the weight loss in the six horses and that a lot of testing needed to be done in order to determine the cause.

24. On February 22, 2012, Defendant Hardey, at the direction of Defendants Wegener Gore and Priestley, who again succumbed to the political pressure, sought and received a warrant to seize the six horses from Plaintiffs. Defendant Hardey's affidavit in support of the request for a warrant was a breach of the protective custody agreement and failed to inform the judge who issued the warrant of material facts. The affidavit failed to inform the judge who issued the warrant: (1) that there was an agreement to leave the horses in the care and custody of the

Plaintiffs for 30 days in order to allow them to demonstrate that the horses were not neglected; (2) that two veterinarians and a Department of Agriculture official agreed that the agreement was reasonable; (3) that the horses were well treated at the facility where they were housed; (4) that the horses were not in danger where they were housed; and (5) that the true intent of the seizure was to silence the protestations of Dr. Olds and Harmony HorseWorks. The judge who presided over the prosecution of the Plaintiffs found that the omissions were material, made in bad faith and would have led to refusal to issue the warrant if disclosed to the issuing judge.

25.     Defendants Priestly, Gore and Wagener, despite their knowledge that seizure of the horses was not permissible under the facts or the law, directed Defendant Hardey to obtain a warrant. They undertook this approach in hopes that it would prevent Harmony HorseWorks and its followers from taking matters into their own hands which they were threatening to do if the Sheriff's Office did not act to their satisfaction. Said Defendants failed to take the proper course of prosecuting those who were threatening a breach of the peace. This was an attack on the innocent to avoid prosecuting the guilty.

26.     On February 23, 2012, Defendants Hardey and Priestly executed the warrant and issued summonses charging each Plaintiff with animal cruelty. Both the warrant and the summonses were without probable cause to believe that the crime of animal cruelty had been committed.

27.     Seizure of the six horses deprived Plaintiffs of evidence material to their avoidance or defense of a charge of animal cruelty.

28.     During the course of the seizure which was from February 23, 2012 until April 10, 2012, one of the seized horses, Echo, was permanently disabled as a result of being overfed

alfalfa.

29. During the course of the prosecution of the charges against the Plaintiffs the court held that the warrant authorizing the seizure of the six horses was in violation of applicable Colorado law, without probable cause and was procured by bad faith omissions. The court ordered the horses returned to Plaintiffs and suppressed all evidence which was the fruit of the seizure.

30. Throughout the course of the investigation and prosecution the Sheriff's Office deviated from its usual and customary practice of refusing to disclose the fruits of its investigation to anyone other than the District Attorney and the defendant. The Sheriff's Office provided documents to Harmony HorseWorks for fundraising projects and to prepare a documentary film in which Defendant Olds broadcast her baseless claims and supported the fund raising efforts of Harmony HorseWorks. This was done for the political benefit of Sheriff Wagener the District Attorney.

31. The charges against the Plaintiffs were tried to a jury which found them not guilty.

## FIRST CLAIM FOR RELIEF

32. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 31 above.

33. At all times relevant to the claims asserted herein, each Defendant was acting under color of state law.

34. The Defendants, acting in concert, obtained a warrant which they used to seize the six horses owned by Plaintiffs. The warrant was issued without probable cause in that it was based on material omissions in violation of the Fourth Amendment to the United States

Constitution. Obtaining a warrant under these circumstances was a clearly established violation of the Fourth Amendment to the Constitution of the United States.

35. Pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to recover damages caused by the violation of their rights not to have their property unreasonably seized in violation of the Fourth Amendment to the United States Constitution. Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to recover their attorney's fees and costs incurred in prosecuting this action.

36. The unreasonable seizure of Plaintiffs' property severely injured them emotionally and caused them severe humiliation, embarrassment and loss of their good reputation.

37. As a direct and proximate result of the conduct of the Defendants herein Plaintiffs have suffered emotional injuries, economic and non-economic damages, embarrassment and humiliation and loss of their good reputation.

38. The conduct of the Defendants was in reckless and callous indifference to Plaintiffs' federally protected rights justifying the award of punitive damages.

## SECOND CLAIM FOR RELIEF

39. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 38 above.

40. At all times relevant to the claims asserted herein, each Defendant was acting under color of state law.

41. The conduct set forth above constitutes malicious prosecution of Plaintiffs by each of the Defendants in that it was done knowing it was without probable cause and was being done for political and economic purposes. As such, their conduct was malicious. The misconduct reaches constitutional proportions because the Defendants utilized misstatements and

omissions of material facts in order to initiate and continue the legal process to attempt to take Plaintiffs' property and their freedom. It was clearly established that malicious prosecution under color of state law is a violation of the Fourth Amendment to the Constitution of the United States

42. The prosecution of Plaintiffs was terminated in their favor on the merits.

43. Pursuant to 42 U.S.C. §1983, Plaintiffs are entitled to recover damages caused by the violation of their rights not to be maliciously prosecuted on the basis of false statements and material omissions in violation of the Fourth Amendment to the United States Constitution. Pursuant to 42 U.S.C. §1988, Plaintiffs are entitled to recover their attorney's fees and costs incurred in prosecuting this action.

44. The malicious prosecution of Plaintiffs severely injured them emotionally and caused them severe humiliation, embarrassment and loss of their good reputation.

45. As a direct and proximate result of the conduct of the Defendants herein, Plaintiffs have suffered emotional injuries, economic and non-economic damages and embarrassment, humiliation and loss of their good reputation.

46. The conduct of Defendants was in reckless and callous indifference to Plaintiffs' federally protected rights justifying the award of punitive damages.

**THIRD CLAIM FOR RELIEF**

47. Plaintiffs incorporate by reference the allegations contained in paragraph 1 through 46 above.

48. On February 19th, 2012, the Park County Sheriff's Office entered into an agreement with Plaintiffs to place the six horses in protective custody. This agreement was to protect Plaintiffs and their horses during the thirty days which Plaintiff were given by the Notice

of Warning to rectify the condition of the six horses and show that their condition was not due to neglect.

49. Sheriff Wegener and/or Undersheriff Gore authorized the contract in order to satisfy Dr. Olds and Harmony HorseWorks, silence their outcry, relieve the Sheriff's Office from criticism by them and prevent a breach of the peace which was being threatened.

50. On February 23, 2013, the agreement was breached by the Park County Sheriff's Office which caused the horses to be seized.

51. This seizure deprived Plaintiffs of the opportunity to rectify the condition of the six horses and demonstrate that their condition was not caused by neglect.

52. The breach resulted in the Plaintiffs' horses being seized and the Plaintiffs being charged with animal cruelty, a charge of which they were found not guilty.

53. As a consequence of the breach, Plaintiffs suffered economic damages.

## FOURTH CLAIM FOR RELIEF

54. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 53 above.

55. The criminal case was brought against the Plaintiffs and six of their horses seized on the basis of statements made by Defendant Olds which caused an outcry that resulted in the seizure and prosecution. Throughout the prosecution, Defendant Olds pressed the Park County Sheriff's Office and District Attorney to persist in the prosecution despite knowing that her claim that seven horses had been the subject of cruelty was without foundation and was done for her economic benefit. Dr. Olds harbored a grudge against Mr. Swift because he refused her request that he recommend her services to horse owners who patronized his feed store.

56. Defendant Olds' statements were false and unfounded and therefore without probable cause.

57. Defendant Olds was motivated by malice in that her motive was other than to bring justice to persons she thought had committed a crime. She was economically motivated.

58. The criminal case ended in favor of the Plaintiffs.

59. As a direct and proximate result of Defendant Olds' conduct Plaintiffs suffered economic and non-economic damages, embarrassment, humiliation and loss of their good reputation.

60. The conduct of Defendant Olds was willful, wanton and reckless justifying the award of punitive damages.

WHEREFORE, Plaintiffs prays that the Defendants be cited to appear and answer herein and that upon trial of this matter Plaintiffs be awarded judgment for the damages found by the trier of fact, both compensatory and punitive, that they be awarded their attorney's fees and costs incurred in prosecuting this action, pre and post judgment interest allowed by law and that they be granted such other and further relief as the Court deems appropriate in the circumstances.

**PLAINTIFF DEMANDS TRIAL TO A JURY GUARANTEED BY THE CONSTITUTION OF THE UNITED STATES AND PRESERVED BY RULE 38 F.R.C.P.**

/s/ Brice A. Tondre

_____
Brice A. Tondre
215 South Wadsworth Blvd., #500
Lakewood, Colorado   80226
Telephone:  303-296-3300
Facsimile: 303-238-5310
briceatondrepc@msn.com

ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

  I hereby certify that a true an correct copy of the foregoing was served on counsel for the Defendants this 1st day of November, 2013, addressed as follows:

Timothy P. Schimberg
t_schimberg@fsf-law.com

Andrea M. Bronson
a_bronson@fsf-law.com

John Lebsack
jlebsack@wsteele.com

/s/ Brice A. Tondre<br>_____