UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02469-RM-MJW

RANDALL J. HATLEE and
RONALD L. SWIFT

Plaintiffs,

vs.

CINDY HARDEY,
BOBBIE PRIESTLY,
MONTE GORE
FRED WEBENER and
ASHLEIGH OLDS,

Defendants

---

### DEFENDANT OLDS' MOTION TO DISMISS CLAIMS AGAINST HER IN AMENDED COMPLAINT

---

Defendant Ashleigh Olds ("Dr. Olds"), through her counsel John Lebsack, moves to dismiss the claims against her in the Amended Complaint [*Docket #22*] for failure to state a claim pursuant to Fed.R.Civ.P. 12(6). In support, Dr. Olds states:

#### I.  SUMMARY

This case arises from criminal charges of animal cruelty to six horses owned by plaintiffs. Dr. Olds is a licensed veterinarian. The other defendants worked for the Park County Sheriff. Plaintiffs were charged with animal cruelty but acquitted. Plaintiffs now claim that Dr. Olds made improper statements to the Sheriff's Office and caused a public outcry that led to seizure of their horses and prosecution for animal cruelty.

1

The amended complaint asserts the same four claims against all defendants. In summary, those claims are (1) violation of 42 U.S.C. §1983 because of improper seizure of horses based on a defective warrant, (2) violation of 42 U.S.C. §1983 because of malicious prosecution for animal cruelty, (3) breach of contract by the Park County Sheriff's Office; and (4) a state law malicious prosecution claim against Dr. Olds alleging that she made false statements which caused an outcry that pressured the Sheriff's Office and District Attorney into charging plaintiffs with animal cruelty.

Each claim fails to state a claim for relief against Dr. Olds. The first and second claims are barred by the doctrine of qualified immunity. The third claim fails because Dr. Olds was not a party to the contract. The fourth claim fails because the pleading fails to allege facts that would avoid operation of a Colorado statute that creates a presumption that Dr. Olds acted in good faith, C.R.S. § 12-64-121(1) (2013).

Dr. Olds filed a motion to dismiss the original complaint [*Docket #1, #11*]. Within the time allowed for an amendment without leave of court, plaintiffs filed an amended complaint [*Docket #22*]. Because the amended complaint supersedes the original complaint, it is not necessary for the Court to consider the first motion to dismiss. The instant motion addresses the operative claims against Dr. Olds.

II.    ALLEGATIONS OF AMENDED COMPLAINT

The following allegations of the amended complaint are pertinent to the claim against Dr. Olds [*Docket #22*]. She is a licensed veterinarian (¶7). The other defendants are employees of the Park County Sheriff's Office (¶¶3-6). Plaintiffs allege that Dr. Olds made "baseless statements" to the other defendants, animal cruelty activists, and the news media, resulting in the

seizure of six horses from plaintiffs and prosecution of plaintiffs for animal cruelty (¶6, ¶24, ¶26).

There is no allegation that Dr. Olds was an employee or agent of Park County, or that she provided any law enforcement or prosecutorial services. Instead, the allegation is that Dr. Olds acted in her personal capacity in providing veterinarian services (¶12, ¶13). But the allegation is not that Dr. Olds provided those services to, or at the request of, Park County. Rather, the allegation is that Dr. Olds did so to "aid" an officer from Routt County. Plaintiffs allege that Dr. Olds was at the plaintiffs' ranch on February 16, 2012 "to aid Agent Smith with the seizure of Bear." (¶11) Agent Smith was an officer from **Routt** County who three days earlier (February 13) had conducted "a follow-up at the Echo Valley Ranch of a matter which resulted in a mare and a colt being brought to Echo Valley Ranch…."[1] (¶9). Office Smith, three days earlier, had seen that seven horses at the ranch were "very thin." (¶9) There is no allegation that Routt County seized anything from plaintiffs or that Routt County prosecuted them; plaintiffs allege that Park County did the seizure (¶34) and the prosecution (¶41).

Officer Smith reported her observation of February 13 to Sergeant Priestly of the Park County Sheriff's Office (¶9). Sergeant Priestly told Deputy Hardey of the Park County Sheriff's Office, and Deputy Hardey then arranged to do a welfare check of the horses (¶10). That occurred on February 16, 2012, and plaintiffs describe the purpose of the visit to their ranch as follows: "Defendant Olds was there [Echo Valley Ranch] to aid Agent Smith with the seizure of

---

[1] The amended complaint does not specifically identify "Echo Valley Ranch" as the plaintiffs' ranch in Park County, but there is only one "ranch" referred to in the pleading, and plaintiffs state they are "engaged in horse ranching in Park County, Colorado." (¶1, ¶2)

3

Bear and Defendant Hardey was there to conduct a welfare check of the other horses." (¶11) Deputy Hardey, like Officer Smith before her, found that seven horses were "thin." (¶11)

Although plaintiffs do not allege Dr. Olds was at the ranch to assist the Park County authorities, they allege that Dr. Olds demanded that Deputy Hardey take this action: "that the seven thin horses be ordered seized by Defendant Hardey and taken to Dr. Olds' clinic for evaluation." (¶12) The reason for this alleged demand was Dr. Olds' statement that the horses "had been starved, mistreated and were suffering from neglect." (¶12) Plaintiffs allege that making this statement was "below the standard of care for a veterinarian." (¶13)

This alleged statement is also the basis for plaintiffs' allegation that Dr. Olds was acting under color of state law. Plaintiffs allege that "Dr. Olds was acting under color of state law, to wit C.R.S. §12-64-121, when she made the false statements to the Sheriff's Office." (¶14) This Colorado statute, discussed in more detail below, requires a veterinarian, if she encounters suspected animal cruelty while attending or treating an animal, to report that to local authorities. The amended complaint does not allege that the statement itself was the action that violated 28 U.S.C. §1983; it alleges that the statement *led* to seizure of property and prosecution that violated §1983. Although plaintiffs allege the statement was false, there is no claim based on the statement per se, only on the actions that allegedly resulted from the statement (seizure and prosecution).

Plaintiffs next allege that the "demands" by Dr. Olds were reported to Defendant Sergeant Priestley, who instructed Deputy Hardey to tell Dr. Olds "to leave with the horse being

4

seized by Agent Smith [of Routt County]."  (¶16).[2] That is, the statement by Dr. Olds at the ranch did not cause Park County itself to take any action beyond allowing Dr. Olds to leave with the horse that Routt County was seizing (¶11, ¶12, ¶16).

That is the end of allegations in the amended complaint concerning Dr. Olds' actions or statements at the ranch.  The allegations then turn in a different direction:  that Dr. Olds was involved in creating a public outcry to force the Park County Sheriff's Office to seize the seven "thin" horses that were still at the ranch (¶18, ¶19).  There is nothing in these allegations that Dr. Olds acted under color of state law.  Instead, plaintiffs allege that Dr. Olds, after returning to her clinic, "contacted Channel 7 News and Harmony HorseWorks and made her unsubstantiated claims of animal cruelty for the purpose of generating an outcry from Harmony HorseWorks, a major client of Dr. Olds."  (¶18)

Plaintiffs then allege there was an outcry demanding removal of the horses from plaintiffs, but they do not allege that Dr. Olds mounted the outcry.  Rather, they allege that "When Harmony HorseWorks became aware of the consensus decision of the Park County Sheriff's Office and the Department of Agriculture [to leave the seven horses at the ranch], in reliance on the opinions of and at the urging of Defendant Olds, it [Harmony HorseWorks] mounted an outcry demanding that the horses be removed from the management of the plaintiffs."  (¶19)  That is, plaintiffs do not allege that Dr. Olds mounted the outcry, only that she urged another person to mount an outcry, and that person relied on Dr. Olds' opinions.  Plaintiffs then allege that Park County officials "succumbed to the political pressure" and decided to take

---

[2] There are a total of seven horses involved in the case.  (¶¶11-12).  One was named Bear and was to be seized during the first visit to plaintiff's property by Dr. Olds and Deputy Hardey on February 16 (¶11).  Six other horses were seized on February 23 pursuant to a warrant (¶¶20-21).

the horses from plaintiffs and put them into protective custody (¶19). Plaintiffs allege Harmony HorseWorks was not happy with protective custody and continued to "cry out" for the Park County Sheriff's Office to seize the horses (¶22). Plaintiffs allege that Dr. Olds "joined in the outcry and advocated prosecution of Plaintiffs for animal cruelty." (¶22) That is, the allegation is that Dr. Olds joined in the political pressure on the sheriff's office.

The next step, according to plaintiffs, was a warrant for seizure of the horses. This happened on February 22, 2012, when members of the sheriff's office "who again succumbed to the political pressure" directed Deputy Hardey to obtain a warrant for seizure of the horses (¶24). Plaintiffs do not allege that Dr. Olds was involved in obtaining the warrant. Rather, they allege that the affidavit failed to inform the judge of several things, including "that the true intent of the seizure was to silence protestations of Dr. Olds and Harmony HorseWorks" (¶24).

There is no allegation that Dr. Olds was involved in executing the warrant or in preparing the summons charging plaintiffs with animal cruelty (¶26). Nor is there any allegation that Dr. Olds was involved in the prosecution of those charges (¶29, ¶30). The only allegation that Dr. Olds did anything during the prosecution concerns a documentary film "in which Defendant Olds broadcast her claims and supported the fund raising efforts of Harmony HorseWorks" (¶30).

Based on these factual allegations, the amended complaint then states four claims: (1) a claim against all defendants under §1983 alleging the warrant violated the Fourth Amendment; (2) a claim against all defendants under §1983 based on malicious prosecution; (3) a breach of contract claim alleging the sheriff's department breached its agreement with plaintiffs to place

6

the horses in protective custody; and (4) a state law malicious prosecution claim against Dr. Olds.   Each claim will be addressed separately below.

### III.    STANDARD FOR MOTION TO DISMISS

A plaintiff's claim must be "plausible on its face" in order to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face.").  "The concept of 'plausibility' at the dismissal stage refers not to whether the allegations are likely to be true; the court must assume them to be true.  The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." *Christy Sports, LLC v. Deer Valley Resort Co., Ltd*., 555 F.3d 1188, 1191-92 (10th Cir. 2009) (citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)).

The Supreme Court later clarified the plausibility rule:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (U.S. 2009) (citations omitted). "Determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1950.

Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id*. at 1949.  The *Iqbal* evaluation requires two prongs of analysis.  First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory.  *Id*. at 1949-51.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id*. at 1950.

The court need not accept conclusory allegations without supporting factual averments.  *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1940.

### IV.   ARGUMENT:  AMENDED COMPLAINT FAILS TO STATE PLAUSIBLE CLAIMS AGAINST DR. OLDS

#### A.   No Valid §1983 Claim Against Dr. Olds Based on Seizure of Horses

The first claim is based on 42 U.S.C. §1983 as applied to the seizure of the horses:

> 34.  The Defendants, acting in concert, obtained a warrant which they used to seize the six horses owned by Plaintiffs.  The warrant was issued without probable cause in that it was based on material omissions in violation of the Fourth Amendment to the United States Constitution.  Obtaining a warrant under these circumstances was a clearly established violation of the Fourth Amendment to the Constitution of the United States.

This claim against Dr. Olds fails for two reasons. First, the factual allegations do not support a claim that is "plausible on its face" that Dr. Olds committed any act under color of state law in regard to the issuance of the warrant. Second, even if one assumes she acted under color of state law, she is protected by qualified immunity.

**No Action by Dr. Olds Under Color of State Law**. This claim against Dr. Olds fails because individual liability under §1983 must be based on personal involvement in the alleged constitutional violation. *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Section 1983 "is not itself a source of substantive rights but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266 (1994).

Dr. Olds did not obtain the warrant; the sheriff's department did. There is no allegation that she acted as agent or employee of the Park County Sheriff's Department in regard to the warrant or anything else. Her only alleged involvement with the official duties of any sheriff's office was *Routt* County, not Park County (¶11, "Defendant Olds was there to aid Agent Smith"). There is no allegation that Dr. Olds performed any law enforcement or prosecutorial actions. She is only alleged to have provided veterinary services at the ranch, and after leaving the ranch she supposedly contacted a television station and Harmony HorseWorks, making "unsubstantiated claims of animal cruelty for the purpose of generating outcry from Harmony HorseWorks…." (¶18) The veterinary services at the ranch do not support a §1983 claim based on a subsequent seizure of the horses; the seizure was based on an affidavit by Deputy Hardey. There is no allegation that Dr. Olds was involved in preparing or submitting the affidavit; her only alleged connection to the affidavit is by omission—that the affidavit failed to point out that the true intent of the seizure was to silence the protestations of Dr. Olds and others. (¶24)

The only express allegation of state action by Dr. Olds refers to C.R.S. § 12-64-121. (¶14) That statute provides that if a veterinarian encounters a case of animal cruelty, she has a duty to report it to local authorities:

> A licensed veterinarian who, during the course of attending or treating an animal, has reasonable cause to know or suspect that the animal has been subjected to cruelty in violation of section 18-9-202, C.R.S., or subjected to animal fighting in violation of section 18-9-204, C.R.S., shall report or cause a report to be made of the animal cruelty or animal fighting to a local law enforcement agency or the bureau of animal protection.

C.R.S. § 12-64-121(1) (2013).[3] If this reporting is assumed to be action under color of law, then plaintiffs still must show their constitutional rights were violated by the report. They do not make that allegation. Their claim is that the seizure of horses violated their rights. A report under the statute is not a seizure. Arguably a report can lead to a seizure of property or prosecution *by others*, but the report itself did not violate any constitutional rights. A false report of animal cruelty to local authorities does not involve a constitutional deprivation. *Brayman v. United States*, 96 F.3d 1061, 1066 (8th Cir. 1996) ("it is well established that defamation or injury to reputation by itself does not state a constitutional deprivation")

---

[3] The crime of animal cruelty includes the following: "A person commits cruelty to animals if he or she knowingly, recklessly, or with criminal negligence…deprives of necessary sustenance,…allows to be housed in a manner that results in chronic or repeated serious physical harm,…or otherwise mistreats or neglects any animal, or causes or procures it to be done, or, having the charge or custody of any animal, fails to provide it with proper food, drink, or protection from the weather consistent with the species, breed, and type of animal involved, or abandons an animal." C.R.S. 18-9-202(1)(a) (2013).

Plaintiffs also misconstrue the statute as creating state action. The statute does not authorize any action on behalf of the government—it requires action by a private citizen (a report to authorities). Plaintiffs' claim twists the statute as saying, "if a veterinarian observes animal cruelty, the veterinarian shall seize the affected animals."

The allegation is that Dr. Olds was involved in applying political pressure on the sheriff's office to seize the horses—but expressing one's First Amendment rights does not qualify as action under color of state law for purposes of §1983. The alleged outcry was not done from an official position, but as a private citizen. This claim fails for lack of a plausible claim that the warrant was somehow caused by actions that Dr. Olds took under color of state law. "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law. 42 U.S.C. § 1983. Anyone whose conduct is 'fairly attributable to the state' can be sued as a state actor under § 1983." *Filarsky v. Delia*, 132 S. Ct. 1657, 1661 (U.S. 2012), citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982). *Filarsky* illustrates why there was no state action here. In *Filarsky*, a municipality hired a private attorney to investigate an employment issue: "Filarsky was an experienced employment lawyer who had previously represented the City in several investigations." 132 S. Ct. at 1660. Here, there is no allegation that Park County hired Dr. Olds to do anything, and even assuming that Dr. Olds performed veterinary services at the ranch at the request of a state entity, she didn't seize anything.

There is no plausible claim that any conduct by Dr. Olds was fairly attributable to the state. Under the allegations, her appearance at the ranch was not for Park County, and her subsequent actions were to apply political pressure on the sheriff's office.

**Qualified Immunity Applies to Dr. Olds.** Regardless of the lack of state action, this claim also fails because of qualified immunity. Assuming for argument that Dr. Olds acted under color of state law, she is nonetheless entitled to qualified immunity from civil liability unless her actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039; 97 L. Ed. 2d 523; 531 (U.S. 1987).

There is no basis to contend that a reasonable person would have known that Dr. Olds' actions violated clearly established statutory or constitutional rights. At most, plaintiffs have alleged that she made a false report of animal cruelty and then participated in an effort to apply political pressure on the sheriff's office to seize the horses. If this was a violation of the plaintiffs' rights, it was not a violation of clearly established rights of which a reasonable person would have known. Qualified immunity is determined based on an objective standard, and bare allegations of malice are insufficient to survive a motion to dismiss. *Harlow v. Fitzgerald*, 457 U.S. 800, 817-818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). There is nothing in the amended complaint that would support a conclusion that Dr. Olds violated any clearly established law. *Pearson v. Callahan*, 129 S. Ct. 808, 816, 129 S. Ct. 808; 172 L. Ed. 2d 565, 573 (2009) ("the court must decide whether the right at issue was 'clearly established' at the time

of defendant's alleged misconduct"); *Stanton v. Sims*, 2013 U.S. LEXIS 7773 (U.S. Nov. 4, 2013) ("existing precedent must have placed the statutory or constitutional question beyond debate").

### B.   No Valid §1983 Claim Against Dr. Olds Based on Malicious Prosecution

For the same reasons discussed in the previous section (lack of state action and qualified immunity), the claim against Dr. Olds under §1983 for malicious prosecution also fails.  Like the §1983 claim based on the warrant, the malicious prosecution claim fails because of the lack of any factual allegation indicating that Dr. Olds acted under color of state law in regard to the prosecution of the criminal charges against the plaintiff.  In this claim, plaintiffs allege that each defendant was acting under color of law (¶40), but they offer no facts to support that conclusory statement against Olds, except by incorporation of their earlier allegation that Dr. Olds was acting under state law "to wit C.R.S. §12-64-121" (¶14).  As discussed in the previous section, this reporting statute does not create state action; moreover, a false report of animal cruelty does not involve a constitutional deprivation.  *Brayman, supra*; *Novitsky v. City of Aurora*, 491 F.3d 1244, 1257 (10th Cir.. 2007) ("when addressing § 1983 malicious prosecution claims, we use the common law elements of malicious prosecution as the 'starting point' of our analysis; however, the ultimate question is whether plaintiff has proven the deprivation of a constitutional right").

Also as discussed, the allegation is that Dr. Olds was at the ranch to aid Routt County, not Park County; after that, her alleged actions were to apply political pressure on the sheriff, not to act under color of state law.

13

### C.   No Breach of Contract Claim Against Dr. Olds

The third claim for relief is for breach of contract, but it does not allege that Dr. Olds was a party to the contract (¶¶47-53).  The only alleged contract was between plaintiffs and the Park County Sheriff's Office:  "On February 19th, 2012, the Park County Sheriff's Office entered into an agreement with Plaintiffs to place the six horses in protective custody."  (¶48)  The only alleged breach was by the sheriff's office:  "On February 23, 2013, the agreement was breached by the Park County Sheriff's Office which caused the horses to be seized."  (¶50).

Because Dr. Olds was not a party to the contract, this claim against her should be dismissed.

### D.   State Law Malicious Prosecution Claim Fails

The fourth claim for relief (¶¶54-60) is for malicious prosecution under Colorado common law.  *Hewitt v. Rice*, 154 P.3d 408, 411 (Colo. 2007).  The basis of the claim is this paragraph:

> 55.   The criminal case was brought against the Plaintiffs and six of their horses seized on the basis of statements made by Defendant Olds which caused an outcry that resulted in the seizure and prosecution. Throughout the prosecution, Defendant Olds pressed the Park County Sheriff's Office and District Attorney to persist in the prosecution despite knowing that her claim that seven horses had been the subject of cruelty was without foundation and was done for her economic benefit.  Dr. Olds harbored a grudge against Mr. Swift because he refused her request that he recommend her services to horse owners who patronized his feed store.

The claim does not identify the precise "statements" at issue; but by incorporation, the claim adopts allegations made earlier in the pleadings. Those allegations are that Dr. Olds made "statements" to the Park County Sheriff's Office that the plaintiffs' horses were "starved, mistreated and were suffering from neglect." (¶12, ¶13)

These statements are privileged under Colorado law. Colorado law imposes both duties and protections for licensed veterinarians in regard to reporting animal cruelty. Quoted above is the statutory provision requiring veterinarians to report suspected animal cruelty cases to local authorities. C.R.S. § 12-64-121(1) (2013).

Corresponding to this duty to report is immunity for making such reports in good faith:

> A licensed veterinarian who in good faith reports a suspected incident of animal cruelty or animal fighting to the proper authorities in accordance with subsection (1) of this section shall be immune from liability in any civil or criminal action brought against the veterinarian for reporting the incident.

C.R.S. § 12-64-121(4) (2013). That section also creates a presumption of the veterinarian's good faith:

> In any civil or criminal proceeding in which the liability of a veterinarian for reporting an incident described in subsection (1) of this section is at issue, the good faith of the veterinarian shall be presumed.

To apply this statutory immunity, there are three elements: (1) Dr. Olds must be a licensed veterinarian (2) who reported in good faith (3) a suspected incident of animal cruelty or animal fighting (4) to the proper authorities. The amended complaint alleges the first and third these

15

elements:  Dr. Olds is a licensed veterinarian, her alleged statements concerned an incident of animal cruelty, and she made statements to the Park County Sheriff's Office.

As for the second element of applying the immunity, the factual allegations do not overcome this presumption of good faith.  In identifying the parties, the amended complaint alleges that Dr. Olds made "baseless statements" to the Sheriff's office that resulted in the prosecution (¶7).  Later the amended complaint gives details about what Dr. Olds allegedly said.  Plaintiffs allege that while she was at plaintiffs' ranch on February 16, Dr. Olds said "the seven thin horses had been starved, mistreated and were suffering from neglect."  (¶12)  The Sheriff's office did not seize the horses and charge the plaintiffs because of this statement.  As plaintiffs allege, Deputy Hardey decided on February 16 to leave the horses with the plaintiffs for 30 days (¶17).  The decision to seize and charge happened several days later.  The warrant to seize the horses was issued on the basis of the Hardey affidavit prepared on February 22 but there is no allegation that Dr. Olds was involved in preparing that affidavit (¶24).  To the contrary, plaintiffs allege that the affidavit was prepared at the direction of the Sheriff, Undersheriff, and Sergeant. (¶24)

The only allegations relating to whether Dr. Olds had a good faith basis for the report are that she "harbored a grudge against Mr. Swift" (¶55) and "was economically motivated."  (¶57) These conclusory allegations are apparently aimed at satisfying the element of a malicious prosecution claim under Colorado law that the "defendant's statement against plaintiff was motivated by malice towards the plaintiff."  CJI-Civ. 17:1.  These allegations do not overcome the statutory presumption of good faith.

Under the *Iqbal* plausibility test, the complaint must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." The amended complaint has no facts that justify an inference that Dr. Olds' report of animal cruelty was not in good faith.

## V. CONCLUSION

For these reasons, the Court should dismiss the claims against Dr. Olds in the amended complaint pursuant to Fed.R. Civ.P. 12(6).

s:/John Lebsack
John Lebsack
WHITE AND STEELE, P.C.
Dominion Towers, North Tower
600 17th Street, Suite 600N
Denver, Colorado  80202
(303) 296-2828
Fax No.:  (303) 296-3131
jlebsack@wsteele.com

CERTIFICATE OF SERVICE

  The undersigned hereby certifies that on this 19th day of November, 2013, a true and correct copy of the foregoing was e-served via CM/ECF to the following:

Brice A. Tondre
215 South Wadsworth Blvd., #500
Lakewood, Colorado 80226
*briceatondrepc@msn.com*

Timothy P. Schimberg
Fowler Schimberg & Flanagan, P.C.
1640 Grant St., Ste. 300
Denver, CO 80203
*t_schimberg@fsf-law.com*

                s/Becky Kongs
                Becky Kongs
                WHITE AND STEELE, P.C.
                Dominion Towers, North Tower
                600 17th Street, Suite 600N
                Denver, CO 80202
                Telephone: (303) 296-2828
                Fax: (303) 296-3131
                bkongs@wsteele.com