UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02469-RM-MJW

RANDALL J. HATLEE and
RONALD L. SWIFT

Plaintiffs,
vs.

CINDY HARDEY,
BOBBI PRIESTLY,
MONTE GORE
FRED WEGENER and
ASHLEIGH OLDS,

Defendants.

_____

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT OLDS' MOTION TO DISMISS CLAIMS AGAINST HER IN AMENDED COMPLAINT**
_____

NOW COME the Plaintiffs, Randall J. Hatlee and Ronald L. Swift, by and through their attorney, Brice A. Tondre, and for their memorandum in opposition to Defendant Olds' motion to dismiss claims against her in amended complaint [#31] state as:

**I. INTRODUCTION**

Defendant Ashleigh Olds ("Dr. Olds") is a doctor of veterinary medicine licensed to practice by the State of Colorado. Dr. Olds' baseless statements to the other Defendants, animal rights activists and the news media resulted in the seizure of Plaintiffs' property and their prosecution. (Amended Complaint [#22] para. 7).

The questions presented by Dr. Olds' motion to dismiss [#31] are:

A. Was Dr. Olds acting under color of state law?

1

B. Have Plaintiffs adequately pled claims that Dr. Olds conduct was a violation of the Fourth Amendment to the United States Constitution.

C. Is Dr. Olds entitled to assert the defense of qualified immunity to the claims pursuant to 42 U.S.C. §1983?

D. Is Dr. Olds entitled to assert the defense of good faith immunity to the claims pursuant to 42 U.S.C. §1983?

E. Have Plaintiffs adequately pled a claim that Dr. Olds conduct constitutes the common law tort of malicious prosecution?

F. Was Dr. Olds' conduct a contributing cause of the seizure of Plaintiffs' property and their prosecution?

## II. STANDARD OF REVIEW

All well-pleaded factual allegations of the amended complaint must be accepted as true, all reasonable doubts and inferences must be resolved in the Plaintiffs' favor and the amended complaint must be viewed in the light most favorable to the Plaintiffs. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 249 (2009).

Plaintiffs' claims against Dr. Olds are supported by well-pleaded facts which nudge them across the line from conceivable to plausible. The facts provide a clear basis for subjecting Dr. Olds to liability under 42 U.S.C. §1983. Under applicable law discussed hereinafter she is clearly acting under color of state law.

In this jurisdiction the Court typically does not dismiss a complaint without giving the plaintiff an opportunity to amend. *Hall v. Bellmon*, 935 F.2d 1106, 1109-1111 (10th Cir. 1991).

## III. RELEVANT ALLEGATIONS OF THE AMENDED COMPLAINT

Set forth hereafter are the relevant paragraphs of the amended complaint [#22] set forth in full text and numbered as in the amended complaint.

1. Plaintiff, Randall J. Hatlee ("Mr. Hatlee"), was at all relevant times engaged in horse ranching in Park County, Colorado

2. Plaintiff Ronald L. Swift ("Mr. Swift") was at all relevant times engaged in horse ranching in Park County, Colorado.

3. Defendant Cindy Hardey ("Deputy Hardey") was at all relevant times a law enforcement officer employed by the Park County Sheriff's Office.

4. Defendant Bobbi Priestly, who held the rank of Sergeant ("Sgt. Priestly"), was at all relevant times a law enforcement officer employed by the Park County Sheriff's Office and was the supervisor of Deputy Hardey.

5. Defendant Monte Gore, who was the Undersheriff ("Undersheriff "), was at all relevant times a law enforcement officer employed by the Park County Sheriff's Office and was the supervisor of Deputy Hardey and Sgt. Priestley.

6. Defendant Fred Wegener ("Sheriff Wegener") was at all relevant times the duly elected sheriff of Park County, Colorado. Sheriff Wegener is sued in both his official capacity and his individual capacity. He was involved in the investigation and decisions to seize Plaintiffs' property and prosecute them which are the subject of this action. The office of the sheriff was party to a contract with Plaintiffs which was breached.

7. Defendant Ashleigh Olds, D.V.M. ("Dr. Olds") is a licensed veterinarian whose baseless statements to the other Defendants, animal cruelty activists and the news media resulted in the seizure of Plaintiffs' property and their prosecution.

## FACTS COMMON TO ALL CLAIMS

9.      On February 13, 2012, Routt County officer Dawn Smith called Defendant Priestly and reported that, while conducting a follow-up at the Echo Valley Ranch of a matter which resulted in a mare and a colt being brought to Echo Valley Ranch, she noted that seven of the other horses were very thin.

10.     On February 14, 2012, Defendant Priestley informed Defendant Hardey of the report from Routt County officer Smith. Defendant Hardey arranged to do a welfare check of the horses at the Echo Valley Ranch on February 16, 2012.

11.     On February 16, 2012, Defendants Hardey and Olds and Agent Smith arrived at Echo Valley Ranch. Defendant Olds was there to aid Agent Smith with the seizure of Bear and Defendant Hardey was there to conduct a welfare check of the other horses. Defendant Hardey found that seven of the horses were thin and that 34 were in good condition, that one of the seven thin horses was down and under the care of a veterinarian and that the seven thin horses had hay and water available.

12.     Bear was to be transported to Defendant Olds' clinic for evaluation and treatment. Defendant Olds demanded that the seven thin horses be ordered seized by Defendant Hardey and taken to Dr. Olds' clinic for evaluation. Without factual basis or investigation, Defendant Olds stated that the seven thin horses had been starved, mistreated and were suffering from neglect. Defendant Olds made this demand [and] these statements without conducting the requisite evaluation of the horses pursuant to the Henneke Body Condition Scoring System, without interviewing Messrs. Hatlee and Swift with respect to their belief regarding why the seven horses

were thin, without contacting the veterinarian for the herd and without developing a differential diagnosis, all of which was below the standard of care for a veterinarian.

      13. Dr. Olds statement that the seven thin horses and Bear had been starved, mistreated and were suffering from neglect was below the standard of care for a veterinarian. She failed to establish a differential diagnosis and evaluate each potential cause of the condition of the eight horses. Faced with a herd of 40 horses, 32 of which are in excellent condition, starvation, mistreatment and neglect had to be low on the differential list of any reasonably trained veterinarian. Dr. Olds purports to have ruled out botulism in Bear but did nothing to rule out other toxic causes of the condition of the eight horses. This was below the standard of care for a veterinarian. Making a report to the Park County Sheriff's Office that the eight horses were starved, mistreated and suffering from neglect was without reasonable cause to know or suspect that the statement was true. Ultimately, after reasonable professional investigation, it was determined that the probable cause of the illness of the seven horses was the consumption of toxic weeds.

      14.     Dr. Olds was acting under color of state law, to wit C.R.S. §12-64-121, when she made the false statements to the Sheriff's Office.

      15.     Dr. Horton, the herd veterinarian, was of the opinion that much more analysis had to be done before a conclusion as to what was causing the condition of the seven horses could be reached.

      16.     Defendant Olds' demands were reported to Defendant Priestley who instructed Defendant Hardey to tell Defendant Olds to leave with the horse being seized by Agent Smith.

      17.     Defendant Priestly then conferred with Kate Anderson, D.V.M., a Colorado

Department of Agriculture veterinarian, Scott Dutcher, chief investigator with the Bureau of Animal Protection, Dr. Britt of Rocky Top Veterinary Services and Defendant Hardey, all of whom agreed that the appropriate thing to do was to issue a notice of warning and leave the seven horses in the care of the Plaintiffs, giving Plaintiffs thirty days to demonstrate that the horses were not being mistreated. Defendant Hardey did not believe that leaving the horses with Plaintiffs would endanger them and, based upon unanimous agreement, issued the warning.

18. Defendant Olds was infuriated by the decision to allow the seven horses to remain under the care of Messrs. Hatlee and Swift. After returning to her clinic, Dr. Olds contacted Channel 7 News and Harmony HorseWorks and made her unsubstantiated claims of animal cruelty for the purpose of generating an outcry from Harmony Horse Works, a major client of Dr. Olds. Her intent was to cause an outcry which would force the Sheriff's Office to seize the seven horses and place them in Dr. Olds' care. Her unsubstantiated claims were broadcast on the evening and night of the day after she made the demand for seizure of the seven horses. Dr. Olds on February 16, 2012 at 4:35 p.m. by e-mail to Defendant Hardey again made the still unfounded statement that the horses were suffering from a "very clear cut case of starvation and malnutrition"

19. When Harmony HorseWorks became aware of the consensus decision of the Park County Sheriff's Office and the Department of Agriculture, in reliance on the opinions of and at the urging of Defendant Olds, it mounted an outcry demanding that the horses be removed from the management of the Plaintiffs. In the words of Harmony HorseWorks on February 18, 2012, "wait and see what happens after the email blast goes out." This outcry was directed at Defendants Wegener and Gore, the sheriff and undersheriff, who succumbed to the political

pressure and asked Defendants Priestly and Hardey to arrange for removal of the six horses from Echo Valley Ranch. One of the horses died on February 16, 2012, from an abscess of the heart which was established by necropsy to not be the result of malnutrition or neglect.

20. In consideration for agreeing to move the six horses into protective custody, the Sheriff's Office, acting through Defendants Wegener, Gore, Priestly and Hardey, agreed to allow the horses to remain under the management and control of Plaintiffs for 30 days, thus allowing them to demonstrate that they were not abusing or neglecting the horses. The Sheriff's Office hoped and believed that this agreement would satisfy the activists and relieve it of the need to head off a nasty and potentially violent confrontation.

21. On February 19, 2012, Defendant Hardey requested that Plaintiffs place the six horses in protective custody. The Plaintiffs agreed to place them in the custody of Kirsten LeBeau.

22. The protective agreement did not satisfy Harmony HorseWorks, which was emboldened by the unsupported conclusions of Dr. Olds. Harmony HorseWorks continued to cry out for the Park County Sheriff's Office to seize the six horses. Defendant Olds joined in the outcry and advocated prosecution of Plaintiffs for animal cruelty. Defendant Hardey remained of the opinion that leaving the horses with the owners would not endanger them.

23. On February 21, 2012, Defendant Priestley received a call from Dr. Horton, D.V.M., Plaintiffs' treating veterinarian who told her that it was not clear what caused the weight loss in the six horses and that a lot of testing needed to be done in order to determine the cause.

24. On February 22, 2012, Defendant Hardey, at the direction of Defendants Wegener Gore and Priestley, who again succumbed to the political pressure, sought and received a warrant

to seize the six horses from Plaintiffs. Defendant Hardey's affidavit in support of the request for a warrant was a breach of the protective custody agreement and failed to inform the judge who issued the warrant of material facts. The affidavit failed to inform the judge who issued the warrant: (1) that there was an agreement to leave the horses in the care and custody of the Plaintiffs for 30 days in order to allow them to demonstrate that the horses were not neglected; (2) that two veterinarians and a Department of Agriculture official agreed that the agreement was reasonable; (3) that the horses were well treated at the facility where they were housed; (4) that the horses were not in danger where they were housed; and (5) that the true intent of the seizure was to silence the protestations of Dr. Olds and Harmony HorseWorks. The judge who presided over the prosecution of the Plaintiffs found that the omissions were material, made in bad faith and would have led to refusal to issue the warrant if disclosed to the issuing judge.

25.     Defendants Priestly, Gore and Wagener, despite their knowledge that seizure of the horses was not permissible under the facts or the law, directed Defendant Hardey to obtain a warrant. They undertook this approach in hopes that it would prevent Harmony HorseWorks and its followers from taking matters into their own hands which they were threatening to do if the Sheriff's Office did not act to their satisfaction. Said Defendants failed to take the proper course of prosecuting those who were threatening a breach of the peace. This was an attack on the innocent to avoid prosecuting the guilty.

26.     On February 23, 2012, Defendants Hardey and Priestly executed the warrant and issued summonses charging each Plaintiff with animal cruelty. Both the warrant and the summonses were without probable cause to believe that the crime of animal cruelty had been committed.

27. Seizure of the six horses deprived Plaintiffs of evidence material to their avoidance or defense of a charge of animal cruelty.

28. During the course of the seizure which was from February 23, 2012 until April 10, 2012, one of the seized horses, Echo, was permanently disabled as a result of being overfed alfalfa.

29. During the course of the prosecution of the charges against the Plaintiffs the court held that the warrant authorizing the seizure of the six horses was in violation of applicable Colorado law, without probable cause and was procured by bad faith omissions. The court ordered the horses returned to Plaintiffs and suppressed all evidence which was the fruit of the seizure.

30. Throughout the course of the investigation and prosecution the Sheriff's Office deviated from its usual and customary practice of refusing to disclose the fruits of its investigation to anyone other than the District Attorney and the defendant. The Sheriff's Office provided documents to Harmony HorseWorks for fundraising projects and to prepare a documentary film in which Defendant Olds broadcast her baseless claims and supported the fund raising efforts of Harmony HorseWorks. This was done for the political benefit of Sheriff Wagener [and] the District Attorney.

31. The charges against the Plaintiffs were tried to a jury which found them not guilty.

34. The Defendants, acting in concert, obtained a warrant which they used to seize the six horses owned by Plaintiffs. The warrant was issued without probable cause in that it was based on material omissions in violation of the Fourth Amendment to the United States

Constitution. Obtaining a warrant under these circumstances was a clearly established violation of the Fourth Amendment to the Constitution of the United States.

41. The conduct set forth above constitutes malicious prosecution of Plaintiffs by each of the Defendants in that it was done knowing it was without probable cause and was being done for political and economic purposes. As such, their conduct was malicious. The misconduct reaches constitutional proportions because the Defendants utilized misstatements and omissions of material facts in order to initiate and continue the legal process to attempt to take Plaintiffs' property and their freedom. It was clearly established that malicious prosecution under color of state law is a violation of the Fourth Amendment to the Constitution of the United States

42. The prosecution of Plaintiffs was terminated in their favor on the merits.

55. The criminal case was brought against the Plaintiffs and six of their horses seized on the basis of statements made by Defendant Olds which caused an outcry that resulted in the seizure and prosecution. Throughout the prosecution, Defendant Olds pressed the Park County Sheriff's Office and District Attorney to persist in the prosecution despite knowing that her claim that seven horses had been the subject of cruelty was without foundation and was done for her economic benefit. Dr. Olds harbored a grudge against Mr. Swift because he refused her request that he recommend her services to horse owners who patronized his feed store.

56. Defendant Olds' statements were false and unfounded and therefore without probable cause.

57. Defendant Olds was motivated by malice in that her motive was other than to bring justice to persons she thought had committed a crime. She was economically motivated.

58. The criminal case ended in favor of the Plaintiffs.

## IV. ARGUMENT AND AUTHORITY

### A. Dr. Olds was acting under color of state law.

As alleged in the Amended Complaint and admitted in the motion to dismiss, Dr. Olds purports to have been acting as she did pursuant to the mandate of C.R.S. §13-64-121which provides in relevant part:

> (1) A licensed veterinarian who, during the course of attending or treating an animal, has reasonable cause to know or suspect that the animal has been subjected to cruelty in violation of section 18-9-202…shall report or cause a report to be made of the animal cruelty…to a law enforcement agency or the bureau of animal protection.
>
> (2) A licensed veterinarian shall not knowingly make a false report of animal cruelty…to a local law enforcement agency or to the bureau of animal protection.
>
> (3) A licensed veterinarian who wilfully violates the provisions of subsection (1) or (2) of this  subsection commits a class 1 petty offense, punishable as provided in section 18-1.3-503 C.R.S.
>
> (4) A licensed veterinarian who in good faith reports a suspected incident of animal cruelty…to the proper authorities in accordance with subsection (1) of this section shall be immune from liability in any civil or criminal action brought against the veterinarian for reporting the incident. In any civil or criminal proceeding in which the liability of a veterinarian for reporting an incident described in subsection (1) of this subsection is at issue, the good faith of the veterinarian shall be presumed.

This section mandates reporting and gives the reporting veterinarian immunity if the report is made in good faith. The report is not the act of citizen informant. It is the act of a co-actor with animal control officers.

Veterinarians are a prime source for detection of animal cruelty. Because of their education, training and experience they are well equipped to reach a scientific conclusion that an animal had probably been subjected to cruelty. As such they are part of the investigative team charged with the responsibility of detecting and prosecuting animal cruelty and thus an

11

investigative arm of the state. The "reasonable cause" requirement of the statute requires that the veterinarian make an informed decision, not an unsupported guess. Reasonable cause is the same as probable cause.

Agent Smith merely reported to Defendant Priestly that she saw 7 skinny horses when she was at the ranch. Priestly requested that Defendant Hardey investigate. Hardey investigated and after discussing her findings with Priestly, two veterinarians and a state animal cruelty investigator, a consensus decision was reached that the horses were not in danger and that Plaintiffs should be given 30 days to show that the horses were sick, not mistreated.

What we have here is one investigative arm which believed that further investigation was necessary and another which was advocating seizure and prosecution without probable cause to believe that a crime had been committed. Because of the public outcry which Dr. Olds was able to incite, the unsupported allegations of Dr. Olds were accepted by the Sheriff's Office Defendants who believed further investigation was necessary. Due to the public pressure incited by Dr. Olds, a conspiracy to seize and prosecute without probable cause was formed, thus making Dr. Olds a state actor.

The facts clearly demonstrate that Dr. Olds was not acting in good faith and did not have reasonable cause to suspect animal cruelty.

Animal Control Officer Dawn Smith from the Routt County Sheriff's Department visited Echo Valley Ranch to perform a check on Bear, a horse under Routt County's care and custody. Officer Smith reported to Defendant Priestly that during her visit to the ranch she noticed seven very thin horses.

On February 16, 2012, Defendant Hardey went to the ranch to do a welfare check. On

that same date Officer Smith, accompanied by Dr. Olds, went to the ranch for the purpose of seizing Bear and taking it to Dr. Olds' clinic for evaluation and treatment.

While on the ranch Dr. Olds noted that seven of the horses were thin and that one was down and under the care of a veterinarian. Without any evaluation, examination or investigation of the seven horses Dr. Olds stated that the seven horses had been starved, mistreated and neglected and demanded that Defendant Hardey seize the seven horses and take them to Dr. Olds clinic for evaluation and treatment. Defendant Hardey communicated the demand to Defendant Priestly who instructed Defendant Hardey to tell Dr. Olds to take Bear and leave the premises.

Dr. Olds had no reasonable basis to know or suspect that the seven horses had been subjected to cruelty. In fact, Dr. Olds' demand was below the standard of care for a veterinarian. She did not even begin to develop a differential diagnosis before making her unfounded claims of criminal conduct by the Plaintiffs.

Defendant Hardey evaluated the seven horses, noted they had food and water available, and noted that the other 34 horses on the ranch were in good condition. Defendant Hardey advised Defendant Priestly, two veterinarians and an animal control investigator of her findings. They reached a consensus decision that the horses were safe and to leave the horses in the care and custody of the Plaintiffs.

The consensus decision to leave the horses in the care and custody of the Plaintiffs infuriated Dr. Olds. After she learned of the consensus decision Dr. Olds again told Defendant Hardey that the horses were suffering from a very clear cut case of starvation and malnutrition.

After her demands were again refused, Dr. Olds embarked on a campaign to bring pressure to bear on the Sheriff's Office in order to cause the horses to be seized and the Plaintiffs

to be prosecuted. Dr. Olds broadcast her unfounded claims over Chanel 7 News and encouraged Harmony HorseWorks to embark upon a public outcry that the horses be seized and the Plaintiffs be prosecuted. Based upon Dr. Olds opinion and request, Harmony HorseWorks embarked upon a publicity campaign which was successful. There were threats to take Plaintiffs' horses away from them and threats to injure Plaintiffs.

Defendants Priestly, Gore and Wagener, despite their knowledge that seizure of the horses was not permissible under the facts or the law, directed Defendant Hardey to obtain a warrant. They undertook this approach in hopes that it would prevent Harmony HorseWorks and its followers from taking matters into their own hands which they were threatening to do if the Sheriff's office did not act to their satisfaction. Said Defendants failed to take the proper course of prosecuting those who were threatening a breach of the peace. This was an attack on the innocent to avoid prosecuting the guilty.

The threats which caused the Defendants Hardey, Priestly, Gore and Wagener to seize the horses and institute prosecution of the Plaintiffs were a direct outgrowth of the unfounded claims of Dr. Olds and her promotion of the public campaign which led to their action.

The Sheriff's Office succumbed to the pressure and obtained the Plaintiff's agreement to move the horses. When that did not quell the public outcry, the Sheriff's Office breached its contract with the Plaintiffs by seizing the horses and instituting prosecution of Plaintiffs.

The Defendants Hardey, Priestly, Gore and Wagener agreed to the demands of Dr. Olds in order to quell the public outcry, despite any legal basis to do so. This constitutes a conspiracy between them and Dr. Olds to violate Plaintiffs' rights under the Fourth Amendment.

The warrant to seize the horses was obtained through material omissions. It was later

determined that the warrant was illegal. The jury acquitted the Plaintiffs of the charges of animal cruelty.

Dr. Olds is considered to have been acting under color of state law under the joint participation theory announced in *Lugar v. Edmondson Oil Company, Inc.*, 457 U.S. 922 (1982) and/or the conspiracy theory announced in *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970) and discussed further in *Dennis v. Sparks*, 449 U.S. 24 (1980) and *Tower v. Glover*, 467 U.S. 914 (1984).

In *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442 (10th Cir. 1995) the Court reviewed the theories under which private individuals are considered to be state actors. The relevant discussion is found at 1453-1457 under the heading "Joint Action". Cited in the discussion is *Wagenmann v. Adams*, 829 F.2d 196, 209-211 (1st Cir. 1987) which affirmed a finding that a private citizen was a state actor because of evidence that he exerted influence over of the police investigation which led to the illegal arrest and incarceration.

Each member of the conspiracy is liable for all of the overt acts performed by all members of the conspiracy. Hence, Dr. Olds is responsible for procuring issuance of the warrant and commencement of the prosecution.

Here Dr. Olds incited a public campaign designed to cause the other Defendants to seize the horses and prosecute the Plaintiffs. In the words of Harmony HorseWorks on February 18, 2012, "wait and see what happens after the email blast goes out." The basis for the email blast was the unfounded statement of Dr. Olds that the horses were suffering from a very clear cut case of starvation and malnutrition which the Sheriff's office was doing nothing about.

The public campaign incited by Dr. Olds caused the other Defendants to agree to Dr.

Olds' unfounded demands. Thus the Joint Action began.

### B. Plaintiffs have pled a plausible constitutional claim.

There can be no doubt that procuring a warrant with an affidavit which fails to disclose material facts is a violation of the Fourth Amendment. *DeLoach v. Bevers*, 922 F.2d 618, 621-622 (10th Cir. 1990); *Bruning v. Pixler*, 949 F.2d 352, 357 (10th Cir. 1991).

There also can be no doubt that malicious prosecution by state actors is a violation of the Fourth Amendment. *Pierce v. Gilchrist*, 359 F.3d 1279 (2004).

Dr. Olds knew by virtue of her training and experience as a veterinarian that without investigation her allegations of animal cruelty were unfounded. The other Defendants also knew the allegations were unfounded which is the reason for the agreement to evaluate the horses for 30 days while they remained in Plaintiffs' custody and care. Therefore, all Defendants knew that there was no reasonable basis to seize the horses or prosecute the Plaintiffs without completion of an investigation. Dr. Horton, Plaintiffs' veterinarian, was of the opinion that much more analysis had to be done before a conclusion as to what was causing the condition of the seven horses could be reached.

Failure to complete the investigation was a violation of the Fourth Amendment. *Lundstrom v. Romero*, 616 F.3d 1108, 1120 (10th Cir. 2010); *Cortez v. McCauley*, 478 F.3d 1108, 1117 (10th Cir. 2007).

Dr. Olds asserts that she cannot be held liable for a violation of the Fourth Amendment and common law malicious prosecution because she did not and could not obtain a warrant or commence a prosecution.

Her assertion is debunked by *Pierce v. Gilchrist*, 359 F.3d 1279, 1291-1294 (10th Cir.

2004) which points out that §1983 applies "not only to a person who 'subjects' but also to any person who 'causes to be subjected'…any citizen of the United States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

An action for malicious prosecution can be brought against the one who procures the issuance of a warrant or the institution of a prosecution as well as the one who institutes them. Restatement, Second, Torts: § 653.

Dr. Olds did, in fact, cause the warrant to be issued and the prosecution to be commenced by the publicity campaign based upon her unfounded statements that the horses had been starved, mistreated and neglected.

### C. Dr. Olds is not entitled to qualified immunity.

Dr. Olds claims she is entitled to assert a qualified immunity defense. She relies on *Filarsky v. Delia,* 132 S.Ct. 1657 (2012). Filarsky was an attorney hired by a fire department to conduct an investigation of the conduct of an employee. The court held he was entitled to qualified immunity because the nature of his engagement was similar to part time employment.

The nature of Dr. Olds' involvement is far different from that of Filarsky. The other Defendants were co-conspirator of Dr. Olds who acted in a fashion purposely calculated to cause the other Defendants to seize Plaintiffs' horses and prosecute them. Dr. Olds accomplished the conspiracy by inciting public outcry for the seizure and prosecution. This is not a situation which situates Dr. Olds for the same immunities as an employee of the Sheriff's Office. Hence, *Wyatt v. Cole*, 504 U.S. 158,168-169 (1992) which denies applicability of qualified immunity to the private actor, is the appropriate authority. It holds that private persons who conspire with state officials to violate constitutional rights are not entitled to a qualified immunity defense.

**D. Dr. Olds is not entitled to statutory immunity.**

The statutory immunity granted by C.R.S. §13-64-121 does not apply to §1983 claims. *See, Martinez v. California*, 444 U.S. 27, 284 n.8 (1980); *Howlett v. Rose*, 496 U.S. 356, 376-77 (1990); *Felder v. Casey*, 487 US. 131, 139 (1988).

Nor does the statutory immunity require dismissal of the common law malicious prosecution claim. The facts alleged support the conclusion that there was not a good faith basis for Dr. Olds' accusations.

**E.  Dr. Olds is not sued for breach of contract.**

Dr. Olds is not sued for breach of contract.

## V. CONCLUSION

It is respectfully submitted that, based on the foregoing, the motion to dismiss must be denied.

/s/ Brice A. Tondre

_____
Brice A. Tondre
215 South Wadsworth Blvd., #500
Lakewood, Colorado   80226
Telephone:  303-296-3300
Facsimile: 303-238-5310
briceatondrepc@msn.com

ATTORNEY FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

  I hereby certify that on this the 10th day of December, 2013, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of the filing to the following:

 Timothy P. Schimberg
 t_schimberg@fsf-law.com

 Andrea M. Bronson
 a_bronson@fsf-law.com

 John Lebsack
 jlebsack@wsteele.com

                /s/ Brice A. Tondre
                _____