UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02469-RM-MJW

RANDALL J. HATLEE and
RONALD L. SWIFT

Plaintiffs,

vs.

CINDY HARDEY,
BOBBIE PRIESTLY,
MONTE GORE
FRED WEBENER and
ASHLEIGH OLDS,

Defendants
_____

**DEFENDANT OLDS' REPLY IN SUPPORT OF MOTION TO DISMISS
CLAIMS AGAINST HER IN AMENDED COMPLAINT**
_____

Defendant Ashleigh Olds ("Dr. Olds"), through her counsel John Lebsack, submits this reply in support of her motion [*Docket #31*] to dismiss the claims against her in the Amended Complaint [*Docket #22*] pursuant to Fed.R.Civ.P. 12(6).

### I.   INTRODUCTION

Dr. Olds will respond in order to the issues discussed in the Plaintiffs' opposition memorandum [*Docket #35*].

### II.   REPLY REGARDING STANDARD OF REVIEW

Plaintiffs cite *Fitzgerald v. Barnstable*, 555 U.S. 246, 249 (2009), but the holding does not involve the standard under Fed.R.Civ.P. 12(6).  The relevant standard is set forth in the cases cited in the motion:  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570

1

(U.S. 2007); *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1191-92 (10th Cir. 2009); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).

Plaintiffs cite *Hall v. Bellmon*, 935 F.2d 1106, 1109-1111 (10th Cir. 1991) for the proposition that the court typically does not dismiss a complaint without giving the plaintiff an opportunity to amend, but plaintiffs fail to mention that *Hall* involved a pro se plaintiff. *Hall* relied on *McKinney v. Oklahoma, Dep't of Human Services*, 925 F.2d 363, 365 (10th Cir. 1991), also a pro se plaintiff. Plaintiffs already filed an amended complaint and should not have another opportunity.

### III.   REPLY CONCERNING ALLEGATIONS OF AMENDED COMPLAINT

Plaintiffs quote from the amended complaint. No reply is needed—the pleading speaks for itself. But the argument section of the opposition [Docket #35, pp.12-18] has no citations to paragraphs of the pleading. The argument paraphrases the amended complaint, but lacks any quotations or citations that permit review of the details of the allegations, necessary to determine if plaintiffs alleged facts that plausibly support a claim against Dr. Olds.

### IV.   REPLY TO ARGUMENTS

**A.   Reply to Argument that "Dr. Olds Was Acting Under Color of State Law"**

**1.   Reporting Statute Does Not Create Joint Action.** Plaintiffs assert, without authority, that when a veterinarian reports a suspected case of animal cruelty to law enforcement, as required by Colorado statute, that "is not the act of citizen informant. It is the act of a co-actor with animal control officers." This argument is

2

contrary to *Scott v. Hern*, 216 F.3d 897, 906 (10th Cir. 2000). Scott held that a "private individual does not engage in state action simply by availing herself of a state procedure.…[T]he use of a state procedure does not become state action simply because the person using the procedure is a licensed professional." 216 F.3d at 906-907. A district court in Utah observed that "The existing law provides that, in general, private persons do not become state actors when they report problems or concerns to appropriate state agencies. The Tenth Circuit has also recurrently concluded that citizens who make reports to the police are not state actors." *Ball v. Div. of Child & Family Servs.*, 2012 U.S. Dist. LEXIS 83125, at *5-6 (D. Utah June 14, 2012) (citations omitted).

The plaintiffs' argument also defies common sense. The statute, C.R.S. §13-64-121 (2013), requires that if a licensed veterinarian has "reasonable cause to know or suspect" animal cruelty, the veterinarian must report that to "a law enforcement agency or the bureau of animal protection." There is nothing in the statute that suggests the veterinarian, by reporting to law enforcement, becomes a co-actor with law enforcement. The plain words of the statute are that the veterinarian simply makes a report—there is no joint action mentioned in the statute between the person making the report and the person receiving it. The veterinarian makes the report; law enforcement decides if it needs to take action. The statute does not, as plaintiffs argue, make the veterinarian part of the "investigative team charged with the responsibility of detecting and prosecuting animal cruelty." (p. 11). The statute says nothing about a team or prosecution.

3

This mandatory reporting statute is like many others that do not create joint action between the sender and recipient. For example, under Colorado law, veterinarians (and many other professionals) are required to report suspected cases of child abuse to law enforcement or other authorities. C.R.S. § 19-3-304(1)(a) and (b) (2013). Insurance companies must report fraud. C.R.S. § 10-4-1003(1)(a) (2013). Health care workers must report elder abuse. C.R.S. § 18-6.5-108 (2013). These statutes reflect a common public policy: certain actions are so reprehensible, and the victims are so helpless, that the law should require professionals to report them to law enforcement. But that public policy would be frustrated by imposing liability on the reporter as a co-actor with law enforcement. The Court should reject Plaintiffs' argument that the reporting statute can be used to create action under color of state law.

2. **Joint Participation Doctrine Does not Apply**. Contrary to the argument in the opposition [page 15], the joint participation doctrine does not apply. The framework for determining state action analyzes (1) "whether the claimed constitutional deprivation resulted from the exercise of a right or privilege having its source in state authority" and (2) "whether the private party charged with the deprivation could be described in all fairness as a state actor." *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620 (1991). State action may be found when a "private party makes extensive use of state procedures with 'the overt, significant assistance of state officials.'" Id. at 622 (quoting *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 486 (1988)). The allegations do not show that Dr. Olds made any use of state

procedures, and certainly none with overt, significant assistance of the sheriff's department. If a private citizen and law enforcement share a common goal of successfully prosecuting an accused, "that common goal is insufficient for a private citizen…to be considered a state actor." *How v. City of Baxter Springs*, 217 Fed. Appx. 787, 796 (10th Cir. 2007)

None of the four tests discussed in *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995), applies here. The "nexus test" is not satisfied because there is no factual allegation suggesting that the sheriff's department "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." 49 F.3d at 1448. The "symbiotic relationship" test is not satisfied because there is no factual allegation suggesting that the sheriff's department "has so far insinuated itself into a position of interdependence" with a private party that "it must be recognized as a joint participant in the challenged activity." 49 F.3d at 1451. The public function test is not satisfied because there is no allegation that the sheriff's department delegated to Dr. Olds a function "traditionally exclusively reserved to the State." 49 F.3d at 1456.

The allegations likewise fail to satisfy the joint action test. 49 F.3d at 1453. According to the opposition (page 15), plaintiffs rely on this theory to establish state action. That attempt fails. Joint action requires the state and a private entity to "act in concert in effecting a particular deprivation of constitutional rights." Id. Contrary to plaintiffs' argument, merely "exerting influence" over a law enforcement decision is not, under Tenth Circuit authorities, sufficient to show state action by the private citizen.

5

Plaintiffs rely on *Wagenmann v. Adams*, 829 F.2d 196, 209-11 (1st Cir. 1987), which is cited in *Gallagher* as an example of what "some courts" have done with respect to establishing a conspiracy under § 1983. 49 F.3d at 1454. But plaintiffs ignore the next paragraph of the *Gallagher* opinion, which discusses different approaches to determining if there is joint action, but most importantly plaintiffs ignore the paragraph where *Gallagher* discusses how the Tenth Circuit has addressed the issue. As a contrast to *Wagenmann*, *Gallagher* discussed cases that require a "substantial degree of cooperative action" between state and private officials. Id. That exists when, for example, the police intervene "at every step" of an eviction; or when police made an arrest based solely on a store manager's investigation instead of conducting independent investigation. Id.

Most importantly, *Gallagher* then reviews four decisions of this circuit. *Carey v. Continental Airlines Inc.*, 823 F.2d 1402 (10th Cir 1987); *Lee v. Town of Estes Park*, 820 F.2d 1112 (10th Cir. 1987); *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423 (10th Cir. 1984); *Coleman v. Turpen*, 697 F.2d 1341 (10th Cir. 1982). The first three cases involve arrests. To show there was joint action in making an arrest, there must be "concerted action, whether conspiracy, prearranged plan, customary procedure, or policy that substituted the judgment of a private party for that of the police or allowed a private party to exercise state power." 49 F.3d at 1454, (citing *Carey*, 823 F.2d at 1404).

In *Lee*, the court stated, "We are disinclined to apply *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922 (1982)] to a fact situation where a private party is simply

6

reporting suspected criminal activity to state officials who then take whatever action they believe the facts warrant." 820 F.2d at 1115. *Lee* also relied on *Benavidez v. Gunnell*, 722 F.2d 615 (10th Cir. 1983), for the proposition that "the mere furnishing of information to police officers who take action thereon does not constitute joint action under color of state law which renders a private actor liable under § 1983." 820 F.2d at 1115.

The third case discussed in *Gallagher* is *Lusby,* which found state action was only because the police completely relied on the judgment of a private citizen and did not conduct an independent investigation. 49 F.3d at 1454. The fourth case, *Coleman,* involved a truck repossession. The court in *Coleman* found joint action because the private entity towed away the truck and sold it; the company's action was "an integral part of the deprivation." *Gallagher*, 49 F.3d at 1455 (quoting *Coleman*, 697 F.2d at 1345).

The principals applied in these cases show that Dr. Olds was not a joint actor with the sheriff's department. Dr. Olds was present at plaintiffs' ranch along with sheriff's deputies on February 16, 2012, but that is not when the challenged action took place. The seizure of plaintiffs' horses took place on February 23 [Docket #22, ¶26], after the sheriff's department "succumbed to political pressure." [Docket #22, ¶24]. Under the allegations, Dr. Olds provided information to the sheriff's department that played a role in the seizure—but plaintiffs allege there were other factors that played the leading role in the sheriff's decision, in particular the "public outcry" that occurred between February 16 and 22 [Docket #22, ¶¶19-26]. This is a not case where law

7

enforcement relied completely on the private party in making a decision. The allegations show independent actions and decisions by the sheriff's department. Plaintiffs fail to allege the type of "action in concert" required to satisfy the joint action test. Paraphrasing *Pino v. Higgs*, 75 F.3d 1461, 1466 (10th Cir. 1996), Dr. Olds' status as a veterinarian, "while lending credibility to her opinion, carries with it no special state-generated authority that would make her conduct attributable to the state." In words of *Gallagher*, the allegations are insufficient to show there was action in concert "that substituted the judgment of [Dr. Olds] for that of the [Park County Sheriff's Office] or allowed [Dr. Olds] to exercise state power." 49 F.3d at 1454.

### B. Reply to Argument That "Plaintiffs Have Pled a Plausible Constitutional Claim"

Plaintiffs misconstrue Dr. Olds' argument in the section of her motion entitled "B. No Valid § 1983 Claim Against Dr. Olds Based on Malicious Prosecution." [Docket #31, p. 13] That section began, "For the same reasons discussed in the previous section (lack of state action and qualified immunity) the claim against Dr. Olds under § 1983 for malicious prosecution also fails." Id. Plaintiffs respond to an argument that Dr. Olds did not make—that plaintiffs did not plead a constitutional claim.

Dr. Olds' argument regarding the malicious prosecution claim under § 1983 is that it fails for the same reasons the claims for seizing the horse fail: (1) lack of state action and qualified immunity. Plaintiffs do not respond to those arguments. Instead, they point to *Pierce v. Gilchrist*, 359 F.3d 1279, 1291-1294 (10th Cir. 2004). In that case the individual defendants were government employees (police department and

8

district attorney). Id. at 1281. Thus *Pierce* did not address whether a private party acted under color of state law.

Moreover, the constitutional violation in *Pierce* was so fundamentally different that the case offers no guidance on the issue of whether a reasonable person would have known that the actions by Dr. Olds violated clearly established statutory or constitutional rights. *Pierce* involved a police chemist who allegedly falsified evidence. At issue was "the right not to be deprived of liberty as a result of the fabrication of evidence by a government official." Id. at 1297.

By contrast, the alleged actions by Dr. Olds involve a report of animal cruelty and participation in an effort to apply political pressure on the sheriff, none of which as a government employee or agent. This did not violate clearly established rights, and she is entitled to qualified immunity.

**C.      Reply to Argument That "Dr. Olds Is Not Entitled to Qualified Immunity"**

Plaintiffs incorrectly argue that Dr. Olds is not entitled to qualified immunity, relying on *Wyatt v. Cole*, 504 U. S. 158 (1992). *Wyatt* is distinguishable for the same reasons explained by Chief Justice Roberts *in Filarsky v. Delia*, 132 S. Ct. 1657, 1666 (2012). He pointed out that in *Wyatt*, the court held that "individuals who used a state replevin law to compel the local sheriff to seize disputed property from a former business partner were not entitled to seek qualified immunity." Id. He explained that in *Wyatt*, the court recognized "that the reasons underlying recognition of qualified immunity did not support its extension to individuals who had no connection to government and pursued purely private ends." Id. at 1667. The *Wyatt* limitation on the

9

use of qualified immunity applies only to private persons who "were using the mechanisms of government to achieve their own ends…." Id.

That is not what plaintiffs are alleging here.  Plaintiffs do not allege that Dr. Olds "pursued purely private ends."  As alleged, the seizure and prosecution were not for purely private ends of Dr. Olds.  Therefore Dr. Olds is entitled to qualified immunity for the reasons explained in the motion.

**D.     Reply to Argument That "Dr. Olds Is Not Entitled to Statutory Immunity"**

Dr. Olds seeks dismissal of the state law malicious prosecution claim [Docket #22, ¶¶54-60] based on the immunity provision of C.R.S. §12-64-121(4).  That statute creates a presumption of good faith.  Plaintiffs respond by saying, without explanation, that the alleged facts show there was no good faith.  In reply, Dr. Olds points to her page of explanation why the allegations do not overcome the presumption [Docket #31, p. 16].

**E.     Reply to Argument That "Dr. Olds is Not Sued for Breach of Contract"**

Plaintiffs concede that the contract claim [*Docket #22, ¶¶47-53*] does not apply to Dr. Olds.

### V.     CONCLUSION

For these reasons, the Court should dismiss the claims against Dr. Olds.

s:/John Lebsack
John Lebsack
WHITE AND STEELE, P.C.
600 17th Street, Suite 600N
Denver, Colorado  80202
(303) 296-2828
Fax No.:  (303) 296-3131
jlebsack@wsteele.com

10

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 20th day of December, 2013, a true and correct copy of the foregoing was e-served via CM/ECF to the following:

Brice A. Tondre
215 South Wadsworth Blvd., #500
Lakewood, Colorado 80226
*briceatondrepc@msn.com*

Timothy P. Schimberg
Fowler Schimberg & Flanagan, P.C.
1640 Grant St., Ste. 300
Denver, CO 80203
*t_schimberg@fsf-law.com*

s/Becky Kongs
Becky Kongs
WHITE AND STEELE, P.C.
Dominion Towers, North Tower
600 17th Street, Suite 600N
Denver, CO 80202
Telephone: (303) 296-2828
Fax: (303) 296-3131
bkongs@wsteele.com