UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02469-RM-MJW

RANDALL J. HATLEE and
RONALD L. SWIFT

Plaintiffs,

vs.

CINDY HARDEY,
BOBBIE PRIESTLY,
MONTE GORE
FRED WEGENER and
ASHLEIGH OLDS,

Defendants

_____

## DEFENDANT OLDS' MOTION FOR SUMMARY JUDGMENT
_____

Defendant Ashleigh Olds ("Dr. Olds"), through her counsel John Lebsack and Adam Goldstein, moves for summary judgment on the claims against her in the Amended Complaint [*Docket #22*] pursuant to Fed.R.Civ.P. 56.  In support, Dr. Olds states as follows:

### INTRODUCTION

This case stems from misdemeanor charges of animal cruelty against Plaintiffs.  Dr. Olds observed Plaintiffs' dangerously-skinny horses and reported her suspicions of animal cruelty to the Park County Sheriff's Office.  The Sheriff's Office initially declined to charge Plaintiffs and seize the horses, but it did so six days later after further investigation with other witnesses yielded additional information.

1

Plaintiff's 42 U.S.C. §1983 claims against Dr. Olds fail because Dr. Olds was not a state actor.  Even if she was, Dr. Olds enjoys qualified immunity.  Plaintiff's state law malicious prosecution claim against Dr. Olds fails because Dr. Olds enjoys statutory immunity for her report of suspected animal cruelty.  Even without statutory immunity, Plaintiffs' malicious prosecution claim fails as a matter of law because Dr. Olds was merely a witness with probable cause to suspect that a crime had been committed.

## UNDISPUTED MATERIAL FACTS[1]

This case arises from misdemeanor charges of animal cruelty against plaintiffs.  Dr. Olds is a licensed veterinarian and the owner of Aspen Creek Veterinary Hospital.  (SOF 1, 3). Dr. Olds is board certified in equine medicine and 95% of her practice focuses on horses. (SOF 2, 3).  The other defendants in this case worked for the Park County Sheriff.  (SOF 5). Dr. Olds is not and never was an employee or agent of Park County.  (SOF 6).  Dr. Olds' involvement in this matter began on February 15, 2012.  (SOF 7, 24).  Other than acting as a witness in connection with Plaintiffs' animal cruelty criminal case, Dr. Olds' material involvement in this matter ended on February 16, 2012.

Plaintiff Swift lives on property known as Echo Valley Ranch, located in Park County. (SOF 8).  Plaintiff Hatlee works with Swift at Echo Valley Ranch.  (SOF 9).  Dr. Olds' lone visit to Echo Valley Ranch in connection with this matter occurred on February 16, 2012.  (SOF 10).

---

[1] The following statement of undisputed material facts presents a narrative summary.  All of the material facts set forth herein are also set forth (with citation to authority) in Dr. Olds' separate Statement of Undisputed Material Facts In Support of Motion for Summary Judgment, per the Court's July, 2014 practice standards.  While Dr. Olds' separate Statement of Undisputed Material Facts set forth all of the relevant undisputed material facts at issue, this summary tells the story in a brief, chronological and narrative form for the Court's convenience.

At that time, Plaintiffs Hatlee and Swift each owned several horses living at Echo Valley Ranch. (SOF 11).  Plaintiffs' horses included six overly-skinny horses named Lena, Chance, Echo, Fiona, River, and Midnight (hereinafter referred to as "The Six Horses").  (SOF 11).  Other horses owned by third parties were also present at Echo Valley Ranch, including a down and emaciated mare named "Maggie" and an overly-skinny and down horse named "Bear" (a/k/a "Little Big Man," n/k/a "Spencer"),  (SOF 12).[2]  It is undisputed that Maggie, Bear, and The Six Horses were too skinny on February 16, 2012.  (SOF 13-16, 30-34, 36-41).

Dr. Olds' involvement in this case began on February 15, 2012 when she was asked if her clinic would be willing to care for a horse that Routt County was impounding.  (SOF 7, 24).  The horse was Bear.  Bear (and his mother, Little Feather) were the subject of an animal cruelty case pending in Routt County against Plaintiff Hatlee's ex-wife.  (SOF 17).  Bear and Little Feather were cared for by Plaintiffs at Echo Valley Ranch but remained under Routt County's jurisdiction.  (SOF 18).  On February 13, 2012, Deputies Del Valle and Smith of the Routt County Sheriff's Office went to Echo Valley Ranch to check on Bear and Little Feather.  (SOF 19).  Upon arrival, Deputies Del Valle and Smith learned that Little Feather was dead, and they observed Bear in "deplorable" condition.  (SOF 20-21).  Photos of Bear taken on 16, 2012 are attached as **Exhibit L**.  Deputies Del Valle and Smith also observed The Six Horses on the property in similar deplorable condition.  (SOF 22).  Photos of The Six Horses taken on February 16, 2012 are attached as **Exhibit M**.  As a result of this visit, Routt County (i) ordered the seizure of Bear; and (ii) reported The Six Horses to the Park County Sheriff's Office. (SOF 23).

---

[2] "Bear" has been known by several different names, including "Little Big Man" and "Spencer." For purposes of simplicity, the horse is referred to herein as "Bear."

On February 15, 2012, Dr. Olds was called and asked if she would accept and care for a horse being seized by Routt County.  (SOF 24).  Later, Dr. Olds was asked if she would bring her trailer, accompany the Park County officers that were seizing the horse on Routt County's behalf, and then transport the horse from the scene to her hospital.  (SOF 25).  Dr. Olds agreed, and on February 16, 2012, she met with Park County Officials at the Bailey Substation accompanied by her vet assistant Troy Murdock. (SOF 26).  It wasn't until then that Dr. Olds learned that Bear was being seized from Echo Valley Ranch. (SOF 26).

Deputies Plutt and Hanning of the Park County Sheriff's Office went to Echo Valley Ranch to serve the Routt County seizure warrant.  (SOF 27).  Dr. Olds and her vet assistant accompanied them to take possession of the horse after his seizure. (SOF 28). Park County Animal Control Officer Cindy Hardey also went to the Echo Valley Ranch that day to perform a welfare check on The Six Horses that had been reported a few days earlier by Routt County Officer Smith. (SOF 29).

When Dr. Olds and the others arrived at Echo Valley Ranch, they found Bear down, extremely thin, covered in urine/manure and unable to stand on his own.  (SOF 30).  Hatlee and Swift concede that Bear was too thin and had difficulty getting up on his own.  (SOF 13, 32). Dr. Olds and Officer Hardey next saw an emaciated, down, and sore-covered mare named "Maggie." (SOF 33).  It is undisputed that Maggie died a day or two later. (SOF 35).  Photos of Maggie taken on February 16, 2012 are attached as **Exhibit K**.  Finally, Officer Hardey and Dr. Olds saw The Six Horses.  (SOF 36).  <u>It is undisputed that The Six Horses were too thin on February 16, 2012.</u>  (SOF 13, 36-37, 41).  It is also undisputed that the horses were found in dirty pens with empty food bins and empty or frozen-over water buckets.  (SOF 36, 42).

4

Based on her observations, Dr. Olds suspected that Bear, Maggie, and The Six Horses were victims of starvation and malnutrition.  (SOF 44).  She reported her suspicions to Officer Hardey at the scene and discussed with her the potential seizure of the horses.  (SOF 46-49).  Although disputed, some witnesses suggest that Dr. Olds "demanded" that all of the horses be seized.  Despite this, it is undisputed that Officer Hardey decided not to seize The Six Horses on February 16, 2012.  (SOF 52).  Instead, Officer Hardey issued Plaintiffs a Notice of Warning.  (SOF 52).  Dr. Olds and her assistant loaded Bear into the trailer and left.[3]  (SOF 57).  When she left, Dr. Olds already knew that Park County did not plan to seize The Six Horses that day.  (SOF 58).  Dr. Olds was present at Echo Valley Ranch for approximately 30-45 minutes.  (SOF 59).

After returning to her facility, Dr. Olds made further observations and wrote a report to Officer Hardey memorializing all of her observations, in hopes that it would be "useful in obtaining an order to seize the remaining horses and/or get permission to euthanize the down mare."  (SOF 65).  A copy of Dr. Olds' February 16, 2012 correspondence is attached as **Exhibit N**.

In the days that followed, the Park County Sheriff's Department was inundated with telephone calls about the horses from people who were upset over the situation, and as a result Undersheriff Gore became concerned over talk about an attempt to rescue the horses at Echo Valley Ranch.  (SOF 66).  As a result, Undersheriff Gore suggested moving the horses to an

---

[3] After Bear was nursed back to health, he was adopted by a third party.  (SOF 101).  Plaintiffs did not own Bear and claim no interest in him following his February 16, 2012 seizure.  Because Plaintiffs did not own Bear and because the seizure was ordered by Routt County rather than Park County, the seizure of Bear is not a part of Plaintiffs' improper seizure claim in this case. *See* #22, ¶ 34.

undisclosed location to try to diffuse the situation.  (SOF 66). On February 19, 2012, Plaintiffs

agreed to move The Six Horses to another location, and Plaintiffs signed a written agreement in

this regard.  (SOF 67).  Dr. Olds played no role in the decision to move the horses.  (SOF 69).

 Cindy Hardey of the Park County Sheriff's Office continued her investigation even after

the horses were moved on February 19, 2012.  (SOF 70).  Specifically, on February 22, 2012,

Hardey spoke to Plaintiffs' veterinarian, Dr. Horton of Timberline Equine Veterinary Services.

(SOF 71).  Timberline had provided veterinary services to Plaintiffs at various points in time.

(SOF 72).  Although Timberline provided veterinary services for Maggie in the days before she

died, the last time Timberline had previously seen or treated any of The Six Horses was:  Fiona –

Never; Lena – Never; Echo – August 2010; Midnight – September 2010; River – October 2010;

Chance – October 2010. (SOF 73-74).  Timberline had no veterinarian-client-patient relationship

with The Six Horses as of February 16, 2012.  (SOF 75).

 Dr. Horton observed The Six Horses on February 20, 2012, after they had been moved

from Echo Valley Ranch.  (SOF 76).  Dr. Horton found the horses to be extremely thin and

grossly anemic. (SOF 77-78).  During a February 22, 2012 phone call with Officer Hardey, Dr.

Horton said that Plaintiffs should have sought assistance for The Six Horses sooner.  (SOF

79-81).  Specifically, Dr. Horton told Officer Hardey that "Regardless of why the horses were

thin, someone should have noticed and at least called and started the investigating earlier. . . .

Those horses were let go far too long."  (SOF 79-81).

 After speaking with Dr. Horton on February 22, 2012, Officer Hardey decided to charge

Plaintiffs with animal cruelty and seize The Six Horses (SOF 85).  Her decision was based on all

of her investigation, including the opinion provided by Dr. Horton that the horses were let go far

too long. (SOF 85-86).  The charges issued by Officer Hardey at the time only concerned The

Six Horses, and not Bear.  (SOF 87-89). [4]  The Six Horses were seized by Park County on

February 23, 2012 (SOF 91).  Dr. Olds played no part in the drafting, reviewing or approval of

the Park County Sheriff's seizure application, affidavit, or summonses and complaints.

(SOF 92-93).  Dr. Olds played no role in the seizure of the horses on February 23, 2012.

(SOF 94).  The Six Horses were never taken to Dr. Olds' facility, and Dr. Olds played no role in

their assessment or care following their seizure.  (SOF 95-96).

      Dr. Olds in good faith suspected (and continues to suspect) that Bear and The Six Horses

were starved and/or neglected by Plaintiffs.  (SOF 97).  Indeed, Bear displayed a voracious

appetite while at Dr. Olds' hospital, and he quickly put on weight and otherwise responded to

treatment that largely consisted of basic feed and water.  (SOF 63).  While Dr. Olds agreed with

the Park County Sheriff's Office's decision to seize the horses and charge Plaintiffs, Dr. Olds'

role was limited to that of a witness.  Plaintiffs allege that Dr. Olds expressed her opinions as

part of the so-called "public outcry," but there is no evidence that she did so as a state actor or

under color of law.

      Plaintiffs' amended complaint in this action asserts three claims against Dr. Olds.

*See* #22.  In summary, those claims are (1) violation of 42 U.S.C. §1983 because of improper

seizure of The Six Horses based on a defective warrant, (2) violation of 42 U.S.C. §1983 because

of malicious prosecution for animal cruelty, and (3) a state law malicious prosecution claim.

*See* #22.  As discussed below, all of these claims against Dr. Olds fail as a matter of law.

---

[4] Several months later, the charges were amended by the Park County District Attorney's Office
to include a charge of animal cruelty for Plaintiffs' alleged cruelty to Bear prior to Routt
County's February 16, 2012 seizure. (SOF 90).

**ARGUMENT**

**I.      Standard of Review.**

Federal law governs the Court's standard for summary judgment.  *Hill v. Allstate Ins. Co.*, 479 F.3d 735, 739 (10th Cir. 2007).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is material if under the substantive law it is essential to the proper disposition of the claim."  *Crowe v. ADT Sec. Servs., Inc.,* 649 F.3d 1189, 1194 (10th Cir. 2011).

A party asserting that a fact cannot be genuinely disputed must support the assertion by: (A) citing to particular parts of material in the record; or (B) showing that the materials cited do not establish the presence of a genuine dispute.  Fed. R. Civ. P. 56(c)(1).  Where the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim that the non-movant is obligated to prove. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Stated differently, Dr. Olds can satisfy her burden at the summary judgment stage by identifying a lack of evidence on an essential element of Plaintiffs' claims. *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001).  In response, Plaintiffs may not rest solely on the allegations in the pleadings but instead must designate specific facts showing that there is a genuine issue for trial.  *Celotex*, 477 U.S. at 324.  If Plaintiffs fail to produce sufficient competent evidence to establish their claims, Dr. Olds is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322-23.

With respect to Plaintiffs' state law malicious prosecution claim, Colorado law governs the substantive elements upon which the claim is based.  *Miller v. Cudahy Co.*, 858 F.2d 1449,

1457 (10ᵗʰ Cir. 1988).  State substantive law governs who bears the burden of proof, what facts are material, what issues must be determined, the elements that must be proved and the standard of proof to apply. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  In evaluating a motion for summary judgment, the court must view the evidence "through the prism of the substantive evidentiary burden."  *Anderson*, 477 U.S. at 254.

## II.     Plaintiffs' § 1983 Claims Against Dr. Olds Fail Because She Did Not Act Under Color of State Law.

Plaintiffs' first claim against Dr. Olds is based on 42 U.S.C. §1983 for the allegedly improper seizure of The Six Horses.  Plaintiffs' second claim against Dr. Olds is based on 42 U.S.C. §1983 for alleged malicious prosecution.  But Dr. Olds did not seize The Six Horses, and Dr. Olds did not prosecute Plaintiffs for animal cruelty.  Dr. Olds was merely a witness, and she was not affiliated with Park County in any way.  Thus, Dr. Olds is entitled to summary judgment on these claims.

A claim under § 1983 must allege deprivation of a constitutional right committed under color of state law.  *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Guinn v. Farmers Ins. Co.*, 563 Fed. Appx. 653, 654 (10ᵗʰ Cir. 2014) (emphasis added); *see also Lay v. Otto*, 530 Fed. Appx. 800, 802 (10ᵗʰ Cir. 2013)(the "under color of state law" element is a jurisdictional requisite for a § 1983 claim).  "The under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful."  *Id.* (internal quotations omitted).  State action requires *both* an alleged constitutional deprivation *and* that the party charged must be a person who may fairly be said to be a state actor.  *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 50 (italics in original).  "The only proper defendants in a Section 1983

claim are those who represent the state in some capacity." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995); *Kirby v. Dallas County Adult Probation Dept.*, 359 Fed. Appx. 27, 35 (10th Cir. 2009).

The mere fact that an individual is subject to state regulation does not by itself convert her action into that of the state for purposes of the Fourteenth Amendment. *Id.*; *see also Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 52. A "private individual does not engage in state action simply by availing herself of a state procedure.…[T]he use of a state procedure does not become state action simply because the person using the procedure is a licensed professional." *Scott v. Hern*, 216 F.3d 897, 906-907 (10th Cir. 2000). "The existing law provides that, in general, private persons do not become state actors when they report problems or concerns to appropriate state agencies. The Tenth Circuit has also recurrently concluded that citizens who make reports to the police are not state actors." *Ball v. Div. of Child & Family Servs.*, 2012 U.S. Dist. LEXIS 83125, at *5-6 (D. Utah June 14, 2012) (citations omitted). Stated differently, "the mere furnishing of information to police officers who take action thereon does not constitute joint action under color of state law which renders a private actor liable under § 1983." *Lee v. Town of Estes Park*, 820 F.2d 1112, 1115 (10th Cir. 1987); *citing Benavidez v. Gunnell*, 722 F.2d 615 (10th Cir. 1983).

Additionally, when a private party gives testimony in open court in a criminal trial, that act is not performed "under color of law," and all witnesses are absolutely immune from civil liability based on their testimony in judicial proceedings. *Briscoe v. LaHue*, 460 U.S. 325, 326, 328-330 (1983); *Worrell v. Henry*, 219 F.3d 1197, 1204 (10th Cir. 2000). This absolute immunity applies even with respect to alleged conspiracies to commit perjury. *Hunt v. Bennett*, 17 F.3d 1263, 1268 (10th Cir. 1994).

It is beyond dispute that Dr. Olds did not obtain the seizure warrant for The Six Horses; the Park County Sheriff's Office did.  Likewise, Dr. Olds did not charge Plaintiffs with animal cruelty; the Park County Sheriff's Office did.  Dr. Olds did not prepare, review, or approve the charges, the warrant, or the seizure affidavit in any way.  While Dr. Olds advocated for the seizure, she played no role in the seizure of The Six Horses.  There is simply no evidence that Dr. Olds participated in the seizure of the Six Horses or the bringing of charges against Plaintiffs.

Dr. Olds went to Echo Valley Ranch on February 16, 2012 to transport Bear pursuant to a Routt County seizure request.  There is no evidence that Dr. Olds performed any law enforcement or prosecutorial actions at any time.  It is undisputed that Deputies Plutt and Hanning served Plaintiffs with the Routt County seizure document; not Dr. Olds.  What's more, Plaintiffs did not own Bear, and the seizure of Bear is not a subject of this case.  *See* # 22, ¶ 34.

Dr. Olds' role in connection with the seizure of The Six Horses and the bringing of charges was merely that of a witness.  Dr. Olds witnessed evidence of suspected animal cruelty and reported it to the Park County Sheriff's Office.  Reporting suspected crime to law enforcement does not turn the witness into a state actor, and Plaintiffs can cite no authority to the contrary.

Furthermore, it is undisputed that the Park County Sheriff's Office did not seize The Six Horses or file charges against Plaintiffs at Dr. Olds' urging on February 16, 2012.  Instead, that day the Park County Sheriff's Office merely served Plaintiffs with a Notice of Warning and allowed The Six Horses to stay at Echo Valley Ranch.  It was not until several days later, after Officer Hardey performed further investigation and obtained additional information (most

notably from Dr. Horton in the February 22, 2012 phone call) that the Park County Sheriff's

Office charged Plaintiffs and seized The Six Horses.

 Plaintiffs' suggestion that Dr. Olds was part of the so-called "public outcry" demanding

that Park County seize The Six Horses fails to state a cognizable § 1983 claim.  Even assuming

Dr. Olds spoke out as part of the public outcry, there is no evidence that she did so on behalf of

the state or under color of state law. A private citizen can exercise her First Amendment rights,

express her opinions and urge government officials to act without turning into a "state actor"

acting under color of state law.

 Plaintiffs' only allegation of Dr. Olds as a state actor refers to C.R.S. § 12-64-121.  *See*

#22, ¶14.  This statute requires a veterinarian to report suspected animal cruelty to the

appropriate authorities:

> A licensed veterinarian who, during the course of attending or treating an
> animal, has reasonable cause to know or suspect that the animal has been
> subjected to cruelty in violation of section 18-9-202, C.R.S., or subjected
> to animal fighting in violation of section 18-9-204, C.R.S., shall report or
> cause a report to be made of the animal cruelty or animal fighting to a
> local law enforcement agency or the bureau of animal protection.

C.R.S. § 12-64-121(1) (2013).[5]  As set forth above, however, a private citizen's mere compliance

with state law does not turn the citizen into a state actor.  *Gallagher*, 49 F.3d at 1447; *Kirby*, 359

Fed. Appx. At 35; *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 52.  The statute does not authorize

veterinarians to take action on behalf of the government — it instead merely requires a <u>reporting</u>

---

[5] The crime of animal cruelty includes the following: "A person commits cruelty to animals if he
or she knowingly, recklessly, or with criminal negligence…deprives of necessary sustenance,…
allows to be housed in a manner that results in chronic or repeated serious physical harm,…or
otherwise mistreats or neglects any animal, or causes or procures it to be done, or, having the
charge or custody of any animal, fails to provide it with proper food, drink, or protection from
the weather consistent with the species, breed, and type of animal involved, or abandons an
animal."  C.R.S. 18-9-202(1)(a) (2013).

to state authorities.  There is nothing in the statute that suggests a veterinarian, by reporting to law enforcement, becomes a co-actor with law enforcement.  The making of a report under the statute does not constitute a seizure or a filing of charges.  While a private citizen's report can arguably lead to a seizure of property or prosecution *by others*, the report itself does not violate any constitutional rights.  *See e.g., Brayman v. United States*, 96 F.3d 1061, 1066 (8th Cir. 1996) (alleged defamation or injury to reputation by itself does not state a constitutional deprivation).

**III.    Plaintiffs' § 1983 Claims Against Dr. Olds Fail Because She Is Entitled to Qualified Immunity.**

Even assuming for argument that Dr. Olds somehow qualifies as a "state actor," Plaintiffs' § 1983 claims against her fail because Dr. Olds is entitled to qualified immunity. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent and those who knowingly violate the law." *Stanton v. Sims*, 134 S.Ct. 3, 4-5 (2013); *citing Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011).  Even assuming Dr. Olds acted under color of state law, she is nonetheless entitled to qualified immunity from civil liability unless her actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Id.*, *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Qualified immunity is determined based on an objective standard, and bare allegations of malice are insufficient.  *Harlow*, 457 U.S. at 817-818.  It is for the Court to determine whether the right

at issue was 'clearly established' at the time of the defendant's alleged misconduct, but existing precedent must have placed the statutory or constitutional question beyond debate. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Stanton*, 134 S.Ct. at 5; *Ashcroft*, 131 S.Ct. at 2083.

There is no basis to contend that a reasonable person would have known that Dr. Olds' actions violated clearly established statutory or constitutional rights.  At most, Plaintiffs suggest that Dr. Olds made a mistaken report of animal cruelty and then participated in a publicity effort to apply political pressure on the sheriff's office.  Even assuming this was a violation of the Plaintiffs' rights, it was not a violation of clearly established rights of which a reasonable person would have known.  Plaintiffs offer no evidence that Dr. Olds violated any clearly established law or constitutional right, and their § 1983 claims therefore fail as a matter of law.

## IV.   Plaintiffs' State Law Malicious Prosecution Claim Against Dr. Olds Fails As A Matter Of Law Because She Is Entitled to Statutory Immunity.

Plaintiffs' final claim against Dr. Olds is for malicious prosecution under Colorado common law.  Plaintiffs contend that The Six Horses were seized and the criminal case was brought against them based on Dr. Olds' statements that the horses were starved, mistreated, and suffering from neglect.

Plaintiffs' state law malicious prosecution claim fails as a matter of law because Dr. Olds' statements are privileged under Colorado law.  Colorado law imposes both duties and protections for licensed veterinarians in regard to reporting animal cruelty.  As set forth in Section II above, state law requires veterinarians to report suspected animal cruelty to local authorities.  C.R.S. § 12-64-121(1) (2013).  Corresponding to this duty to report is immunity for making such reports in good faith:

> A licensed veterinarian who in good faith reports a suspected incident of animal cruelty or animal fighting to the proper authorities in accordance with subsection (1) of this section shall be immune from liability in any civil or criminal action brought against the veterinarian for reporting the incident.

C.R.S. § 12-64-121(4) (2013).  That section also creates a presumption of the veterinarian's good faith:

> In any civil or criminal proceeding in which the liability of a veterinarian for reporting an incident described in subsection (1) of this section is at issue, the good faith of the veterinarian shall be presumed.

To apply this statutory immunity, there are four elements:  (1) Dr. Olds must be a licensed veterinarian (2) who reported in good faith (3) a suspected incident of animal cruelty (4) to the proper authorities.  There is no dispute about elements 1, 3, and 4:  Dr. Olds is a licensed veterinarian, her alleged statements concerned an incident of animal cruelty, and she made statements to the Park County Sheriff's Office.

As for the second element of applying the immunity, Plaintiffs cannot offer sufficient evidence to overcome the statutory presumption of good faith.  Dr. Olds in good faith suspected (and continues to suspect) that Bear and The Six Horses were starved and/or neglected by Plaintiffs.  It is undisputed that Bear and The Six Horses were too skinny on February 16, 2012.  Even Plaintiffs admit as much.  While Plaintiffs may disagree about the *cause* of Bear's and The Six Horses' skinny condition, the fact of the horses' condition is not in dispute.  It is undisputed that Bear was down, unable to stand on his own, and covered in urine/manure on February 16, 2012.  Dr. Olds also saw Maggie down, emaciated, and covered in sores.  It is undisputed that the pens were dirty, the food bins were empty, and the water buckets were frozen over during Dr. Olds and Officer Hardey's visit on February 16, 2012.  Even Plaintiffs' own veterinarians, Dr. Horton and Dr. Burton, believe that these horses "were let go far too long" and

that Plaintiffs should have sought intervention sooner.  Finally, Dr. Olds was told by Swift that

several horses at Echo Valley Ranch had already died.  These undisputed facts more than

establish that Dr. Olds had reasonable cause to suspect that Bear and The Six Horses had been

subjected to cruelty and/or neglect.  Plaintiffs simply cannot offer sufficient evidence of bad faith

to overcome the statutory presumption and the undisputed evidence outlined herein.

Plaintiffs suggest that Dr. Olds committed malpractice and failed to conduct a thorough

differential diagnosis, but these allegations are irrelevant.  The relevant inquiry is not whether

Dr. Olds satisfied a professional duty of care or rendered a correct final diagnosis.  Instead, the

relevant question is merely whether Dr. Olds had a reasonable good faith basis to <u>suspect</u> that the

horses had been subjected to cruelty or neglect.  C.R.S. § 12-64-121.  The undisputed sight of

emaciated, down horses in filthy pens with no food and frozen water is sufficient to satisfy this

low statutory standard of a good faith report of *suspected* animal cruelty.

**V.     Plaintiffs' State Law Malicious Prosecution Claim Against Dr. Olds Fails As
         A Matter Of Law Even In The Absence of Statutory Immunity.**

Even without considering Dr. Olds' statutory immunity, Plaintiffs' malicious prosecution

claim against her fails because Plaintiffs cannot prove the essential element of lack of probable

cause.

To prevail on a claim for malicious prosecution, the following elements must be satisfied:

(1) the defendant contributed to bringing a prior action against the plaintiff; (2) the prior action

ended in favor of the plaintiff; (3) no probable cause; (4) malice; and (5) damages.  *Hewitt v.

Rice*, 154 P.3d 408, 411 (Colo. 2007); *Thompson v. Hiwan Ridge Dev. Co., Inc.*, 84 P.3d 496,

503 (Colo. 2004); *Lounder v. Jacobs*, 205 P.2d 236, 238-239 (Colo. 1949).  Lack of probable

cause is an indispensable element.  *Id.*; *see also Montgomery Ward and Co. v. Pherson*, 272 P.2d

16

643, 645 (Colo. 1954) ("The existence of probable cause is alone sufficient to relieve a defendant of a charge of malicious prosecution").

Whether a given set of facts or circumstances amounts to probable cause is a question of law for the Court. *Gurley v. Tomkins*, 30 P. 344, 439 (Colo. 1892); *Montgomery Ward*, 272 P.2d at 646. The usual standards of human judgment and conduct determine what is and what is not probable cause. *Lounder*, 205 P.2d at 239; *Montgomery Ward*, 272 P.2d at 645. Where the conceded or substantially undisputed facts and circumstances under which the prosecution was carried on do not show a want of probable cause, the Court should take the responsibility of directing a verdict in favor of the defendant. *Montgomery Ward*, 272 P.2d at 646; *citing Gurley*, 30 Pac. 349. It is only where there is a dispute as to the existence of those facts which are relied upon as constituting probable cause that the matter is to be determined by the jury. *Konas v. Red Owl Stores, Inc.*, 404 P.2d 546, 548 (Colo. 1965); *Montgomery Ward*, 272 P.2d at 646.

In defining probable cause for purposes of malicious prosecution, the Colorado Supreme Court has stated:

> [a defendant] must form his judgment from outside appearances; and if those appearances, although they have belied the facts, furnished a reasonable ground of suspicion and were of such a nature as to warrant a person of ordinary caution, in coming to the conclusion that a crime had probably been committed, the defendant, by following the appearances, and acting upon the conclusion to which they led, incurred no liability to the plaintiff."

*Konas*, 404 P.2d at 548, *quoting Florence Oil & Refining Co. v. Huff*, 59 P. 624 (Colo. 1900). Stated differently, to constitute probable cause it is only necessary that there be a belief held in good faith in the guilt of the accused, and that such belief be reasonable and prudent. *Konas*, 404 P.2d at 548.

The defendant may have had probable cause for the filing of the charges even though the accused is later acquitted or subsequent events prove the charges to be erroneous. *Montgomery Ward*, 272 P.2d at 508.  Any citizen who has reasonable grounds to believe that the law has been violated has the right to cause the arrest of the person whom he honestly and in good faith believes to be the offender, and, if she has reasonable grounds for his belief and acts thereon in good faith, she shall not be subjected to damages merely because the accused is not convicted. *Id*.  This is particularly true when the proceeding at issue was instituted by and with the approval of the district attorney:

> If the [district attorneys], who are appointed on account of their legal learning, consider that a given state of facts is sufficient evidence of probable cause, how can the private citizen be said to be in fault in acting upon such facts, and how can the state condemn him to damages for so doing?

*Id.*, at 647-648.

In the case at bar, the undisputed materials facts were sufficient to furnish Dr. Olds with reasonable suspicion that a crime had probably been committed.  The summary of facts outlined in Section IV above were sufficient to provide Dr. Olds with probable cause to suspect animal cruelty.  Because Dr. Olds had a sufficient basis to form her reasonable good faith belief in suspecting Plaintiffs had committed animal cruelty, Plaintiffs' malicious prosecution claim fails as a matter of law.

As discussed in Section IV above, Plaintiffs' allegations of malpractice and failure to perform a differential diagnosis are irrelevant.  The relevant issue is not whether Dr. Olds "got it right" or whether there were other possible explanations for Dr. Olds' observations.  Instead, the question is merely whether the undisputed materials facts provided Dr. Olds with a reasonable good faith basis to suspect that a crime had likely been committed.  Plaintiffs can offer no

evidence to the contrary in light of the undisputed fact that the horses were emaciated, down, filthy, and lacking in available food and water upon Dr. Olds February 16, 2012 visit to Echo Valley Ranch.

**CONCLUSION**

Plaintiffs contend that Dr. Olds was wrong in her suspicions of animal cruelty, and Plaintiffs are mad that Dr. Olds advocated for the seizure and then testified against them.  Even assuming that all of this is true, these facts do not create triable § 1983 claims or a triable state law malicious prosecution claim against Dr. Olds.  Dr. Olds did not seize The Six Horses, Dr. Olds did not charge Plaintiffs with animal cruelty and Dr. Olds reported her suspicions in good faith.  For these reasons, the Court should grant Dr. Olds summary judgment and dismiss the claims against her pursuant to Fed.R. Civ.P. 56.


DATED this 15th day of DECEMBER, 2014.

s:/John Lebsack

John Lebsack
Adam Goldstein
WHITE AND STEELE, P.C.
600 17th Street, Suite 600N
Denver, Colorado  80202
(303) 296-2828
Fax No.:  (303) 296-3131
jlebsack@wsteele.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 15th day of December, 2014, a true and correct copy of the foregoing was e-served via CM/ECF to the following:

Brice A. Tondre
215 South Wadsworth Blvd., #500
Lakewood, Colorado  80226
*briceatondrepc@msn.com*

Timothy P. Schimberg
Fowler Schimberg & Flanagan, P.C.
1640 Grant St., Ste. 300
Denver, CO  80203
*t_schimberg@fsf-law.com*

s/Becky Kongs
Becky Kongs
WHITE AND STEELE, P.C.
Dominion Towers, North Tower
600 17th Street, Suite 600N
Denver, CO  80202
Telephone:  (303) 296-2828
Fax:  (303) 296-3131
bkongs@wsteele.com