**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.    13-cv-02469-RPM-MJW

RANDALL J. HATLEE,
RONALD L. SWIFT,

Plaintiffs,


v.


CINDY HARDEY,
BOBBI PRIESTLY,
MONTE GORE,
FRED WEGENER,
ASHLEIGH OLDS,

Defendants.

---

## MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING DAMAGES

Defendants, Cindy Hardey, Bobbi Priestly, Monte Gore, and Fred Wegener, by and through

their attorney, Timothy P. Schimberg of Fowler, Schimberg & Flanagan, P.C., hereby submit this

Motion for Partial Summary Judgment Regarding Damages and in support thereof state as follows:

## I.    __INTRODUCTION__

Plaintiffs claim that that an allegedly unconstitutional seizure of six of their horses for

approximately seven weeks resulted in over a million dollars of economic damages and two

million dollars in non-economic damages.  The removal of six horses for seven weeks does not a

multi-million dollar case make.  This Motion seeks partial summary judgment regarding damages

that:  (1) were not caused these Defendants alleged violation of Plaintiffs constitutional rights, but

rather the District Attorney's decision to prosecute Plaintiffs notwithstanding alleged omissions of material fact from an affidavit in support of a warrant, which acts were an intervening and superseding act; (2) are speculative as matter of law; (3) are uncorroborated claims for non-economic damages that are not recoverable as a matter of law; and (4) unsupported requests for punitive damages.

Plaintiffs assert three claims against these Defendants.  First, Plaintiffs claim that the warrant pursuant to which the horses were seized, was executed without probable cause because it allegedly contained material omissions.  *See* Plaintiffs' First Amended Complaint at First Claim for Relief.  Second, Plaintiffs claim that these Defendants maliciously prosecuted Plaintiffs for animal cruelty.  *Id.* at Second Claim for Relief.  Finally, Plaintiffs claim that these Defendants breached a contract with Plaintiffs.[1]  *Id.* at Third Claim for Relief.

Defendants are entitled to partial summary judgment regarding Plaintiffs' alleged damages for four reasons.  First, the six horses were seized on February 23, 2012.  Following an "animal bond hearing" on April 10, 2012, the County Court found that although there was probable cause to believe Plaintiffs were guilty of animal cruelty, there was no probable cause to detain the horses further.  The horses were returned to Plaintiffs on April 11, 2012.  Thereafter, the duly elected District Attorney of 11th Judicial District, reached the same conclusion as the County Court Judge that there was probable cause to proceed to trial.  The District Attorney decided there was sufficient evidence to convict Plaintiffs of animal cruelty beyond a reasonable doubt.  The District Attorney made this decision despite the alleged omission of material facts by Defendant Cindy Hardey from

---

[1] The third claim is the subject of a separate and very short summary judgment motion filed contemporaneously.  There was no consideration given for the alleged contract.

2

the affidavit in support of the warrant.  Therefore, none of the alleged damages incurred after April 10, 2012, were caused by any of the allegedly unconstitutional conduct of these Defendants.  The District Attorney's decision was based on his independent professional judgment as an elected official of the 11th Judicial District and as an officer of the court.  The DA's decision constitutes an intervening and superseding event that breaks any causal link between these Defendants alleged unconstitutional conduct and Plaintiffs' alleged damages.

Second, damages in a § 1983 cannot be speculative and a plaintiff is only entitled to actual damages.  The vast majority of damages claimed by Plaintiffs are for "lost profits" and are based on Plaintiffs' speculation rather than any competent documentary evidence or expert opinion.

Third, non-economic damages for emotional distress in a § 1983 case are only recoverable if they are corroborated by testimony from witnesses other than the Plaintiffs.  There is no such evidence in this case to corroborate Plaintiffs' multi-million dollar non-economic damage claim.

Fourth, there is no evidence that Defendants acted with an "evil intent" or "reckless disregard for the federally protected rights" of others.   Therefore, these Defendants are entitled to judgment as a matter of law regarding the exemplary damages claim.

Accordingly, these Defendants are entitled to partial summary judgment.  Should Plaintiffs prevail at trial, their damages should be capped at attorney fees and costs incurred, or paid, before April 10, 2012 in the amount of $4,852.94, or zero.

## II.      PARTIAL SUMMARY JUDGMENT STANDARD

The Court is familiar with the standard of review governing a motion for partial summary judgment under Fed.R.Civ.P. 56.

### III.   STATEMENT OF MATERIAL UNDISPUTED FACTS

1.      The horses were seized pursuant to a warrant on February 23, 2012.   *See* First Amended Complaint at ¶ 26.

2.      The horses were seized based on a finding of probable cause that Plaintiffs were neglecting the horses.  *See* <u>Exhibit A</u>, Warrant and Affidavit for a search warrant.

3.      The horses were returned to Plaintiffs on April 11, 2012, following an "animal bond hearing" on April 10, 2012.  *See* <u>Exhibit B</u>, Transcript of Animal Bond Hearing at p. 65 line 2 – p. 66 line 16.

4.       The Court specifically held that there was probable cause to believe Plaintiffs committed animal cruelty.  *Id*. At 65.  The County Court concluded that there was not probable cause to believe horses were in imminent danger and ordered the horses returned to the Plaintiffs. At a later hearing on December 3, 2012, the Court held that there were material omissions from the affidavit in support of the warrant regarding whether the horses were in imminent danger.  *See* <u>Exhibit C</u>, December 3, 2012 hearing transcript at p. 173 line 23 – p. 174 lines 1-7.  Again, the Court specifically held that there was still probable cause to believe Plaintiffs committed animal cruelty.  *Id*.

5.      Following, the "animal bond hearing" and December 3, 2012 motions hearing, the District Attorney made the decision to prosecute the animal cruelty case against Plaintiffs to verdict based on his conclusion that there was still probable cause to believe that the Plaintiffs committed misdemeanor animal cruelty, a conclusion shared by the County Court judge, and based upon his belief that he had enough evidence to convict Plaintiffs beyond a reasonable doubt.  *See* <u>Exhibit D</u>, Affidavit of 11th Judicial District – District Attorney Thom K. LeDoux.

6.      Following the "animal bond hearing" the alleged omissions from the affidavit in support of the warrant were known to all parties, to include the District Attorney.  *Id.; see also* Exhibit B, Transcript of Animal Bond Hearing of April, 2012 at p. 65 lines 2 to p. 66 lines 16.

7.      Notwithstanding the alleged omissions, the District Attorney believed there was probable cause and sufficient evidence to convict beyond a reasonable doubt.  *Id*. At ¶ 9.   The County Court Judge agreed.  *See* Exhibit B, April 10, 2012 Hearing Transcript at p. 65 lines 22-24; Exhibit C, December 3, 2012 Hearing Transcript at p. 173 lines 23- p. 174 lines 1-7.

8.      On March 1, 2013, the Plaintiffs were acquitted following a jury trial.  *See* First Amended Complaint ¶ 31.

9.      Notwithstanding the acquittal, the District Attorney still believes there was probable cause and enough evidence to convict Plaintiffs.  *See generally* Exhibit D.  The County Court judge agreed.   *See* Undisputed Fact No. 8, *supra*.

10.      The District Attorney made the decision to prosecute based on his own independent professional judgment and was not influenced by these Defendants or anyone else.  *Id*. At ¶ 9 and 12.

11.      The horses were returned to Plaintiffs, with the weight of each horse increasing an average of 125 pounds in 7 weeks.  *See* Exhibit E, Park County Sheriff's Office Investigation File – Continuation Sheet (Park County Defendants' Disclosures 000108-109).

12.      Pictures taken before the horses were seized are attached as Exhibit F.

13.      During the period when Plaintiffs did not have their horses, there is no evidence that Plaintiffs incurred any costs to feed and care for the horses.

14.     In Plaintiffs' Initial Disclosures, Plaintiffs claimed the following damages: $85,000 to defend the underlying criminal case; $500,000 in lost "income and value"; $2 million in non-economic damages; and $2,000,000 in exemplary damages.  *See* <u>Exhibit H</u>, Plaintiffs' Initial Disclosures, p. 5.

15.     Plaintiffs' Initial Disclosures did not contain a computation of Plaintiffs' economic damages consistent with Fed.R.Civ.P. 26(a)(1)(C).  *Id.*

16.     Without explanation, when written discovery responses served, the amount of economic damages increased to over $1 Million.  *See* <u>Exhibit I</u>, Plaintiffs' Discovery Responses, p. 4-5.

17.     On July 24, 2014, Park County Defendants served their second set of interrogatories and requests for production of documents to the Plaintiffs.  *See* <u>Exhibit J</u>.  Plaintiffs could not/did not produce any copies of state and federal income tax returns (neither have filed any during the relevant time period involved), quarterly estimated tax filings or any other document to support any claim of financial loss as to them.  Plaintiffs could not produce state and federal income tax returns for Bailey Depot Feed.  Plaintiffs could not/did not provide any documents to support claims regarding horse boarding contracts/agreements.  There were no documents either in disclosures or responses to requests for production of documents to support any claim regarding farrier work, training of horses, the brokering of hay (s*ee ¶* 19 below).

18.     Below is chart summarizing the economic damages Plaintiffs[2] claim in their discovery responses (left) and the material undisputed facts that show that Plaintiff are not entitled to the claimed damages as a matter of law (right).

| Plaintiffs' Claimed Damages | Material Undisputed Facts that Demonstrate Plaintiffs are not Entitled to Recover this Type of Damage as a Matter of Law |
|---|---|
| A. Loss of value in Bailey Feed Store: $180,000 (*see* Exhibit I, Plaintiffs' Discovery Response at Interrogatory No. 10) | • The Bailey Feed store is not a party Plaintiff.  *See generally*, Plaintiffs' First Amended Complaint.<br>• Plaintiff Hatlee had no ownership interest in the Bailey Feed Store.  (*See* Exhibit K, Depo of Hatlee at 597, line 14-16).<br>• The Bailey Feed Store or Bailey Depo Feed is a Colorado corporation H&R Inc. d/b/a Bailey Depot Feed.  *See* Exhibit L, Deposition of Swift at 49-50.  The shareholders of the feed store are Helen Cook and Ron Swift.  Ms. Cook owns 51% of the company.  *Id.* |
| B. Boarders lost due to publicity:  $21,000 (*Id.*) | • Plaintiff Hatlee admitted in deposition that they never had paying boarders.  *See* Exhibit K, Hatlee Deposition at 597, lines 17-20. |
| C. Boarders lost due to no advertising: $63,000 (*Id.*) | • Plaintiff Hatlee admitted in deposition that they never had paying boarders.  *See* Exhibit K, Hatlee Deposition at 597, lines 17-20. |
| D. Lost foals due to publicity: $100,000 (*Id.*) | • This relates to foals from a horse owned by a non-party to this case. *See* Exhibit M, Deposition of Swift at 448, lines 18-22. |
| E. Lost value in horse Emmy due to no showings: $20,000 (*Id.*) | • Ms. Helen Cook, a non-party to this case, owns Emmy.  *Id.* |
| F. Lost value in horse Warrior due to no showings and no training: $250,000 | • Plaintiffs have produced no evidence to demonstrate they have an ownership interest in Warrior and no other evidence to |

---

[2] The Discovery Responses state that the claimed damages would be supported by expert testimony.  Plaintiffs never disclosed an expert to offer such opinions.

| | |
|---|---|
| | support this claim other than their bare, conclusory assertions.[3] |
| G.  Warrior lost breeding fees:   20 mares at $2,500:  $250,000 | • Plaintiffs have produced no evidence to demonstrate they have an ownership interest in Warrior and no other evidence to support this claim other than their bare, conclusory assertions. |
| H.  Lost training fees:  $30,000 (*Id.*) | • Plaintiffs have produced no evidence other than their bare conclusory assertions to support this claim.  Hatlee admits no documents to support the claim. <u>Exhibit N</u>, Hatlee deposition at p. 530 lines 1-7 – p. 534 lines 1-17; page 567 lines 1-7. |
| I.   Lost hauling fees:  $15,000 (*Id.*) | • Plaintiffs have produced no evidence other than their bare conclusory assertions to support this claim.  Same as box above except <u>Exhibit O</u> p. 601 line 17 – p. 602 line 1-23 |
| J.   Chaff dealer:  $100,000 (*Id.*) | • Plaintiffs have produced no evidence other than their bare conclusory assertions to support this claim.  The "hay" relates only to Mr. Hatlee.  <u>Exhibit P</u>, p. 598 lines 7-10. Hatlee admits no documents to support the claim, p. 600 lines 10-21; p. 567 lines 1-7; p. 534 lines 18-25 to p. 535 lines 1-6; p. 538 lines 3-17. |
| K.  Attorney fees:  $90,000  (*Id.*;  *see also* <u>Exhibit P</u> invoices for attorney fees and costs) | • The legal issues regarding the attorney fees and costs Plaintiffs claim as damages are addressed in Section IV, below. Mr. Hatlee admits that he has not paid for legal services for the defense of the criminal case. <u>Exhibit Q</u>, p. 599 lines 5-8. Mr. Swift admits to payments of less than $2,000. <u>Exhibit R</u>, p. 467 lines 6-18. |

---

[3] *See Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir.1998) (summary judgment movant may meet its initial burden "by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim"); *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130 (10th Cir.2004) (a party's bare assertion, absent any record support, is insufficient to survive summary judgment*); Skrzypczak v. Roman Catholic Diocese of Tulsa*, 611 F.3d 1238, 1244 (10th Cir.2010) ("To survive summary judgment, nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.").

|  | • The legal issues regarding the attorneys' fees and costs Plaintiffs claim as damages are addressed in section IV below. |
|---|---|

19.     Of the $85,000 in attorney fees sought, $4,852.94 were incurred before April 12, 2012 (figure derived by adding the March 2012 and April 2012 invoices then subtracting all entries after April 12, 2012). *See* Exhibit S, criminal defense attorney Campbell's Bills.

20.     There is no evidence in the record that Defendants' conduct was motivated by evil motive or intent or involved reckless or callous indifference to federally protected rights of others.

### IV.     PLAINTIFFS CANNOT RECOVER AND DAMAGES THAT WERE NOT CAUSED BY THESE DEFENDANTS ALLEGED VIOLATION OF PLAINTIFFS CONSTITUTIONAL RIGHTS

Damages are available for violations of § 1983, but a damage award must be based on actual injury. *See Makin v. Colorado Department of Corrections,* 183 F.3d 1205, 1214 (10th Cir. 1999) (citing *Carey v. Pipuhs,* 435 U.S. 247, 254 (1978). The abstract value of a constitutional right may not form the basis for § 1983 damages. *Id.* (quoting *Memphis Community School District v. Stachura,* 477 U.S. 299, 308 (1986)). Thus, the deprivation of a constitutional right, standing alone, does not entitle a plaintiff to general damages. *Lippoldt v. Cole,* 468 F.3d 1204, 1220 (10th Cir. 2006).

Plaintiffs must demonstrate actual injury to recover damages under § 1983 for violation of their constitutional rights. *Dill v. City of Edmond,* 155 F.3d 1193, 1208-09 (10th Cir. 1998). Such an award must be proportional to the actual injury occurred. *Jolivet v. Deland,* 966 F.2d 573, 576 (10th Cir. 1992) (citing *Piver v. Pender County Board of Education,* 835 F.2d 1076, 1082 (4th Cir. 1987)). Damages can only be awarded under § 1983 for damages that are both violative of

constitutional rights *and to have caused compensable injury. Id.* (quoting *Wood v. Strickland,* 420 U.S. 308, 319 (1975) (emphasis supplied in original of *Jolivet* case)).

It is critical to distinguish between the temporary seizure of Plaintiffs' horses pursuant to Colo.Rev.Stat. § 18-9-202 and 202.5 (2102)[4] and the continuing prosecution of Plaintiffs for misdemeanor animal cruelty. The former was based on warrant supported by an affidavit from Cindy Hardey and signed by a neutral and detached Chief Judge of the 11th Judicial District The Honorable Charles M. Barton. The latter was solely the decision of the elected District Attorney. To the extent the trier of fact accepts the far-fetched argument that these Defendants obtained the warrant to seize the horses pursuant to Colo.Rev.Stat. § § 18-9-202 and 202.5 in bad faith, Plaintiffs may be entitled to some minimal damages related to that seizure of the horses. Plaintiffs, however, seek to recover damages from these Defendants based on the DA's decision to proceed to trial, which are not recoverable from these Defendants as a matter of law.

The principal player in carrying out a prosecution is not a police officer, but the prosecutor. *See Taylor v. Meacham,* 82 F.3d 1556, 1563 n.8 (10th Cir. 1996) (quoting *Albright v. Oliver,* 510 U.S. 266, 279 n.5 (1994), Ginsburg, J. concurring)). Accordingly, an officer does not proximately cause a malicious prosecution because the independent decisions of the prosecutor in bringing the charge and the Court in issuing an indictment or warrant constitutes superseding causes that break the chain of causation. *See Calvert v. Ediger,* 415 Fed. Appx. 80, 2011 WL 754839, *3 (citing *Taylor, supra* at 1564).

Officers are not shielded from liability if a causal connection can be established demonstrating that the prosecutor and the Court's actions were not truly independent causes. *See*

---

[4] The statutes have since been amended in substantial part.

*Pierce v. Gilchrist,* 359 F.3d 1279, 1292-93 (10th Cir. 1994).  Under *Gilchrist,* officers can be liable from malicious prosecution if they conceal or misrepresent material facts to the prosecutor whose judgment is influenced by the statements.  *See Calvert, supra.* (discussing *Gilchrist*). If a plaintiff can demonstrate that the prosecutor's decision to prosecute was influenced by the omissions, then the plaintiff can state a cause of action under § 1983 for malicious prosecution. *Id.*  However, in this case, the Plaintiffs cannot meet this burden based on District Attorney LeDoux's Affidavit.

The alleged omissions made by these Defendants in the affidavit in support of the warrant, were all discussed at the animal bond hearing on April 10, 2012.[5]  Following that hearing, District Attorney LeDoux, the duly elected District Attorney of the 11th Judicial District, was aware of these alleged omissions.  Notwithstanding, District Attorney LeDoux exercised his independent professional judgment, consistent with his ethical standards, to determine whether he should prosecute Plaintiffs.  District Attorney LeDoux reached the independent decision that there was probable cause to believe that the Defendants committed the crime of animal cruelty.  Exercising his own independent professional judgment, District Attorney LeDoux also reached the conclusion that there was enough evidence to convict the Defendants beyond a reasonable doubt.  Therefore, Plaintiffs cannot meet their burden that there is a causal link between any of Defendants' alleged conduct and any damage that occurred after April 10, 2012.  Accordingly, the Plaintiffs' alleged damages should be limited to those incurred on or before April 10, 2012, if any.  As is discussed elsewhere in this brief, the only economic damages that Plaintiffs incurred before April 10, 2012,

---

[5] With due respect to the County Court judge that made these findings, these Defendants dispute those findings and submit that those findings are erroneous.  Those finding are not entitled to any preclusive effect against these Defendants in this proceeding.  That issue does not need to be addressed at this time.

were attorney fees and costs in the amount of $4,852.94.  Fees and costs that have not been paid.

Exhibit Q.

### V.   PLAINTIFFS' LOST PROFIT CLAIMS ARE SPECULATIVE

Damages in federal civil rights lawsuits are governed by federal law and are informed by the common law.   *Manzanares v. City Of Albuquerque*, 628 F.3d 1237, 1242 (10th Cir. 2010) (citing *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305–06, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986)).  Damage awards for lost profits may not be based upon mere speculation.  *Sunward Corp. v. Dunn & Bradstreet, Inc.,* 811 F.2d 511, 541 (10th Cir. 1987).  Although damages for lost business opportunities need not be supported by mathematical certainty, they must be based on reasonable proof.  Amounts that are speculative, remote, imaginary, or impossible of ascertainment are not recoverable.  *See e.g., Evans v. Fogerty,* 241 Fed. Appx. 542, 565 (10th Cir. 2007).

There is a relative paucity of case law regarding lost profits in the § 1983 context in the Tenth Circuit.  The Seventh Circuit has addressed the issue extensively.  In *Kiswani v. Phoenix Security Agency, Inc.,* 247 F.R.D. 554 (N.D.Ill. 2008), the Court granted a motion in *limine* excluding numerous claims for lost profits because they were too speculative and summarized the law regarding the issue.  The Court noted that damages for lost profits under § 1983 are derived from the common law of torts as a matter of federal common law.  *Id.*  The Court noted that when seeking recovery for lost profits, the profits must be established with reasonable certainty and not based upon speculation.  *Id.* (citing *Alover Distribution, Inc. v. Kroger Company,* 513 F.2d 1137, 1140 (7th Cir. 1975)).  The claimant bears the burden of establishing the lost profits with reasonable certainty.  *Id.* (citing *TAS Distributing Company v. Cummings Engine Company,* 491 F.3d 625, 631-32 (7th Cir. 2007)).  If a party establishes that it is entitled to damages, but it unable to prove

those damages within a reasonable degree of certainty, it may only recover nominal damages awarded at the discretion of the trial judge. *Id.*

The Court noted that although lost profits are inherently uncertain and it is impossible to calculate them with mathematical precision, that a claimant must nonetheless bring forth evidence which establishes a reasonable basis for computing lost profits. *Id.* A claimant must show that the damage can be traced to the Defendants' wrongful conduct within a reasonable degree of certainty. *Id.* Generally, to establish such damages, the business at issue, must be a going concern so that the previous performance of the business can be a basis to measure future lost profits. *Id.* Therefore, in that case, the Court excluded numerous claims for lost profits related to business ventures that the plaintiff was involved in. *Id.*

The same is true in this case. The following damages claimed by Plaintiffs are in the nature of lost profits:

1.  Loss of value in the Bailey Feed Store ($180,000);

2.  Boarders lost due to publicity ($21,000);

3.  Boarders lost due to no advertising ($63,000);

4.  Lost foals due to publicity ($100,000);

5.  Lost value in horse Emmy due to no showings ($20,000);

6.  Lost value in horse Warrior due to no showings and no training ($250,000);

7.  Warrior lost breeding fees ($250,000);

8.  Lost training fees ($30,000);

9.  Lost hauling fees ($15,000); and

10. Chaff dealer ($100,000).

As is discussed in Undisputed Fact No. 19, above, with respect to all of these categories, Plaintiffs offer nothing but their bare conclusory assertion with respect to these issues. Plaintiffs offer no expert testimony, documentary evidence, or other corroborating evidence. Instead, Plaintiffs offer only their bare conclusory assertions and rank speculation regarding these lost profit damages. Additionally, with respect to the $180,000 in Bailey Feed Store damages, the Bailey Feed Store is not a party Plaintiff to this action. Mr. Swift is not an employee and never has been. He views himself as retired. He does not file tax returns due to the lack of income generated. Exhibit T, Swift deposition, p. 27 line 24 – p. 28 lines 1-19; p. 37 lines 8-11; p. 49 lines 11-15; p. 30 line 20 – p. 31 line 6; p. 31 line 18 – p. 32 line 8. A plaintiff such as Mr. Swift, is not entitled to recover for "loss of business profits." In Colorado, an individual plaintiff cannot recover damages for lost profits from a non-party business that a plaintiff owns because such profits arise from the elements of invested capital and employed labor (there is none at Bailey Feed) rather than personal labor. That is why it is not a measure of damages in a Colorado personal injury case. *Ford Motor Co. Vehicle v. Conrardy,* 488 P.2d 219 Colo.App. 219, 222 (Colo.App. 1971).

With respect to the revenue for lost boarders, the Plaintiffs admitted that they never previously had any such boarders. *See* undisputed fact no. 19. Additionally, with the damages related to the horse named Emmy, Plaintiffs have no ownership interest in the horse named Emmy. *Id.* With respect to the horse Warrior, there is no evidence that Plaintiffs have any ownership interest in the horse named Warrior. *Id.* In short, Plaintiffs offer no evidence to support this claim for damages and this Court should not allow them to pursue it in light of the legal principals articulated above. *Id.*

## VI.   UNCORROBORATED CLAIMS OF NON-ECONOMIC DAMAGES ARE NOT RECOVERABLE IN § 1983 CASES

In the Tenth Circuit, in a § 1983 case, uncorroborated testimony of an emotional distress from a plaintiff is insufficient to prove damages for emotional distress under § 1983.  *See Dill v. City of Edmond,* 155 F.3d 193 (10th Cir. 1998) (citing *Koopman v. Water District No. 1 of Johnson County, Can.,* 41 F.3d 1417, 1420 (10th Cir. 1994).   In *Dill*, the plaintiff testified that an employment transfer was "very upsetting" and everything he worked for was "taken away."  He also testified that some other officers would not associate with him because of his transfer. Plaintiff in that case used no other evidence in the record to support his claim for emotional distress.  The Court held that this was insufficient to prove emotional distress as a matter of law. Similarly, in this case, Plaintiffs have provided no evidence from a psychiatrist, other witnesses, or anyone other than the Plaintiffs to corroborate their claims for emotional distress.

*Koopman,* the plaintiff argued that under *Wulf v. City of Wichita,* 883 F.2d 842 (10th Cir. 1989), that if there was any evidence of mental distress, the issue of mental distress had to go to the jury.  The Court rejected that argument.  The Court held that where there were no witnesses to corroborate testimony as to his mental state, there was no basis for inferring that a denial of due process was the cause of his emotional distress.    The same is true in this case.   Plaintiffs have disclosed no evidence that corroborates their claim for $2 million in emotional distress.

## VII.   PLAINTIFFS ARE NOT ENTITLED TO PUNITIVE DAMAGES

Under federal law in a § 1983 action, a finding of punitive damages requires the defendant's conduct is "shown to be motivated by evil motive or intent" or "involves reckless or callous indifferent to the federally protected rights of others."  *Smith v. Wade,* 461 U.S. 30, 56 (1983).  In this case, there is no evidence that any of these Defendants' conduct was motivated by evil motive

or intent.  Nor, is there any evidence of reckless or callous indifference to the federally protected rights of others.  This issue is addressed more fully and these Defendants' Motion for Summary Judgment regarding the individual capacity claims against them, which is specifically incorporated herein by reference.  Nevertheless, as it relates to this Motion, these Defendants are entitled to partial summary judgment regarding the punitive damages claim against them.

## VIII.  <u>CONCLUSION</u>

The Plaintiffs' claim for millions of dollars in damages is not supportable.  Plaintiffs should be precluded from recovering any damages incurred after the animal bond hearing because the DA made the decision to prosecute notwithstanding the alleged material omissions from the affidavit in support of the warrants.  Plaintiffs' claims for lost profit damages are speculative and Plaintiffs have disclosed no reasonable basis upon which to compute such damages.  As such, Defendants are entitled to judgment as a matter of law regarding the lost profit claims.  The claim for $2,000,000 in non-economic damages is uncorroborated and therefore unrecoverable as a matter of law.  Finally, there is no material issue of fact regarding the punitive damages claim.  Therefore, the only damages Plaintiffs can recover against these Defendants are for the $4,852.94 in attorney fees incurred before April 10, 2012.

Respectfully submitted this 15th day of December, 2014.

*(Original signature on file at the offices of Fowler, Schimberg & Flanagan, P.C.)*

*/s/ Timothy P. Schimberg*

Timothy P. Schimberg

FOWLER, SCHIMBERG & FLANAGAN, P.C.
1640 Grant Street, Suite 150
Denver, Colorado 80203
(303) 298-8603

ATTORNEY FOR DEFENDANTS CINDY
HARDEY, BOBBI PRIESTLY, MONTE GORE,
AND FRED WEGENER

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of December, 2014, I caused a true and correct copy of the foregoing **MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING DAMAGES** to be filed via the ECF system, with notice of same being electronically served to the following:

Brice A. Tondre, Esq.
Brice A. Tondre, P.C.
215 S. Wadsworth Blvd., Ste. 500
Lakewood, CO 80226-1566
***Attorney for Plaintiffs***

John M. Lebsack, Esq.
White and Steele, P.C.
600 17th Street, Ste. 600N
Denver, CO 80202
***Attorney for Defendant Ashleigh Olds***

*(Original signature on file at the offices of Fowler, Schimberg & Flanagan, P.C.)*

*/s/ Kala Cyganiewicz*

_____