UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02469-RM-MJW

RANDALL J. HATLEE and
RONALD L. SWIFT

Plaintiffs,
vs.

CINDY HARDEY,
BOBBI PRIESTLY,
MONTE GORE
FRED WEGENER and
ASHLEIGH OLDS,

Defendants.

_____

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT OLDS' MOTION FOR SUMMARY JUDGMENT [#61]**
_____

NOW COME the Plaintiffs, Randall J. Hatlee and Ronald L. Swift, by and through their attorney, Brice A. Tondre, and for their memorandum in opposition to Defendant Olds' motion for summary judgment [#61] state as follows:

**INTRODUCTION**

Defendant Ashleigh Olds ("Dr. Olds") is a doctor of veterinary medicine licensed to practice by the State of Colorado. Dr. Olds' baseless statements to the other Defendants, animal rights activists and the news media resulted in the seizure of Plaintiffs' property and their prosecution. (Amended Complaint [#22] para. 7).

The questions presented by Dr. Olds' motion for summary judgment [#31] are:

A. Was Dr. Olds acting under color of state law?

1

B. Is Dr. Olds entitled to assert the defense of qualified immunity to the claims pursuant to 42 U.S.C. §1983?

C. Is Dr. Olds entitled to statutory immunity from the common law malicious prosecution claim?

D. Did Dr. Olds have probable cause to advocate institution and continuation of prosecution of Hatlee and Swift?

In this jurisdiction the Court typically does not dismiss a complaint without giving the plaintiff an opportunity to amend. *Hall v. Bellmon*, 935 F.2d 1106, 1109-1111 (10th Cir. 1991

## ARGUMENT AND AUTHORITY

**Dr. Olds was acting under color of state law.**

Dr. Olds purports to have been acting as she did pursuant to the mandate of C.R.S. §13-64-121which provides in relevant part:

> (1) A licensed veterinarian who, during the course of attending or treating an animal, has reasonable cause to know or suspect that the animal has been subjected to cruelty in violation of section 18-9-202…shall report or cause a report to be made of the animal cruelty…to a law enforcement agency or the bureau of animal protection.
>
> (2) A licensed veterinarian shall not knowingly make a false report of animal cruelty…to a local law enforcement agency or to the bureau of animal protection.
>
> (3) A licensed veterinarian who wilfully violates the provisions of subsection (1) or (2) of this subsection commits a class 1 petty offense, punishable as provided in section 18-1.3-503 C.R.S.
>
> (4) A licensed veterinarian who in good faith reports a suspected incident of animal cruelty…to the proper authorities in accordance with subsection (1) of this section shall be immune from liability in any civil or criminal action brought against the veterinarian for reporting the incident. In any civil or criminal proceeding in which the liability of a veterinarian for reporting an incident described in subsection (1) of this subsection is at issue, the good faith of the veterinarian shall be presumed.

This section mandates reporting and gives the reporting veterinarian immunity if the report is made in good faith. The report is not the act of citizen informant. It is the act of a co-actor with animal control officers mandated by state law.

Veterinarians are a prime source for detection of animal cruelty. Because of their education, training and experience they are well equipped to reach a scientific conclusion that an animal had probably been subjected to cruelty. As such they are part of the investigative team charged with the responsibility of detecting and prosecuting animal cruelty and thus an investigative arm of the state. The "reasonable cause" requirement of the statute requires that the veterinarian make an informed decision, not an unsupported guess. Reasonable cause is the same as probable cause.

Here, a report by Dr. Olds was not necessary. The skinny horses had already been reported by Agent Smith. It was a publicity stunt by Dr. Olds to endear her to horse lovers who were clients or potential clients. Her conduct throughout the case was that of an advocate for the seizure of Plaintiffs' horse and their prosecution. One who causes the initiation or continuation of a seizure and/or prosecution on false premises, if done under color of state law, violates the Fourth Amendment and the common law. *Pierce v. Gilchrist*, 359 F.3d 1279, 1295-96 (10th Cir. 2004).

Agent Smith merely reported to Defendant Priestly that she saw 7 skinny horses wh en she was at the ranch. Priestly requested that Defendant Hardey investigate. Hardey investigated and after discussing her findings with Priestly, two veterinarians and a state animal cruelty investigator, a consensus decision was reached that the horses were not in danger and that Plaintiffs should be given 30 days to show that the horses were sick, not mistreated. Exhibits 1, 2

and 3).

What we have here is Park County animal control, the Department of Agriculture, Dr. Britt and Drs. Horton and Burton, all of believed that further investigation was necessary and Dr. Olds who was advocating seizure and prosecution without probable cause to believe that a crime had been committed. Exhibits 1, 2, 3, 5, 17, 22 and 23)

Because of the public outcry which Dr. Olds was able to incite, the unsupported allegations of Dr. Olds were accepted by the Sheriff's Office Defendants who believed further investigation was necessary. Due to the public pressure incited by Dr. Olds, a conspiracy to seize and prosecute without probable cause was formed, thus making Dr. Olds a state actor.

The facts clearly demonstrate that Dr. Olds was not acting in good faith and did not have reasonable cause to suspect animal cruelty. Dr. Olds steadfastly asserted that the horses were intentionally starved by the Plaintiffs and steadfastly refused to even consider that they may be sick rather than starved. No veterinarian supported her approach. In fact, Dr. Olds did not follow her own diagnosis protocol (Exhibit 31pp.31-32) and her clinic's protocol (Exhibit 12).

Animal Control Officer Dawn Smith from the Routt County Sheriff's Department visited Echo Valley Ranch to perform a check on Bear, a horse under Routt County's care and custody. Officer Smith reported to Defendant Gore who reported to Defendant Priestly that during her visit to the ranch she noticed seven very thin horses.

On February 16, 2012, Defendant Hardey went to the ranch to do a welfare check. On that same date Officer Smith, accompanied by Dr. Olds, went to the ranch for the purpose of seizing Bear and taking it to Dr. Olds' clinic for evaluation and treatment.

While on the ranch Dr. Olds noted that seven of the horses were thin and that one was

down and under the care of a veterinarian. Without any evaluation, examination or investigation of the seven horses Dr. Olds stated that the seven horses had been starved, mistreated and neglected and demanded that Defendant Hardey seize the seven horses and take them to Dr. Olds clinic for evaluation and treatment. Defendant Hardey communicated the demand to Defendant Priestly who instructed Defendant Hardey to tell Dr. Olds to take Bear and leave the premises. (Exhibits 1amd 2).

Dr. Olds had no reasonable basis to know or suspect that the seven horses had been subjected to cruelty. In fact, Dr. Olds' demand was below the standard of care for a veterinarian. She did not even begin to develop a differential diagnosis before making her unfounded claims of criminal conduct by the Plaintiffs. (Exhibit 26).

Defendant Hardey evaluated the seven horses, noted they had food and water available, and noted that the other 34 horses on the ranch were in good condition. Defendant Hardey advised Defendant Priestly, two veterinarians and an animal control investigator of her findings. They reached a consensus decision that the horses were safe and to leave the horses in the care and custody of the Plaintiffs. (Exhibits 1 and 2).

The consensus decision to leave the horses in the care and custody of the Plaintiffs infuriated Dr. Olds. After she learned of the consensus decision Dr. Olds again told Defendant Hardey that the horses were suffering from a very clear cut case of starvation and malnutrition. (Exhibit 4).

After her demands were again refused, Dr. Olds embarked on a campaign to bring pressure to bear on the Sheriff's Office in order to cause the horses to be seized and the Plaintiffs to be prosecuted. Dr. Olds allowed her unfounded claims to be broadcast over Chanel 7 News

and encouraged Harmony HorseWorks to embark upon a public outcry that the horses be seized and the Plaintiffs be prosecuted. Based upon Dr. Olds opinion and request, Harmony HorseWorks embarked upon a publicity campaign which was successful. There were threats to take Plaintiffs' horses away from them and threats to injure Plaintiffs.

Defendants Priestly, Gore and Wagener, despite their knowledge that seizure of the horses was not permissible under the facts or the law, directed Defendant Hardey to obtain a warrant. They undertook this approach in hopes that it would prevent Harmony HorseWorks and its followers from taking matters into their own hands which they were threatening to do if the Sheriff's office did not act to their satisfaction. Said Defendants failed to take the proper course of prosecuting those who were threatening a breach of the peace. This was an attack on the innocent to avoid prosecuting the guilty.

The threats which caused the Defendants Hardey, Priestly, Gore and Wagener to seize the horses and institute prosecution of the Plaintiffs were a direct outgrowth of the unfounded claims of Dr. Olds and her promotion of the public campaign which led to their action.

The Sheriff's Office succumbed to the pressure and obtained the Plaintiff's agreement to move the horses. When that did not quell the public outcry, the Sheriff's Office breached its contract with the Plaintiffs by seizing the horses and instituting prosecution of Plaintiffs.

The Defendants Hardey, Priestly, Gore and Wagener agreed to the demands of Dr. Olds in order to quell the public outcry, despite any legal basis to do so. This constitutes a conspiracy between them and Dr. Olds to violate Plaintiffs' rights under the Fourth Amendment.

The warrant to seize the horses was obtained through material omissions. It was later determined that the warrant was illegal. The jury acquitted the Plaintiffs of the charges of animal

cruelty. Dr. Olds was the only Veterinarian who testified for the prosecution.

A more complete discussion of the pressure exerted by Dr. Olds and her followers and how it affected the Sheriff's Office is presented in Plaintiffs' responses to the four dispositive motions of Defendants Wegener, Gore, Priestly and Hardey.

Dr. Olds is considered to have been acting under color of state law under the joint participation theory announced in *Lugar v. Edmondson Oil Company, Inc*., 457 U.S. 922 (1982) and/or the conspiracy theory announced in *Adickes v. S. H. Kress & Co*., 398 U.S. 144 (1970) and discussed further in *Dennis v. Sparks*, 449 U.S. 24 (1980) and *Tower v. Glover*, 467 U.S. 914 (1984).

In *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442 (10th Cir. 1995) the Court reviewed the theories under which private individuals are considered to be state actors. The relevant discussion is found at 1453-1457 under the heading "Joint Action". Cited in the discussion is *Wagenmann v. Adams*, 829 F.2d 196, 209-211 (1st Cir. 1987) which affirmed a finding that a private citizen was a state actor because of evidence that he exerted influence over a police investigation which led to the illegal arrest and incarceration.

Each member of the conspiracy is liable for all of the overt acts performed by all members of the conspiracy. Hence, Dr. Olds is responsible for procuring issuance of the warrant and commencement continuation of the prosecution.

Here Dr. Olds incited a public campaign designed to cause the other Defendants to seize the horses and prosecute the Plaintiffs. In the words of Harmony HorseWorks on February 18, 2012, "wait and see what happens after the email blast goes out." (Exhibit 8).The basis for the email blast was the unfounded statement of Dr. Olds that the horses were suffering from a very

clear cut case of starvation and malnutrition which the Sheriff's office was doing nothing about.

The public campaign incited by Dr. Olds caused the other Defendants to agree to Dr. Olds' unfounded demands. Thus the Joint Action began.

The Exhibits to this memorandum portray the conspiracy. Contained in the Separate Statement of Material Facts is a summary of the content and significance of each Exhibit.

There can be no doubt that procuring a warrant with an affidavit which fails to disclose material facts is a violation of the Fourth Amendment. *DeLoach v. Bevers*, 922 F.2d 618, 621-622 (10th Cir. 1990); *Bruning v. Pixler*, 949 F.2d 352, 357 (10th Cir. 1991).

There also can be no doubt that malicious prosecution by state actors is a violation of the Fourth Amendment. *Pierce v. Gilchrist*, 359 F.3d 1279 (2004).

Dr. Olds knew by virtue of her training and experience as a veterinarian that without investigation her allegations of animal cruelty were unfounded. The other Defendants also knew the allegations were unfounded which is the reason for the agreement to evaluate the horses for 30 days while they remained in Plaintiffs' custody and care. Therefore, all Defendants knew that there was no reasonable basis to seize the horses or prosecute the Plaintiffs without completion of an investigation. Dr. Horton, Plaintiffs' veterinarian, was of the opinion that much more analysis had to be done before a conclusion as to what was causing the condition of the seven horses could be reached. (Exhibits 17, 22 and 23).

Failure to complete the investigation was a violation of the Fourth Amendment. *Lundstrom v. Romero*, 616 F.3d 1108, 1120 (10th Cir. 2010); *Cortez v. McCauley*, 478 F.3d 1108, 1117 (10th Cir. 2007).

Dr. Olds asserts that she cannot be held liable for a violation of the Fourth Amendment

and common law malicious prosecution because she did not and could not obtain a warrant or commence a prosecution.

Her assertion is debunked by *Pierce v. Gilchrist*, 359 F.3d 1279, 1291-1294 (10th Cir. 2004) which points out that §1983 applies "not only to a person who 'subjects' but also to any person who 'causes to be subjected'…any citizen of the United States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

An action for malicious prosecution can be brought against the one who procures the issuance of a warrant or the institution of a prosecution as well as the one who institutes them. Restatement, Second, Torts: § 653.

Dr. Olds did, in fact, cause the warrant to be issued and the prosecution to be commenced by the publicity campaign based upon her unfounded statements that the horses had been starved, mistreated and neglected.

**Dr. Olds is not entitled to qualified immunity.**

Dr. Olds claims she is entitled to assert a qualified immunity defense. She relies on *Filarsky v. Delia,* 132 S.Ct. 1657 (2012). Filarsky was an attorney hired by a fire department to conduct an investigation of the conduct of an employee. The court held he was entitled to qualified immunity because the nature of his engagement was similar to part time employment.

The nature of Dr. Olds' involvement is far different from that of Filarsky. The other Defendants were co-conspirator of Dr. Olds who acted in a fashion purposely calculated to cause the other Defendants to seize Plaintiffs' horses and prosecute them. Dr. Olds accomplished the conspiracy by inciting public outcry for the seizure and prosecution. This is not a situation which situates Dr. Olds for the same immunities as an employee of the Sheriff's Office. Hence, *Wyatt v.*

*Cole*, 504 U.S. 158,168-169 (1992) which denies applicability of qualified immunity to the private actor, is the appropriate authority. It holds that private persons who conspire with state officials to violate constitutional rights are not entitled to a qualified immunity defense.

### Dr. Olds is not entitled to statutory immunity.

The statutory immunity granted by C.R.S. §13-64-121 does not apply to §1983 claims. *See, Martinez v. California*, 444 U.S. 27, 284 n.8 (1980); *Howlett v. Rose*, 496 U.S. 356, 376-77 (1990); *Felder v. Casey*, 487 US. 131, 139 (1988).

Nor does the statutory immunity require dismissal of the common law malicious prosecution claim. The facts alleged support the conclusion that there was not a good faith basis for Dr. Olds' accusations.

### Dr. Olds did not have probable cause to advocate prosecution and its continuance.

Lack of a good faith also defeats the existence of probable cause. A reasonable veterinarian would not make the assertions made by Dr. Olds because she had no scientific basis. She ignored her own protocols for making a diagnosis. That is unreasonable.

Exhibit 26 details why Dr. Olds was not acting reasonably, in good faith or with probable cause.

## V. CONCLUSION

It is respectfully submitted that, based on the foregoing, the motion for summary judgment must be denied.

/s/ Brice A. Tondre
_____
Brice A. Tondre
215 South Wadsworth Blvd., #500
Lakewood, Colorado   80226
Telephone:  303-296-3300
Facsimile: 303-238-5310
briceatondrepc@msn.com

ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on this the 3rd day of January, 2015, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of the filing to the following:

Timothy P. Schimberg
t_schimberg@fsf-law.com


John Lebsack
jlebsack@wsteele.com

/s/ Brice A. Tondre
_____