UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02469-RM-MJW

RANDALL J. HATLEE and
RONALD L. SWIFT

Plaintiffs,

vs.

CINDY HARDEY,
BOBBIE PRIESTLY,
MONTE GORE
FRED WEGENER and
ASHLEIGH OLDS,

Defendants

---

**DEFENDANT OLDS' REPLY BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT [#61]**

---

Defendant Ashleigh Olds ("Dr. Olds"), through her counsel John Lebsack and Adam Goldstein, files this Reply Brief in support of her Motion for Summary Judgment [#61].

## INTRODUCTION

Plaintiff concedes the bulk of Dr. Olds' Statement of Undisputed Material Facts. These undisputed facts entitle Dr. Olds to judgment as a matter of law. Dr. Olds was not a state actor, and Plaintiff's suggestion that Colorado's mandatory reporting statute converts Dr. Olds into a state actor has been roundly rejected. Next, the undisputed facts establish that Dr. Olds had sufficient information to know or suspect animal cruelty. Plaintiff's argument that Dr. Olds needed to meet a professional standard of care and reach a formal differential diagnosis before reporting her suspicions is contrary to the plain language of the statute.

1

## UNDISPUTED MATERIAL FACTS

Dr. Olds' Reply Statement of Undisputed Material Facts In Support of Motion for Summary Judgment, filed herewith, constitutes Dr. Olds' formal reply to each of Plaintiffs' responses to Dr. Olds' original Statement of Undisputed Facts.

It is notable that Plaintiffs did not respond to, and thereby conceded, the vast majority of the facts presented in Dr. Olds' Statement of Undisputed Material Facts. [*See* #73-2.] Where Plaintiffs did respond to Dr. Olds' Statement of Undisputed Material Facts, the response often lacks any citation to authority. *Id.*, at ¶¶ 4, 7, 46-49, 54, 60, 68 [sic], 83 [sic], 100 [sic]. Finally, in the rare instances when Plaintiff's response included a citation to authority, the citations are contrary to the Court's requirement of pinpoint citations and/or they fail to support the asserted response. *See id.*, at ¶¶ 11, 36, 42, 44-45, 50, 62 [sic], 74 [sic], 77 [sic], 84 [sic], 85 [sic], 96 [sic].[1] The Court should reject Plaintiffs' arguments and purported facts that are unaccompanied by a proper reference to supporting exhibits in the record.

Important to Dr. Olds' Motion, it is now conclusively established that the following facts are undisputed:

- Dr. Olds is a licensed veterinarian (Statement of Fact 1).
- Dr. Olds was not an agent of Park County (SOF 6).

---

[1] Plaintiffs submitted 36 exhibits with their responses to the defendants' motions for summary judgment [see index at #72-1], but nine of these exhibits are not referenced anywhere in Plaintiffs' response briefs or Plaintiffs' responsive statement of facts to Dr. Olds' motion or the motions by the other defendants. The unreferenced exhibits are 14, 16, 21, 24, 25, 27, 28, 30, and 36. The Court should not consider these unreferenced exhibits.

- Dr. Olds played no part in the drafting, reviewing or approval of the Park County Sheriff's seizure application and affidavit, or the summonses and complaints issued to the Plaintiffs (SOF 92-93).

- Dr. Olds played no role in the seizure of the Six Horses on February 23, 2012 (SOF 94).

- Maggie, Bear and The Six Horses were too thin on February 16, 2012 (SOF 13, 41).

- The photos of Maggie, Bear and the Six Horses taken on February 16, 2012 and attached as exhibits to Dr. Olds' Motion are authentic (SOF 14-16).

- Dr. Olds knew that one horse under Plaintiffs' care (Bear) was already the subject of a pending animal abuse case (SOF 17-18, 24-26).

- On February 16, 2012, Dr. Olds found Bear down, extremely thin, covered in urine/manure and unable to stand on its own (SOF 30, 32).

- On February 16, 2012, Dr. Olds saw an emaciated, down and sore-covered mare named "Maggie" (SOF 33). Maggie died the next day (SOF 35).

- On February 16, 2012, Dr. Olds saw The Six Horses, all of which were too thin (SOF 13, 36, 41).[2]

- On February 16, 2012, Dr. Olds was told by Plaintiff Swift that several horses at Echo Valley Ranch had already died (SOF 43).

---

[2] Plaintiffs contend there is an issue of fact as to whether The Six Horses' feed bins were empty and water troughs frozen upon Dr. Olds' February 16, 2012 visit. *See* Reply Statement of Facts, 36, 42. Dr. Olds disputes that Plaintiffs have raised a true disputed question of fact on the issue. Regardless, Dr. Olds had reasonable cause to suspect abuse even without the fact of empty food and water bins.

- The last time The Six Horses had been seen by a veterinarian and received treatment was: Fiona – never; Lena – never; Echo - August 2010; Midnight – September 2010; River – October 2010; Chance - October 2010 (SOF 74).
- During a February 20, 2012 examination, another veterinarian (Dr. Horton) found the Six Horses to be extremely thin and grossly anemic (SOF 76-78).
- Dr. Horton agrees that "the horses had deteriorated past a point where assistance should have been sought," and "regardless of why the horses were thin, . . . those horses were let go far too long" (SOF 80-82).
- On April 10, 2012, and again on December 3, 2012, Park County Judge Brian L. Green found that probable cause existed to charge Plaintiffs with animal cruelty (Reply Statement of Facts 44, 49, 97).

## ARGUMENT

**I.    Dr. Olds Did Not Act Under Color of State Law.**

Plaintiffs' response brief fails to create a triable issue that Dr. Olds acted under color of state law. Plaintiff's response brief raises several arguments, but none are availing.

**A.    C.R.S. § 13-64-121 does not make Dr. Olds a state actor.**

Plaintiffs' primary argument is that Dr. Olds qualifies as a state actor because C.R.S. § 13-64-121 requires licensed veterinarians to report suspected animal cruelty to law enforcement. Without any case law or other legal support, Plaintiffs claim this statute turns veterinarians into "co-actors with animal control officers" and "an investigative arm of the state."

In truth, multiple federal courts have determined that state mandatory reporting statutes do not turn the mandatory reporter into a state actor for purposes of § 1983. *See generally*,

4

*Brown v. Newberger*, 291 F.3d 89, 93 (1st Cir. 2002)(statutory reporting requirement does not create the kind of regulatory nexus that justifies treating reporter as a state actor); *Preston v. New York*, 223 F.Supp.2d 452, 465 (S.D.N.Y. 2002)(statutory obligation to preserve evidence and report suspected abuse insufficient to impose § 1983 liability on a private entity); *Thomas v. Beth Israel Hospital, Inc.*, 710 F.Supp. 935, 940-41 (S.D. N.Y. 1989)(compliance with state law by reporting suspected abuse does not mean reporter acted under color of state law); *Schneider v. Sutter Amador Hospital*, 2014 U.S. Dist. LEXIS 152869, at *18 (E.D. Cal. 2014)("the doctors' compliance with state reporting requirements does not make them state actors"); *Amor v. Arizona*, 2009 U.S. Dist. LEXIS 19606, at *7-11 (D. Ariz. 2009)(private doctor failed to come within color of state law despite mandatory reporter statute); *Haag v. Cuyahoga County*, 619 F.Supp. 262, 283 (N.D.Ohio, 1985)(individual not state actor despite mandatory reporting law); *Arline v. City of Jacksonville*, 359 F.Supp.2d 1300, 1312 (M.D. Fla. 2005)(private doctor's alerting authorities of suspected child abuse per state statute and providing information that may lead to an arrest is not sufficient to convert a private person's actions into public action); *Murphy v. Parker*, 2006 U.S. Dist. LEXIS 50141, at * 7 (D. Ariz. 2006)(a private person who makes representations to an official, even in a report required by law, is not acting under color of state law within the meaning of the civil rights statutes); *Boyko v. Parkview Hospital, Inc.*, 2012 U.S. Dist. LEXIS 114384, at * 10 (N.D.Ind. 2012)(fact that private actor is required to follow the laws of a state does not mean the actor functions as the state by complying); *see also Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983)("the mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under §§ 1983 or 1985.").

The *Brown* decision is directly on point.  In *Brown*, the plaintiff sued a social worker for reporting suspected abuse under the state's mandatory reporting law.  *Brown*, 291 F.3d at 93.  The 1st Circuit ruled that the social worker was <u>not</u> acting under color of state law despite the state's mandatory reporting statute:

> Defendant Kern's liability as a state actor is pressed on the basis that she filed a report of suspected sexual abuse with DSS.  Mass. Gen. Laws ch 119, § 51A requires a wide variety of social and health workers to file such reports if they have reasonable cause to believe that a child is suffering from sexual abuse. . . . While this kind of "mandatory reporting" goes somewhat beyond the cases dealing with the voluntary furnishing of information to the police, . . . we conclude that the reporting requirement under section 51A does not create the kind of regulatory nexus that could justify treating Kern as a state actor.

*Id.* (internal citations omitted).  As the 1st Circuit in *Brown* summed up:

> Nothing seems more counterintuitive to us than to reason that a statute which protects one who complies from civil or criminal actions under state law should be the vehicle for subjecting the actor to liability under federal law.

*Id.*  Because so-called "mandatory reporting" statutes do not turn the mandatory reporter into a state actor for purposes of § 1983, Dr. Olds does not qualify as a state actor and Plaintiff's § 1983 claims against her must be dismissed.

### B. Dr. Olds does not qualify as a state actor under the "joint action" or "conspiracy" tests.

Plaintiffs' cited case law does not support finding Dr. Olds a state actor under the so-called "joint action" or "conspiracy" tests.  Cases concerning these doctrines involve situations where the defendant pursued a constitutional violation with the assistance of or in conspiracy with state officials.  *See e.g., Lugar v. Edmondson*, 457 U.S. 922.  (1982).  *Lugar* involved a creditor seizing for himself a debtor's property with the assistance of a sheriff.  *Id.*, at 924-25.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (197) involved a lunch counter manager

refusing service on racial grounds at the direction of local police. *Dennis v Sparks*, 499 U.S. 24 (1980) and *Tower v. Glover*, 467 U.S. 914 (1984) involved the alleged bribing of a judge and a public defender, respectively. By contrast, Dr. Olds did not seize anything, she did not garnish or attach any property for herself, she received no compensation from Park County for her actions, and she was not pursuing any sort of private cause of action against Plaintiffs.

The case of *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1142 (10th Cir. 1995) rejected the application of the "joint action" and "conspiracy" doctrines. Under either test, "the conduct allegedly causing the 'deprivation of a federal right' must be 'fairly attributable to the state.'" *Id*, at 1447. The existence of governmental regulations, standing alone, does not provide the required nexus. *Id.*, at 1448. Likewise, citizens who make complaints to police officers that result in arrests are not state actors. *Id.*, at 1454. For the joint action/conspiracy test to apply, the allegedly unconstitutional act must have resulted from a concerted action such as a conspiracy, prearranged plan, or policy that substituted the judgment of a private party for that of the police. *Id.* Such joint action or conspiracy is not present when the police make an independent decision to make the challenged arrest. *Id.*

Here, there is no evidence to suggest that the Sheriff's Office made anything other than an independent decision to charge Plaintiffs and seize the horses. Dr. Olds lacked the power or authority to compel the Sheriff's Office to do anything. There is no evidence to suggest that the employees of the Sheriff's Office substituted Dr. Olds' judgment in place of their own. To the contrary, the undisputed facts show that Officer Hardey *declined* to seize the horses on February 16, 2012 at Dr. Olds' suggestion, and did so several days later after her ongoing investigation revealed further evidence (from Plaintiffs' own veterinarian) that Plaintiffs' let matters go too

7

long and should have sought assistance sooner. *See* SOF 52, 70-82, 85-86.  It is undisputed that Dr. Olds was not involved in the seizure of the horses on February 23, 2012.  *See* SOF 87-88, 91-96.

Because the so-called "joint action" and "conspiracy" tests do not apply, Dr. Olds does not qualify as a state actor and she is entitled to summary judgment on Plaintiff's § 1983 claims.

### C. Plaintiffs' unsupported factual claims should be disregarded.

Plaintiffs' response brief makes a series of factual assertions without citation to any record support.  For example, Plaintiffs claim it was Dr. Olds who incited the so-called public outcry, but Plaintiffs offer no evidence linking her thereto.  *See* [#67, at p. 4, 7-8].[3]  Next, Plaintiffs allege that Dr. Olds asserted that "the horses were *intentionally* starved by the Plaintiffs," but Plaintiffs point to no evidence of any such assertion.  *See* [#67, at p. 4] (emphasis added).  Plaintiffs claim "Dr. Olds allowed her unfounded claims to be broadcast over Channel 7 News" without any evidence that her permission was sought or granted.  *See* [#67, at p. 5]. Plaintiffs offer no support for the claim that Dr. Olds "encouraged Harmony HorseWorks to embark upon a public outcry," or that the publicity campaign was "based upon Dr. Olds' request."  *See* [#67, at p. 6].  Finally, Plaintiffs claim that anonymous threats "were a direct outgrowth of the unfounded claims of Dr. Olds," but Plaintiffs offer no evidentiary support for the assertion.  *See* [#67, at p. 6].

Plaintiffs unsupported factual claims do not constitute evidence.  Unsupported allegations lacking record support do not create triable issues of fact.  *See* Fed.R.Civ.P. 56(c)(1); *Celotex*

---

[3] On Page 7, Plaintiffs cite to an email drafted by Barbara Wright of Harmony HorseWorks (Exhibit 8), but Dr. Olds is not even copied on the email and there is no evidence linking Dr. Olds to it.

*Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  Further, even if these alleged facts were supported by evidence and assumed true, they do not make Dr. Olds a state actor.  Even assuming for argument that Dr. Olds spoke out as part of the public outcry, there is no evidence she did so on behalf of the state or under color of state law.  The First Amendment would be seriously eroded if a citizen's call for government action subjects the speaker to § 1983 liability.

Because Dr. Olds did not act under color of state law, the 1983 claims against her fail as a matter of law.

## II.     Plaintiffs' State Law Malicious Prosecution Claim Against Dr. Olds Fails Because Dr. Olds Enjoys Statutory Immunity.

Plaintiffs' state law malicious prosecution claim fails as a matter of law because Dr. Olds has immunity under C.R.S. § 12-64-121 (2013).  As discussed in Dr. Olds' Motion, this statute (i) requires veterinarians to report suspected animal cruelty, (ii) provides immunity for the making of such good faith reports, and (iii) presumes the good faith of veterinarians making such reports.  C.R.S. § 12-64-121.

Plaintiffs' argument against Dr. Olds' statutory immunity is based on an unsupportable interpretation of the statute.  Specifically, Plaintiffs argue that (i)  the "reasonable cause" requirement of the statute requires a veterinarian to have probable cause prior to making a report [#67, at p. 3]; and (ii) a veterinarian must meet a professional standard of care and reach a formal differential diagnosis before reporting suspected animal cruelty. [#67, at p. 5].  These arguments misinterpret the plain language of the statute.

> A. **C.R.S. § 12-64-121 does not require probable cause prior to the making of a report and the attachment of statutory immunity.**

The interpretation of a statute is a question of law for the Court, and not a disputed issue of fact. *See generally*, *Stewart v. Beach*, 701 F.3d 1322, 1334 (10th Cir. 2012); *Cain v. People*, 327 P.3d 249 (Colo. 2014). Contrary to Plaintiffs' suggestion, C.R.S. § 12-64-121 does not require probable cause before its statutory reporting obligation is triggered and its immunity protection attaches. The statute, on its face, states otherwise:

> A licensed veterinarian who . . . **has reasonable cause to know or suspect** that the animal has been subjected to cruelty in violation of section 18-9-202, C.R.S., . . . shall report or cause a report to be made of the animal cruelty or animal fighting to a local law enforcement agency or the bureau of animal protection. . . .
>
> A licensed veterinarian who in good faith reports **a suspected incident** of animal cruelty . . . in accordance with subsection (1) of this section shall be immune from liability in any civil or criminal action brought against the veterinarian for reporting the incident.

C.R.S. § 12-64-121 (1), (4) (emphasis added). As opposed to requiring "probable cause" of animal cruelty, the statute merely requires "reasonable cause to know or suspect" cruelty.

"Reasonable cause to know or suspect" is not the same thing as probable cause. Probable cause is defined to exist when the objective facts and circumstances presented are sufficient to induce a person of ordinary prudence and caution to entertain a reasonable belief that the defendant committed a crime. *See generally*, *People v. Castaneda*, 249 P.3d 1119, 1122 (Colo. 2011); *People in re M.V.*, 742 P.2d 326, 329 (Colo 1987). Stated differently, probable cause exists "when there is a fair probability that the defendant has committed, is committing, or is about to commit a crime." *People v. Brown*, 217 P.3d 1252, 1256 (Colo. 2009). Critically,

probable cause requires more than mere suspicion. *People v. Gutierrez*, 222 P.3d 925, 937 (Colo. 2009); *citing Brinegar v. United States*, 338 U.S. 160, 175 (1949).

C.R.S. § 12-64-121 requires reporting and provides immunity when a veterinarian "has reasonable cause to know or suspect" animal cruelty. This threshold, by its terms, is something less than probable cause because probable cause requires more than mere suspicion.

The reporting statute's threshold of "reasonable cause to know or suspect" is more akin to the concept of "reasonable suspicion," which exists when the facts known, taken together with rational inferences from those facts, create a reasonable and articulable suspicion of criminal activity. *See People v. Funez-Paiague*, 276 P.3d 576, 578-79 (Colo. 2012). "Reasonable suspicion" has been explicitly defined as something less than probable cause. *See e.g., People v. Archuleta*, 980 P.2d 509, 512 (Colo. 1999) Plaintiff is simply wrong to suggest that C.R.S. § 12-64-121 requires a veterinarian to have probable cause before the reporting requirement and immunity protection attach.

### B. C.R.S. § 12-64-121 does not require a conclusive diagnosis prior to the making of a report and the attachment of statutory immunity.

Plaintiffs next argue that a veterinarian must meet a professional standard of care, follow a differential diagnosis protocol, and reach a formal diagnosis of abuse before making a report under the statute. [#67, p. 5, 10]. The statute, however, contains no such language. The statute does not require a formal diagnosis or a final conclusion. To the contrary, the statute only requires that the veterinarian have reasonable cause to know or suspect animal cruelty.

Plaintiffs incorrectly attempt to inject professional standards of care and formal diagnosis requirements even though no such requirements appear in the statute. This is not a malpractice case, and Dr. Olds need not prove that her suspicions were correct in order to enjoy statutory

11

immunity. The information required to reach a formal patient diagnosis is not the same thing as the information required to reach a reasonable suspicion. Plaintiffs cite no legal authority for the proposition that the two issues are one in the same.[4]

The case of *Thomas v. Beth Israel Hospital, Inc.* provides good analysis of the difference between suspected abuse and a formal diagnosis. In *Thomas*, the plaintiff sued a hospital after the hospital reported suspected child abuse under the state's mandatory reporting law. *Thomas*, 710 F.Supp. at 937-38. The hospital reported the suspected abuse after a hospital doctor examined the child and found multiple abrasions and black and blue marks. *Id.*, at 937, 941. While these marks led the hospital to suspect abuse, common sense dictates that such marks could have resulted from a fall, accident, or any number of other potential causes.

The Court in *Thomas* granted the hospital immunity under the state reporting statute despite the hospital's failure to exclude other potential causes for the marks. Specifically, the Court held:

> Dr. Ilano's medical examination of [the child], which revealed multiple abrasions and black and blue marks, both old and new, clearly indicated the possibility of physical abuse or mistreatment and required [the hospital] to file a report of suspected child abuse. [Plaintiff's] allegations of "fraudulent" reporting of child abuse are factually incorrect and insufficient to rebut the statutory presumption that [the hospital] acted in good faith in reporting [the child] as a suspected victim of child abuse. **The reporting requirements that trigger the qualified immunity provision of [the state law] are premised not on actual or conclusive proof of abuse, but on reasonable cause to suspect such abuse.**

*Id.*, at 941-42 (emphasis added).

---

[4] An expert witness such as Dr. Questen, may opine about a veterinarian's professional duty of care in a malpractice setting, but the quantum of evidence required to trigger C.R.S. § 12-64-121 is a matter of statutory interpretation and a question of law for the Court. *See Stewart*, 701 F.3d at 1334; *Cain*, 327 P.3d 249.

Much like the reporting statute in *Thomas*, C.R.S. § 12-64-121 merely requires reasonable cause to suspect animal cruelty, and not actual or conclusive proof. Nothing in the statute suggests that other potential causes must be excluded before reporting the suspected cruelty. Nothing in the statute suggests that a formal differential diagnosis is required before reporting the suspected cruelty. Instead, the plain language of the statute merely requires "reasonable cause to know or suspect that the animal has been subjected to cruelty."

### C. The undisputed facts establish that Dr. Olds had sufficient evidence to suspect animal cruelty.

The undisputed materials facts that have been conceded in this matter establish that Dr. Olds had sufficient evidence to report suspected animal cruelty and obtain statutory immunity. To start, Dr. Olds' good faith is statutorily presumed. C.R.S. § 12-64-121(4). On top of the presumption, the undisputed evidence reveals that, *inter alia*, (i) Maggie, Bear, and The Six Horses were all too thin, (ii) Bear was down, covered in urine/manure, and unable to stand on his own, (iii) Maggie was emaciated, down, and covered in sores, (iv) The Six Horses were not under veterinarian care, (v) the horses had deteriorated past the point where veterinary assistance should have been sought, and (vi) Dr. Olds was informed that several horses at Echo Valley Ranch had already died. While Plaintiffs argue these facts were insufficient to reach a formal, final, and conclusive differential diagnosis, these facts were certainly sufficient to raise a reasonable suspicion of animal cruelty. This is all that is required to trigger the statutory reporting obligation and the grant of immunity.

### III. Plaintiffs' State Law Malicious Prosecution Claim Against Dr. Olds Fails Even Without Statutory Immunity.

Even without considering Dr. Olds' statutory immunity, Plaintiffs' malicious prosecution claim fails because Plaintiffs cannot prove the essential element of lack of probable cause.

Lack of probable cause is a necessary element of a malicious prosecution claim. *Hewitt v. Rice*, 154 P.3d 408, 411 (Colo. 2007); *Thompson v. Hiwan Ridge Dev. Co., Inc.*, 84 P.3d 496, 503 (Colo. 2004); *Lounder v. Jacobs*, 205 P.2d 236, 238-239 (Colo. 1949). "The existence of probable cause is alone sufficient to relieve a defendant of a charge of malicious prosecution." *Montgomery Ward and Co. v. Pherson*, 272 P.2d 643, 645 (Colo. 1954).

Whether a given state of facts or circumstances amounts to probable cause is a question of law for the Court. *Montgomery Ward*, 272 P.2d at 646; *Gurley v. Tomkins*, 30 P. 344, 439 (Colo. 1892). Where the conceded or substantially undisputed facts do not show a want of probable cause, the Court should take the responsibility of directing a verdict in favor of the defendant. *Montgomery Ward*, 272 P.2d at 646; *citing Gurley*, 30 P. 349. It is only where there is a dispute as to the existence of those facts which are relied upon as constituting probable cause that the matter is to be determined by the jury. *Konas v. Red Owl Stores, Inc.*, 404 P.2d 546, 548 (Colo. 1965); *Montgomery Ward*, 272 P.2d at 646. To constitute probable cause it is only necessary that there be a belief held in good faith in the guilt of the accused, and that such belief be reasonable and prudent. *Konas*, 404 P.2d at 548.

Additionally, "if a magistrate binds over a person charged with a criminal offense, this establishes a rebuttable presumption of probable cause for purposes of a subsequent malicious prosecution claim." *Schenck v. Minolta Office Systems, Inc.*, 802 P.2d 1131, 1133 (Colo. App. 1990).

14

Here, Dr. Olds is entitled to a rebuttable presumption of probable cause because the Park County Judge found probable cause to believe the animals suffered from cruelty. *See* Reply Statement of Facts 44, 49, 97. Furthermore, the undisputed material facts outlined above were sufficient to provide Dr. Olds with probable cause to believe that animal cruelty had occurred. Because the material facts are not in dispute, the presence or absence of probable cause is a matter of law for the Court. Because the undisputed facts form a sufficient basis for probable cause, Plaintiffs' malicious prosecution claim fails as a matter of law.

As discussed, Plaintiffs' argument that Dr. Olds failed to reach a final differential diagnosis is irrelevant. The relevant inquiry is not whether Dr. Olds "got it right" or whether there were other possible explanations for her observations. Instead, the question is merely whether the undisputed materials facts provided Dr. Olds with a reasonable good faith basis to believe that a crime had likely been committed. Plaintiffs can offer no evidence to the contrary, in light of the undisputed fact that horses were emaciated, down, and filthy when Dr. Olds was at Echo Valley Ranch on February 16, 2012.

## CONCLUSION

Plaintiffs contend that Dr. Olds was wrong in her suspicions of animal cruelty, and Plaintiffs are mad that Dr. Olds reported her suspicions and then testified against them. But Plaintiffs cannot maintain triable § 1983 claims or a triable state law malicious prosecution claim against Dr. Olds. Dr. Olds was not a state actor, and she reported her reasonable suspicions in good faith. For these reasons, the Court should grant Dr. Olds summary judgment and dismiss the claims against her pursuant to Fed.R. Civ.P. 56.

DATED this 20th day of JANUARY, 2015.

                                         s:/John Lebsack  
                                         John Lebsack  
                                         WHITE AND STEELE, P.C.  
                                         Dominion Towers, North Tower  
                                         600 17th Street, Suite 600N  
                                         Denver, Colorado  80202  
                                         (303) 296-2828  
                                         Fax No.:  (303) 296-3131  
                                         jlebsack@wsteele.com

## **CERTIFICATE OF SERVICE**

       The undersigned hereby certifies that on this 20th day of January, 2015, a true and correct copy of the foregoing was e-served via CM/ECF to the following:

Brice A. Tondre  
215 South Wadsworth Blvd., #500  
Lakewood, Colorado  80226  
*briceatondrepc@msn.com*

Timothy P. Schimberg  
Fowler Schimberg & Flanagan, P.C.  
1640 Grant St., Ste. 300  
Denver, CO  80203  
*t_schimberg@fsf-law.com*

                                         s/Becky Kongs  
                                         Becky Kongs  
                                         WHITE AND STEELE, P.C.  
                                         Dominion Towers, North Tower  
                                         600 17th Street, Suite 600N  
                                         Denver, CO  80202  
                                         Telephone:  (303) 296-2828  
                                         Fax:  (303) 296-3131  
                                         bkongs@wsteele.com