UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02469-RM-MIW

RANDALL I. HATLEE and
RONALD L. SWIFT

Plaintiffs,

vs.

CINDY HARDEY,
BOBBIE PRIESTLY,
MONTE GORE
FRED WEGENER and
ASHLEIGH OLDS,

Defendants

_____

**DEFENDANT OLDS' SEPARATE REPLY STATEMENT OF UNDISPUTED
MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

_____

Defendant Ashleigh Olds, DVM, DABVP-Equine ("Dr. Olds"), through her counsel John

Lebsack, submits this Separate Reply Statement of Undisputed Material Facts in Support of

Motion for Summary Judgment, pursuant to Practice Standards (Civil Cases), Section

IV(B)(2)(c).

Movant's Reply Supporting Statement:

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 1. Ashleigh Olds, DVM, DABVP-Equine ("Dr. Olds") is a licensed veterinarian.<br>#22, ¶ 7<br>**Ex A**, Deposition of Ashleigh Olds, at 4:7-10 | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 2. Dr. Olds is board certified by the American Board of Veterinary Practitioners in equine medicine and surgery.<br><br>**Ex A**, at 5:20-6:12 | | |
| 3. Dr. Olds is the owner of the Aspen Creek Veterinary Hospital.  Approximately 95% of her practice focuses on horses.<br><br>**Ex A**, at 7:8-24 | | |
| 4. Dr. Olds has no formal involvement with any animal rights organizations.<br><br>**Ex A**, at 23:5-19 | Denied, she was the veterinarian for Barbara Wright and Harmony Horse Works who arranged for her to accompany Deputy Smith to seize Bear. | Plaintiffs do not cite evidence supporting the denial, contrary to Practice Standard IV(B)(2)((b)(ii).<br><br>**Ex A**, at 23:5-19 [#62-1, p. 7] states:  (1) Dr. Olds has no involvement with animal rights organizations, and (2) Harmony Horse Works is a horse sanctuary, not an animal rights organization.<br><br>The request for Dr. Olds to go to Echo Valley Ranch came from Routt County and Harmony Horse Works; Dr. Olds is not sure who called first because the contact went through her front office.  **Ex A** 87:7-15 [#62-1, p. 18].  Dr. Olds was accompanied to Echo Valley Ranch by people from the Park County Sheriff's Office, not by Deputy Smith of Routt County.  Facts 10, 19, 26-29 below. |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 5. Defendants Hardey, Gore, Priestly and Wegener worked for the Park County Sheriff's Office.<br><br>**Ex B**, Deposition of Cindy Hardey, at 4:20-5:5;  6:5-11<br><br>**Ex C**, Deposition of Bobbi Priestly, at 4:7-17;  7:6-8:8;  48:18-24<br><br>**Ex D**, Deposition of Monte Gore, at 4:7-20<br><br>**Ex E**, Deposition of Fred Wegener, at 4:7-13 | | |
| 6. Dr. Olds is not and never was an employee or agent of Park County.<br><br>**Ex F**, Affidavit of Ashleigh Olds, at ¶ 3 | | |
| 7. Dr. Olds' involvement in this matter began on February 15, 2012 when she was asked if her clinic would be willing to care for a horse named Bear that Routt County was impounding.<br><br>**Ex A**, at 87:7-91:7;  95:10-19<br><br>**Ex F**, at ¶ 4 | She was asked by Barbara Wright. | The response does not deny the stated fact.  Plaintiffs do not give a pinpoint citation for their additional statement, contrary to Practice Standard IV(B)(2)((b)(ii).<br><br>The request for Dr. Olds to go to Echo Valley Ranch came from Routt County and Harmony Horse Works; Dr. Olds is not sure who called first because the contact went through her front office.  **Ex A** 87:7-15 [#62-1, p. 18] |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 8.   Plaintiff Swift lives on property known as Echo Valley Ranch, located in Park County.<br><br>**Ex G**, Deposition of Ronald Swift, at 6:3-15;  10:10-11:10 | | |
| 9.   Plaintiff Hatlee works with Swift at Echo Valley Ranch.<br><br>**Ex H**, Deposition of Randall Hatlee, at 18:20-19:13 | | |
| 10. Dr. Olds' lone visit to Echo Valley Ranch in connection with this matter occurred on February 16, 2012.<br><br>**Ex F**, at ¶ 5 | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
| --- | --- | --- |
| 11. As of February 16, 2012, Plaintiffs Hatlee and Swift owned several horses that they were caring for at Echo Valley Ranch.  Plaintiffs' horses included six overly-skinny horses named Lena, Chance, Echo, Fiona, River and Midnight (hereinafter referred to as "The Six Horses").<br><br>**Ex G**, at 256:5-257:3;  258:21-259:18<br><br>**Ex H**, at 279:18-280:8;  282:11-12;  443:12-13<br><br>**Ex I**, Park County Sheriff's Office file, at pp. 68-69 (document authenticated at **Ex B**, at 93:10-97:12;  **Ex C**, at 119:3-120:25) | There were approximately 40 horses on the ranch.  Other than The Six Horses they were in good condition. Exhibits 1 and 2. | The response does not deny stated fact.<br><br>Plaintiffs do not give a pinpoint citation for their additional statement, contrary to Practice Standard IV(B)(2)((b)(ii).<br><br>Nothing in Exhibits 1 or 2 says there were approximately 40 horses on the ranch.  Nothing in the exhibits says that other than the Six Horses the rest were in good condition.<br><br>To the contrary, Exhibit 1 [#68-1, p. 2] states that Bear was "unable to get up off the ground"; Maggie "was skinny, had wounds all over her body from being stuck on the ground."  Exhibit 2 states that Maggie "was down an unable to rise" [#68-1, p. 7]; "Maggie was suffering and needed to be euthanized" [#68-1, p. 9] |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 12. Horses owned by others were also present under Plaintiffs' care at Echo Valley Ranch on February 16, 2012, including a overly-skinny and down mare named Maggie and an overly-skinny and down horse named Bear (a/k/a Little Big Man, n/k/a Spencer).[1]<br><br>**Ex H**, at 157:6-11<br><br>**Ex I**, at p. 66-68 | | |
| 13. Maggie, Bear, and The Six Horses were skinny and too thin on February 16, 2012.<br><br>**Ex A**, at 78:9-12;  82:4-5<br><br>**Ex B**, at 31:24-33:5;  119:13-20; 113:16-115:3<br><br>**Ex F**, at ¶ 6<br><br>**Ex G**, at 191:7-22; 193:2-21; 227:18-228:22;  255:18-261:3; 402:2-14<br><br>**Ex H**, at 259:7-16;  280:6-8; 282:9-12;  312:3-313:11; 353:7-354:5;  355:18-360:18; 380:9-20;  443:6-15; 571:19-572:22<br><br>**Ex I**, at pp 67-70<br><br>**Ex J**, deposition of Troy Murdock, at 14:1-19 | | |
| 14. **Ex K** , photos of Maggie taken on February 16, 2012 (photos authenticated at **Ex F**, at ¶ 7;  **Ex H**, at 188:9-15; **Ex I**, at pp. 67, 84-85) | | |

[1] "Bear" has been known by several different names, including "Little Big Man" and "Spencer." For simplicity, the horse is referred to herein as "Bear."

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 15. **Ex L**, photos of Bear taken on February 16, 2012 (photos authenticated at **Ex F**, at ¶ 8) | | |
| 16. **Ex M**, photos of The Six Horses taken at Echo Valley Ranch on February 16, 2012 (photos authenticated at **Ex B**, at 32:9-17;  **Ex H**, at p. 257:6-16;  277:3-6;  298:3-7;  310:10-14;  359:21-24;  382:23-25;   **Ex F**, at ¶ 9;  **Ex I**, at pp. 67, 84-85) | | |
| 17. Bear (and his mother, Little Feather) were the subject of an animal abuse case pending in Routt County against Plaintiff Hatlee's ex-wife. <br><br>**Ex H**, at 207:6-18 <br>**Ex I**, at p. 66 | | |
| 18. Bear and Little Feather were cared for by Plaintiffs at Echo Valley Ranch. <br><br>**Ex H**, at 208:17-209:12 | | |
| 19. On February 13, 2012, Deputies DelValle and Smith of the Routt County Sheriff's Office went to Echo Valley Ranch to do a welfare check on Bear and Little Feather. <br><br>**Ex H**, at 414:13-25 <br>**Ex I**, at p 66 | | |
| 20. Upon arrival, Deputies DelValle and Smith learned that Little Feather was dead, and they observed Bear in "deplorable" condition. <br><br>**Ex I**, at p 66 | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 21. The horse named "Little Feather" had died in January of 2012<br><br>**Ex H**, at p. 213:5-21 | | |
| 22. Deputies DelValle and Smith also observed The Six Horses on the property in similar condition.<br><br>**Ex I**, at p 66 | | |
| 23. As a result of Deputies DelValle and Smith's February 13, 2012 visit, Routt County (i) ordered the seizure of Bear; and (ii) reported The Six Horses to the Park County Sheriff's Office.<br><br>**Ex A**, at p. 95:10-19<br>**Ex I**, at p 66-67 | | |
| 24. On February 15, 2012, Dr. Olds was called and asked if she would accept and care for a horse being seized by Routt County.  The horse was Bear.<br><br>**Ex A**, at 87:7-91:7 | | |
| 25. Later on February 15 or February 16, 2012, Dr. Olds was asked if she would bring her trailer, accompany the Park County officers that were seizing the horse on Routt County's behalf, and then transport the horse from the scene to her hospital.<br><br>**Ex A**, at 87:7-91:7 | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 26. Dr. Olds agreed to transport and then care for the horse, and on February 16, 2012, she met with Park County Officials at the Bailey Substation accompanied by her vet assistant Troy Murdock.  It wasn't until then that Dr. Olds learned that Bear was being seized from Echo Valley Ranch.<br><br>**Ex A**, at 54:6-10;  87:7-91:7 | | |
| 27. Deputies Plutt and Hanning of the Park County Sheriff's Office went to Echo Valley Ranch on February 16, 2012 to serve the Routt County seizure warrant.<br><br>**Ex B**, at 28:23-29:18<br>**Ex I**, at p. 67 | | |
| 28. Dr. Olds and her vet assistant Troy Murdock went to Echo Valley Ranch on February 16, 2012 to take possession of Bear after his seizure.<br><br>**Ex A**, at 89:24-91:22<br>**Ex B**, at 28:23-29:18<br>**Ex J**, at 8:10-9:11;  10:7-16 | | |
| 29. Park County Animal Control Officer Cindy Hardey went to Echo Valley Ranch on February 16, 2012 to perform a welfare check on The Six Horses that had been reported a few days earlier by Routt County Officer Smith.<br><br>**Ex B**, at 28:6-29:8<br>**Ex I**, at p. 66-67 | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 30. When Dr. Olds and the others arrived at Echo Valley Ranch, they found Bear down in his stall in the barn, extremely thin, covered in urine/manure and unable to stand on his own.<br><br>**Ex B**, at 112:20-114:6<br><br>**Ex I**, at p. 67<br><br>**Ex J**, at 10:21-11:4<br><br>**Ex N**, February 16, 2012 e-mail from Dr. Olds to Cindy Hardey, at p . 000934 (document authenticated at **Ex B**, at 106:5-20;  **Ex F**, at ¶ 10) | | |
| 31. On February 16, 2012, Bear appeared emaciated to Officer Hardey, who believed that his small size was likely as a result of malnutrition.<br><br>**Ex B**, at 114:22-115:2; 115:24-116:6 | | |
| 32. Hatlee and Swift concede that Bear was too thin and had difficulty getting up on his own.<br><br>**Ex G**, at 166:2-10;  170:3-15; 171:5-7;  172:2;  174:15-18; 191:7-22;  402:2-14<br><br>**Ex H**, at 242:19-243:5; 282:11-12;  424:16-25 | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 33. Dr. Olds and Officer Hardey next saw an emaciated, down, and sore-covered mare named "Maggie." The mare was covered in severe pressure sores on her face, shoulders and hips and could not even get into a sitting position. **Ex A**, at 83:21-84:3 **Ex B**, at 30:10-31:17; 32:10-33:5; 116:7-118:8 **Ex I**, at p. 67-68 **Ex N**, at p. 000934-000935 | | |
| 34. As of February 16, 2012, Maggie had been unable to stand on her own (without the aid of a sling) for approximately five days. **Ex B**, at 116:7-117:4 **Ex G**, at 241:21-245:13 **Ex H**, at 162:1-12 **Ex N**, at p. 000934 **Ex O**, deposition of Dr. Allyson Horton, at 274:22-275:11 **Ex R**, February 16, 2012 e-mail from Dr. Horton to Officer Hardey (document authenticated at **Ex O** at 248:22-249:15) | | |
| 35. Maggie died the next day – February 17, 2012. **Ex A**, at 99:4-10 **Ex I**, at p. 73 **Ex O**, at 276:8-25 | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 36. Officer Hardey and Dr. Olds saw The Six Horses at Echo Valley Ranch on February 16, 2012.  The horses were extremely thin.  All six lacked food in their pens, and their water tanks were frozen.<br><br>**Ex A**, at 110:6-10<br>**Ex B**, at 30:10-31:17;  32:10-33:5;  119:13-20;  121:6-122:22<br>**Ex I**, at p. 68-69<br>**Ex J**, at 14:1-19<br>**Ex N**, at p. 000935 | Denied. Deputy Hardey reported that they had hay and water available. Exhibits 1, 2 and 299 p.130. [sic] | The denial applies only to the third sentence of the stated facts (food and water).  The first two sentences are not denied (the Six Horses were extremely thin when Olds and Hardey saw them at Echo Valley on February 16).<br><br>Plaintiffs do not give a pinpoint citation to Exhibits 1 and 2, contrary to Practice Standard IV(B)(2)((b)(ii).<br><br>There is no Exhibit "299." If that is a typo that should say "29," Exhibit 29 has no such page 130 [#68-7, pp. 1-9]. |
| 37. Mr. Swift and Mr. Hatlee had brought Bear, Maggie and The Six Horses in from the pasture during the winter of 2011-2012 because they were thin and showing signs of weight loss.<br>**Ex H**, at 571:19-572:22 | | |
| 38. Mr. Swift gave Officer Hardey permission to view The Six Horses during her visit to Echo Valley Ranch on February 12, 2012.<br>**Ex G**, at 190:10–191:22;  192:15 – 23 | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 39. Mr. Hatlee did not limit Dr. Olds' movement at the Ranch on February 16, 2012.<br><br>**Ex H**, at 476:19–477:9 | | |
| 40. Mr. Hatlee and Mr. Swift were with Dr. Olds and Officer Hardey when they went to look at The Six Horses on February 16, 2012.<br><br>**Ex H**, at 603:20–604:8 | | |
| 41. Mr. Hatlee and Mr. Swift both admit that The Six Horses were too thin on February 16, 2012.<br><br>**Ex G**, at 191:7-22;  192:2-21; 255:18-261:3<br><br>**Ex H**, at 282:11-12;  571:19-572:22 | | |
| 42. Mr. Hatlee and Mr. Swift admit that there was no food and frozen water tanks in The Six Horses' pens when Dr. Olds and the people from the Park County Sheriff's Office arrived on the morning of February 16, 2012.<br><br>**Ex G**, at 422:22-424:7<br><br>**Ex H**, at 435:20-436:4; 581:24-583:1 | They were in the process of feeding when the animal control contingent arrived and while there Plaintiffs continued feeding.  Exhibit 1 | The response does not deny the stated fact.<br><br>Plaintiffs do not give a pinpoint citation to multi-page exhibit, contrary to Practice Standard IV(B)(2)((b)(ii).<br><br>Nothing in Exhibit 1 [#68-1, pp. 2-5] says that Plaintiffs were in the process of feeding when Defendants arrived. |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 43. On February 16, 2012, Mr. Swift told Dr. Olds that several other horses at Echo Valley Ranch had already died.<br>**Ex A**, at 78:9-25<br>**Ex N**, at p. 000935 | | |
| 44. Based on her observations at Echo Valley Ranch on February 16, 2012, Dr. Olds suspected that Bear, Maggie and The Six Horses were victims of starvation and malnutrition.<br>**Ex F**, at ¶ 11<br>**Ex N**, at p. 00934-00935 | Her suspicion was unreasonable and below the standard of care.  Exhibit 26. | The response does not deny the stated fact.<br><br>Plaintiffs do not give a pinpoint citation to a location in the 12 page document [#68-6, pp. 2-13], contrary to Practice Standard IV(B)(2)((b)(ii).<br><br>The Park County Judge found there was probable cause to believe the animals suffered from animal cruelty.  [#66-2, at 65:22-24; #66-3, at 173:23-174:7] |
| 45. On February 16, 2012, Dr. Olds believed that Maggie appeared to be in imminent danger of death.<br>**Ex A**, at 83:8-20 | Her belief was unreasonable and below the standard of care.  Exhibits 5, 26 and 34. | The response does not deny the stated fact. Plaintiffs admit Maggie died the next day, February 17. *See* Fact 35 above.<br><br>Plaintiffs do not give a pinpoint citation to multi-page exhibits [#68-1, pp. 20-21, #68-6,  pp. 2-13, #68-9, pp. 2-3], contrary to Practice Standard IV(B)(2)((b)(ii). |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
| --- | --- | --- |
| 46. On February 16, 2012, Officer Hardey asked Dr. Olds about her general assessment of the thin horses they saw at Echo Valley Ranch.<br><br>**Ex A**, at 45:16–46:10 | Denied. | Plaintiffs do not cite evidence supporting the denial, contrary to Practice Standard IV(B)(2)((b)(ii). |
| 47. Dr. Olds reported her suspicions to Officer Hardey at the scene and discussed with her the potential seizure of the horses.<br><br>**Ex A**, at 70:12-20<br>**Ex B**, at 32:21-33:5<br>**Ex I**, at p. 69 | No reasonable basis. | Plaintiffs do not cite evidence supporting the denial, contrary to Practice Standard IV(B)(2)((b)(ii).<br><br>The response is argument, contrary to Practice Standard IV(B)(2)((3)(i). Dr. Olds disputes Plaintiffs' argument, but Plaintiffs have not denied Fact 47. |
| 48. Dr. Olds expressed concern about the horses to Officer Hardey while at Echo Valley Ranch on February 16, 2012.<br><br>**Ex A**, at 70:12-20<br>**Ex B**, at 32:21-25;  104:5-105:1 | No reasonable basis. | Plaintiffs do not cite evidence supporting the denial, contrary to Practice Standard IV(B)(2)((b)(ii).<br><br>The response is argument, contrary to Practice Standard IV(B)(2)((3)(i). Dr. Olds disputes Plaintiffs' argument, but Plaintiffs have not denied Fact 48. |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 49. While at Echo Valley Ranch on February 16, 2012, Dr. Olds told Officer Hardey that she believed that the horses had been neglected.<br>**Ex B**, at 104:17–105:13 | No reasonable basis. | Plaintiffs do not cite evidence supporting the denial, contrary to Practice Standard IV(B)(2)((b)(ii).<br><br>The response is argument, contrary to Practice Standard IV(B)(2)((3)(i). Dr. Olds disputes Plaintiffs' argument, but Plaintiffs have not denied Fact 49.<br><br>The Park County Judge found there was probable cause to believe the animals suffered from animal cruelty.  [#66-2, at 65:22-24; #66-3, at 173:23-174:7] |
| 50. Officer Hardey believed that Maggie and the six other horses were in an unacceptable condition as of February 16, 2012.<br>**Ex B**, at 124:23–125:11 | They were not endangered. Exhibit 29, p.41. | The response does not deny the stated fact.  The fact relates to the "unacceptable condition" of the horses. Plaintiffs admit the horses were skinny and too thin. Facts 13, 13, 41 above. |
| 51. Dr. Olds did not suggest to Officer Hardey that the horses (except for Bear) be moved to her clinic.<br>**Ex B**, at 36:3-12 | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 52. Officer Hardey decided not to seize The Six Horses on February 16, 2012.  Instead, Officer Hardey issued Plaintiffs a Notice of Warning.<br><br>**Ex B**, at p. 31:11-17;  35:19-37:1; 40:9-13;  124:2-4<br><br>**Ex C**, at 49:25-50:4<br><br>**Ex I**, at p. 69-70<br><br>**Ex P**, Notice of Warning (document authenticated at **Ex B**, at 40:4-19;  **Ex H**, at 444:23-445:5) | | |
| 53. The Notice of Warning issued on February 16, 2012 states "you will have a month from today to gain HEALTHY weight on the 6 horses. . . . If you fail to rectify the Condition of the Animals in question you may be charged."<br><br>**Ex I**, at p. 70<br><br>**Ex P** | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 54. While at Echo Valley Ranch on February 16, 2012, Officer Hardey was under the impression that all of the horses she had looked at were under the care of Dr. Horton/Timberline Vets. This understanding played a role in Officer Hardey's decision to issue the Notice of Warning rather than seize the horses.<br>**Ex B**, at 100:13–101:6;  103:15-24 | They could be impounded only if endangered.  Deputy Hardey did not consider them to be endangered. | The response does not deny the stated fact.  The fact relates to Officer Hardey's impression about vet care, not about endangerment.<br><br>Plaintiffs' Exhibit 34 confirms this fact. Timberline wrote:  "The [six] horses were not examined (or even seen in passing) by Timberline Equine until after they had been placed in protective custody."  Exhibit 34 [#68-9, p.2].<br><br>Plaintiffs do not cite evidence supporting the denial, contrary to Practice Standard IV(B)(2)((b)(ii).<br><br>The response is argument, contrary to Practice Standard IV(B)(2)((3)(i). Dr. Olds disputes Plaintiffs' argument, but Plaintiffs do not deny Fact 54. |
| 55. While Officer Hardey was at the Echo Valley Ranch on February 16, 2012, Officer Priestly spoke to Mr. Swift by phone.  Mr. Swift indicated to Officer Priestly that The Six Horses and Maggie were under veterinary care.<br>**Ex C**, at 45:10-23 | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
| --- | --- | --- |
| 56. Mr. Hatlee told Officer Hardey that "we had talked with our vets and we were taking the steps that we were advised by our vets" in regards to all of the sick horses.<br><br>**Ex H**, at 443:6-444:7 | | |
| 57. Dr. Olds and her assistant loaded Bear into the trailer and left Echo Valley Ranch.<br><br>**Ex B**, at 31:11-12<br>**Ex F**, at ¶ 12 | | |
| 58. When Dr. Olds left Echo Valley Ranch on February 16, 2012, she knew that Park County did not plan to seize The Six Horses that day.<br><br>**Ex A**, at 69:24-70:11 | | |
| 59. Dr. Olds was present at Echo Valley Ranch for approximately 30-45 minutes.<br><br>**Ex B**, at 30:1-9 | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 60. When Bear arrived at Aspen Creek Veterinary Clinic on February 16, 2012, he could not stand and needed to be lifted out of the trailer.<br><br>**Ex Q**, deposition of Dr. Amy Murdock, at 4:7-13;  5:8-22;  15:2-16;  20:25-21:5;  22:13-24:23;  28:8-29:2 | He could stand before his fall during transport. | Plaintiffs do not cite evidence supporting the denial, contrary to Practice Standard IV(B)(2)((b)(ii).<br><br>The response does not deny the stated fact regarding Bear's condition upon arrival at the Clinic.<br><br>Further, whether Bear could stand on his own before transport is disputed.  It is undisputed that Bear was down and unable to stand on his own when Dr. Olds first observed him at Echo Valley Ranch on February 16, 2012.  *See* Facts 12, 30, 32.<br><br>Hardey wrote that on February 16, 2012, she found Bear in the barn at Echo Valley Ranch "lying in the horse stall and was unable to get up off the ground.  A male party that worked at the ranch was in the horse stall with the colt trying to get the colt to stand on his feet.  The male party identified himself as … Randall Hatlee."  Ex. 1 [#68-1, at p. 2].<br><br>Mr. Hatlee testified that Bear was down when they walked into the barn.  *See* Fact 32; **Ex H**, at 424:12-25. [#62-8, p. 35] |

20

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 61. Once Aspen Creek Veterinary Clinic fed Bear and give him IV fluids he was able to stand up and never went back down again.<br><br>**Ex Q**, at 4:7-13;  5:8-22;  15:2-16;  20:25-21:5;  22:13-24:23; 28:8-29:2 | | |
| 62. Based on her observations of Bear, Dr. Murdock agreed with the determination that Bear was malnourished and starved.<br><br>**Ex Q**, at 44:7–45:9 | | *Plaintiff's Statement [#73-3] omits Fact 62 from the sequence.  The omission throws off the numbering in the Plaintiffs' statement from here to the end.  All of plaintiffs' responses below are moved next to the correct numbers, e.g., Plaintiffs' #62 is moved down one cell to be next to #63, and likewise for all that follow.* |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 63. After being moved to Dr. Olds' hospital, Bear displayed a voracious appetite and quickly recovered, putting on weight and otherwise responding favorably to treatment that largely consisted of basic feed and water.<br>**Ex F**, at ¶ 19 | Malnourished is different than being starved. Determination of why they were malnourished was going to take time as advocated by Dr. Olds clinic in Exhibit 12. Dr. Olds was opposed to taking the time necessary to the making of a reasonable diagnosis. Drs. Burton and Horton were in the process of a diagnostic analysis when the horses were seized. Exhibit 17. When the horses were ordered returned Dr. Olds attacked the competence of the district attorney. Exhibit 19. Dr. Olds [sic] persistent pressure to prosecute without scientific basis was unprofessional, unreasonable and malpractice. Exhibit 26. HHer [sic] conduct was a violation of the Fourth and Fourteenth Amendments and the reporting statute. | The response does not deny the stated fact, which pertains to Bear's appetite and recovery after he was moved to Dr. Olds' hospital.<br><br>Plaintiffs do not give pinpoint citations, contrary to Practice Standard IV(B)(2)((b)(ii).<br><br>The response is argument, contrary to Practice Standard IV(B)(2)((3)(i). Dr. Olds disputes Plaintiffs' argument, but Plaintiffs do not dispute Fact #63.<br><br>Nothing in the cited exhibits says that Dr. Olds was opposed to taking more time; nothing says that Dr. Olds exerted any pressure to prosecute without a scientific basis.<br><br>Exhibit 12 [#68-3, p. 4] discusses anemia, not malnutrition. It was not written by Dr. Olds. |
| 64. Officer Hardey did not speak to Dr. Olds on February 16, 2012 after Dr. Olds left Echo Valley Ranch.<br>**Ex B**, at 81:1-11 | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 65. On the afternoon of February 16, 2012, Dr. Olds wrote a report memorializing her observations and emailed it to Officer Hardey.<br><br>**Ex A**, at 69:10-23;  81:3-6<br><br>**Ex B**, at 112:6-11<br><br>**Ex F**, at ¶ 10<br><br>**Ex N** | | |
| 66. In the several days that followed, the Park County Sheriff's Department was inundated with telephone calls about the horses from people who were upset over the situation, and as a result Undersheriff Goes became concerned over talk about an attempt to rescue the horses at Echo Valley Ranch.  As a result, he suggested moving the horses to an undisclosed location to try to diffuse the situation.<br><br>**Ex D**, at 9:16-11:14 | | |
| 67. On February 19, 2012, Plaintiffs agreed to move The Six Horses to another location, and Plaintiffs signed a written agreement in this regard.<br><br>**Ex B**, at 43:10-16<br><br>**Ex G**, at 286:22-287:12;  289:8-17;  295:12-296:16<br><br>**Ex H**, at 452:4-454:13<br><br>**Ex S**, February 19, 2012 agreement (document authenticated at **Ex B**, at 43:10-16) | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 68. When the six horses were moved on February 19, 2012, the horses were loaded and transported by Mr. Swift and Mr. Hatlee.<br>**Ex B**, at 49:24–50:10 | | |
| 69. Dr. Olds played no role in the decision to move the horses on February 19, 2012.<br>**Ex A**, at 96:14-21;  100:13-20<br>**Ex B**, at 43:10-45:22<br>**Ex G**, at 299:16-300:12 | Denied. It was her unsupported diagnosis off [sic] starvation which provoked the e-mail blitz and the public outcry. | Plaintiffs do not cite evidence supporting the denial, contrary to Practice Standard IV(B)(2)((b)(ii).<br><br>The response is argument, contrary to Practice Standard IV(B)(2)((3)(i). Dr. Olds disputes Plaintiffs' argument, but Plaintiffs have not disputed the testimony cited in support of Fact 69. |
| 70. Officer Hardey of the Park County Sheriff's Office continued her investigation even after the horses were moved on February 19, 2012.<br>**Ex I**, at p. 74-75 | | |
| 71. On February 22, 2012, Officer Hardey spoke by telephone to Plaintiffs' veterinarian, Dr. Horton of Timberline Equine Veterinarian Services.<br>**Ex B**, at p. 106:21-107:5<br>**Ex I**, at p. 74, 94-96 | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 72. Dr. Horton and Dr. Burton of Timberline Equine Veterinarian Services had provided veterinarian services to Hatlee and Swift at various points in time.<br><br>**Ex O**, at 36:2-39:25;  74:22-75:19;  192:2-10;  194:4-6<br><br>**Ex T**, deposition of Dr. Burton, at 12:14-13:3;   111:20-24 | | |
| 73. After Maggie was found down in the pasture, Timberline came to Echo Valley Ranch to provide veterinary services on two occasions before Maggie's death on February 17, 2012.  Those were on Febuary 11 and 13, 2012.<br><br>**Ex O**, at 248:22-249:19;  276:20-277:3 | | |
| 74. The last time Timberline had previously seen or treated any of The Six Horses was:<br><br>Fiona – Never<br><br>Lena – Never<br><br>Echo – August 2010<br><br>Midnight – September 2010<br><br>River – October 2010<br><br>Chance – October 2010.<br><br>**Ex O**, at 36:2-39:25<br>**Ex T**, at 112:6-22 | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 75. Timberline had no veterinarian-client-patient relationship with The Six Horses as of February 16, 2012.<br><br>**Ex O**, at 77:21-79:2 | Denied, there had been telephone contact. Prior to the seizure, Drs. Burtonn [sic] had instituted a diagnostic plan which was thwarted by the seizure. Exhibit 17. The six horses were under their care at the time of seizure. | Exhibit 17 [#68-4, p. 4] says nothing about telephone contact on or before February 16, 2012. Exhibit 17 does not pertain to Timberline's relationship with the horses on February 16, 2012, which is the date of Fact 75. Exhibit 17 talks about Timberline's examination of the horses *four days later*.<br><br>Plaintiffs' Exhibit 34 contradicts their denial of Fact 75. In that exhibit, Timberline denied caring for the Six Horses until after the seizure: "The [six] horses were not examined (or even seen in passing) by Timberline Equine until after they had been placed in protective custody." Exhibit 34 [#68-9, p.2]<br><br>In the cited portion of **Ex O**, p. 77:21-79:2 [#62-17, pp. 14-16], Dr. Horton testified she did not have a veterinarian-client-patient relationship with the Six Horses as of February 16, 2012, because she had not seen them for over 12 months. |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 76. Dr. Horton physically examined The Six Horses on February 20, 2012, after they were moved from Echo Valley Ranch.<br>**Ex O**, at 40:15-44:6; 101:20-102:7;  149:7-151:23 | | |
| 77. On February 20, 2012, Dr. Horton found The Six Horses to be extremely thin.<br>**Ex O**, at 40:15-44:6; 101:20-102:7;  149:7-151:23 | | |
| 78. During her February 20, 2012 examination, Dr. Horton found The Six Horses to be grossly anemic.  Lab tests later confirmed this.<br>**Ex O**, at 102:9-104:15;  106:4–107:6 | Dr. Olds did not follow the protocol of her clinic regarding analysis of anemia in horses.  Exhibit 12. | Plaintiffs do not dispute the stated fact, which refers to Dr. Horton.  The response refers instead to Dr. Olds.<br><br>Not only did Dr. Horton testify that she found anemia in the Six Horses, she said that prolonged malnutrition will result in anemia.  **Ex O**  at 107: 3-6 [#62-17, p. 25]; **Ex W**, deposition of Dr. Horton, at 116:4-6; 117:9-12<br><br>Dr. Burton of Timberline said anemia is consistent with malnutrition; that malnourishment can cause anemia.  **Ex X**, deposition of Dr. Burton, at 36:17-25; 42:3-5; 94:1-4<br><br>Exhibit 12 [#68-3, p. 4] was not written by Dr. Olds and does not refer to the horses involved in this case. |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 79. On February 22, 2012, Officer Hardey called Dr. Horton as part of her ongoing investigation.  The call was recorded and later transcribed.<br><br>**Ex B**, at 106:21-107:4<br><br>**Ex I**, at p. 74, 94-96<br><br>**Ex O**, at 160:21-24 | | |
| 80. During the February 22, 2012 phone call, Dr. Horton told Officer Hardey that Plaintiffs should have sought assistance for The Six Horses sooner.<br><br>**Ex B**, at 106:21-107:14<br><br>**Ex I**, at p. 74, 94-96 | | |
| 81. As shown by the transcript of the February 22, 2012 phone call, Dr. Horton told Officer Hardey that "Regardless of why the horses were thin, someone should have noticed and at least called and started the investigating earlier. . . . Those horses were let go far too long."<br><br>**Ex I**, at p. 95-96 | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 82. Dr. Horton testified that "these horses would have benefitted from intensive attempts to correct their weight loss sooner, either through medical attention or extra feed or at least investigation."  Dr. Horton further testified that "I believe that the horses had deteriorated past a point where assistance should have been sought."  Dr. Horton further testified that "I believe these horses would have benefitted from veterinary intervention much sooner."  Dr. Horton further testified that "The bottom line truth is that these horses were let go far too long."  Dr. Horton further testified that "My professional opinion is that regardless of [what caused] those horses to be thin, someone should have noticed and sought assistance for them."<br><br>**Ex O**, at 85:3-20;  112:21-113:11; 162:1-13 | | |
| 83. Dr. Horton opines that the six horses were too thin, which is a sign of starvation.<br><br>**Ex O**, at 86:16–87:5 | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 84. Dr. Horton has not ruled out starvation as a cause for the skinny condition of the horses.<br><br>**Ex O**, at 109:19-23 | But, unlike Dr. Olds was following a scientific approach to diagnosis. | The response does not address the stated fact and does not cite to supporting evidence, contrary to Practice Standard IV(B)(2)((b)(ii).<br><br>The response is argument, contrary to Practice Standard IV(B)(2)((3)(i). Dr. Olds disputes Plaintiffs' argument, but Plaintiffs have not disputed the testimony cited in support of Fact 84. |
| 85. After speaking with Dr. Horton on February 22, 2012, Officer Hardey decided to charge Plaintiffs with animal cruelty and seize The Six Horses.<br><br>**Ex B**, at 107:6-108:21<br>**Ex I**, at p. 74 ("At that point I made the decision. . . ") | By February 21, 2012, Wegener, Gore, Priestly and Olds were planning for a seizure. Exhibit 13. | The response does not deny the stated fact, which pertains to Officer Hardey's February 22 decision *to charge*. The stated fact does not pertain to *seizure*; it also does not pertain to anyone other than Officer Hardey. Plaintiffs admit that Dr. Olds played no role in the seizure. Facts 91, 92, 94.<br><br>Plaintiffs do not give a pinpoint citation, contrary to Practice Standard IV(B)(2)((b)(ii). |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 86. Officer Hardey's decision to charge Plaintiffs and seize the horses was based on all of her investigation, including the opinion provided by Dr. Horton that the horses were let go far too long.<br><br>**Ex B**, at 107:6-108:21; 123:19-124:4<br>**Ex C**, at 121:5-122:5<br>**Ex I**, at p. 74 | Deputy Hardey knew that Dr. Horton was working on a diagnosis and was not in a hurry to reach a conclusion on this complex case. Exhibits 5, 10 and 17. | The response does not address the stated fact.<br><br>Plaintiffs do not give a pinpoint citation, contrary to Practice Standard IV(B)(2)((b)(ii).<br><br>Exhibit 5 [#68-1, pp 20-21] relates only to treatment of Maggie.  Exhibit 5 does not mention The Six Horses.<br><br>Exhibit 10 [#67-2, pp. 10-12] is notes by Sergeant Priestly, not Officer Hardey. The exhibit does not discuss the decision to seize the horses, but it confirms that Dr. Horton believed the owners had not properly cared for the horses. Sergeant Priestly wrote that Dr. Horton "said that Swift is going through some very difficult personal circumstances and he was very overwhelmed.  Dr Horton stated that with these issues it is still not an excuse to notice horses with body condition scores this low."  Exhibit 10 [#68-2, p. 12].<br><br>The basis for the decision to seize the horses is explained in Officer Hardey's report. The report shows it was Dr. Horton's comment about the owners waiting too long that prompted the decision by Officer Hardey to seize the horses and file charges ("At that point [after Dr. Horton's comment] I made |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 87. Officer Hardey obtained a warrant to seize The Six Horses on February 22, 2012.<br><br>**Ex U**, search warrant (document authenticated at **Ex B**, at 56:11-23) | | |
| 88. On or about February 23, 2012, Officer Hardey served Mr. Swift with a summons and complaint charging him with three counts each of misdemeanor animal cruelty. On February 24, 2012, she served a similar summons and complaint on Mr. Hatlee.<br><br>**Ex B**, at 108:25-109:7<br>**Ex V**, Two Summonses and Complaints | | |
| 89. The charges issued by Officer Hardey on or about February 22, 2012 only concerned The Six Horses, and not Bear.<br><br>**Ex B**, at 108:12-110:6<br>**Ex V** | | |
| 90. Several months later, the charges were amended by the Park County District Attorney's Office to include a charge of animal cruelty for Plaintiffs' alleged cruelty to Bear prior to Routt County's February 16, 2012 seizure.<br><br>**Ex B**, 109:16-110:6 | | |
| 91. The Six Horses were seized by Park County on February 23, 2012<br><br>**Ex D**, at 21:14-17 | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 92. Dr. Olds played no part in the drafting, reviewing or approval of the Park County Sheriff's seizure application and affidavit.<br><br>**Ex B**, at 66:17-67:19<br>**Ex F**, at ¶ 13 | | |
| 93. Dr. Olds played no part in the drafting, reviewing or approval of the summonses and complaints issued to the Plaintiffs.<br><br>**Ex F**, at ¶ 14 | | |
| 94. Dr. Olds played no role in the seizure of the horses on February 23, 2012.<br><br>**Ex B**, at 69:20-70:6<br>**Ex C**, at 90:13-20<br>**Ex F**, at ¶ 15<br>**Ex I**, at p. 75-76 | | |
| 95. The Six Horses were never taken to Dr. Olds' facility at any time.<br><br>**Ex F**, at ¶ 16 | | |
| 96. Dr. Olds played no role in the assessment or care of The Six Horses following their seizure.<br><br>**Ex A**, at 98:23-99:25<br>**Ex F**, at ¶ 17 | | |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response / Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 97. Dr. Olds in good faith suspected (and continues to suspect) that Bear and The Six Horses were starved and/or neglected by Plaintiffs.<br>**Ex F**, at ¶ 18 | Denied. See Exhibits 26 and 34. | Plaintiffs do not give a pinpoint citation to multi-page Exhibits 26 and 34, contrary to Practice Standard IV(B)(2)((b)(ii).<br><br>The Park County Judge found there was probable cause to believe the animals suffered from animal cruelty.  [#66-2, at 65:22-24; #66-3, at 173:23-174:7] |
| 98. Other than on February 16, 2012, Mr. Hatlee has never spoken to Dr. Olds or heard anything she has said.<br>**Ex H**, at 619:15-620:1 | | |
| 99. After February 16, 2013, Mr. Hatlee never had any contact with anybody at Aspen Creek Veterinarian Hospital.<br>**Ex H**, at 624:24–625:2 | | |
| 100.    Mr. Hatlee has no information about who contacted the press after February 16, 2012.<br>**Ex H**, at 625: 14-17 | | |
| 101.    After Bear was nursed back to health, he was adopted by a third party.<br>**Ex A**, at 104:20-105:6 | The third party was Shelley Ferraro who was at the clinic when Bear arrived and relied on Dr. Olds [sic] diagnosis of starvation I [sic] making threats and advocating seizure and prosecution. | The response does not address the stated fact and does not cite to supporting evidence, contrary to Practice Standard IV(B)(2)((b)(ii).<br><br> The response is argument, contrary to Practice Standard IV(B)(2)((3)(i). |

DATED this 20th day of January, 2014.

s:/John Lebsack
John Lebsack
Adam Goldstein
WHITE AND STEELE, P.C.
600 17th Street, Suite 600N
Denver, Colorado  80202
(303) 296-2828
Fax No.:  (303) 296-3131
jlebsack@wsteele.com
agoldstein@wsteele.com

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 20th day of January, 2014, a true and correct copy of the foregoing was e-served via CM/ECF to the following:

Brice A. Tondre
215 South Wadsworth Blvd., #500
Lakewood, Colorado  80226
*briceatondrepc@msn.com*

Timothy P. Schimberg
Fowler Schimberg & Flanagan, P.C.
1640 Grant St., Ste. 300
Denver, CO  80203
*t_schimberg@fsf-law.com*

s/Becky Kongs
Becky Kongs
WHITE AND STEELE, P.C.
Dominion Towers, North Tower
600 17th Street, Suite 600N
Denver, CO  80202
Telephone:  (303) 296-2828
Fax:  (303) 296-3131
bkongs@wsteele.com