IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02469-RM-MJW

RANDALL J. HATLEE and
RONALD L. SWIFT,

Plaintiffs,

v.

CINDY HARDEY,
BOBBI PRIESTLY,
MONTE GORE,
FRED WEGENER, and
ASHLEIGH OLDS,

Defendants.

**REPORT & RECOMMENDATION**
**on**

**COUNTY DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED.R.CIV.P. 12(c) REGARDING PLAINTIFFS' OFFICIAL CAPACITY CLAIMS**
**(Docket No. 63)**

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

Plaintiffs were prosecuted—unjustly, they feel—and acquitted of the charge against them. They now sue the sheriff's office and the veterinarian who brought the alleged crime to the sheriff's attention for malicious prosecution and unlawful seizure (among other theories).

Defendants have moved for judgment on the pleadings as to Plaintiffs' 42 U.S.C. § 1983 claims against Sheriff Fred Wegener in his official capacity, arguing that the complaint fails to allege facts showing municipal liability. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). The Court has reviewed the parties'

filings (Docket Nos. 63, 69, 72, & 87), taken notice of the court's file in this case, and considered the applicable Federal Rules of Civil Procedure, statutes, and case law. Now being fully informed, the Court makes the following findings of fact, conclusions of law, and recommendation that the motion be denied.

## **Factual Allegations**

The Amended Complaint (Docket No. 22) alleges, generally, that six horses at Plaintiffs' ranch appeared starved and neglected due to toxic weeds that they were consuming (*id.* ¶ 13), and that Defendant Olds took advantage of the situation to instigate animal-cruelty proceedings against Plaintiffs (*id.* ¶¶ 12-26) in retaliation for not kicking veterinary business her way (*id.* ¶ 55). As to Sheriff Wegener specifically, the Amended Complaint alleges:

- "[Sheriff Wegener] was at all relevant times the duly elected sheriff of Park County, Colorado. . . . He was involved in the investigation and decisions to seize Plaintiffs' property and prosecute them which are the subject of this action." (*Id.* ¶ 6.)

- "[A public] outcry was directed at Defendants Wegener and Gore, the sheriff and undersheriff, who succumbed to the political pressure and asked Defendants Priestly and Hardey to arrange for removal of the six horses from [Plaintiffs' ranch]." (*Id.* ¶ 19.)

- "On February 22, 2012, Defendant Hardey, at the direction of Defendants Wegener[,] Gore and Priestley, who again succumbed to the political pressure, sought and received a warrant to seize the six horses from Plaintiffs. Defendant Hardey's affidavit in support of the request for a warrant was a breach of the protective custody agreement and failed to inform the judge who issued the warrant of material facts. . . . The judge who presided over the prosecution of the Plaintiffs found that the omissions were material, made in bad faith and would have led to refusal to issue the warrant if disclosed to the issuing judge." (*Id.* ¶ 24.)

- "Defendants Priestly, Gore and Wegener, despite their knowledge that seizure of the horses was not permissible under the facts or the law, directed Defendant Hardey to obtain a warrant." (*Id.* ¶ 25.)

- "Throughout the course of the investigation and prosecution the Sheriff's Office deviated from its usual and customary practice of refusing to disclose the fruits of its investigation to anyone other than the District Attorney and the defendant. The Sheriff's Office provided documents to [a nonprofit horse sanctuary] for fundraising projects and to prepare a documentary film in which Defendant Olds broadcast her baseless claims . . . . This was done for the political benefit of Sheriff Wegener the District Attorney." (*Id.* ¶ 30.)

## Discussion

**I.    Rule 12(c)**

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standards that apply to motions to dismiss under Rule 12(b)(6). *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). Under those standards, the Court must accept the facts alleged in the Amended Complaint as true; further, if inferences must be drawn, the Court must draw them in Plaintiffs' favor. *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010). Only factual allegations are to be accepted as true; allegations of bare legal conclusions are discarded from the Court's analysis. *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Generally speaking, only the Amended Complaint is to be considered; facts and documents that the parties have brought forward while briefing the motion to dismiss usually have no bearing on the motion. *See Archuleta v. Wagner*, 523 F.3d 1278, 1281 (10th Cir. 2008).

Once the set of operative facts is established according to the foregoing rules, the Court must decide whether those facts adequately state grounds for relief. It is not necessary for Plaintiffs to allege a prima facie case including every last element of their legal claims—but they must put forward enough facts for the Court to infer that the claims are at least plausible. *Khalik v. United Air Lines*, 761 F.3d 1188, 1191–92 (10th Cir. 2012).

Defendants' motion concerns only Plaintiffs' § 1983 claims against Sheriff Wegener in his official capacity. "Suing individual defendants in their official capacities under § 1983 . . . is essentially another way of pleading an action against the county or municipality they represent." *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) (citing *Monell*, 436 U.S. at 690 n. 55). As a result, the official-capacity claims against Sheriff Wegener can proceed only if the Amended Complaint plausibly alleges a basis for municipal liability.

## II.    Municipal Liability

"A municipality or other local government may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or causes a person 'to be subjected' to such a deprivation." *Connick v. Thompson*, ___ U.S. ___, 131 S.Ct. 1350, 1359 (2011) (quoting *Monell*, 436 U.S. at 692). "[U]nder § 1983, local governments are responsible only for 'their *own* illegal acts.'" *Id.* at 1359 (emphasis in original). "They are not vicariously liable under § 1983 for their employees' actions." *Id.* Instead, to establish municipal liability, a plaintiff must show: (1) the existence of a municipal policy or custom depriving it of a constitutional or statutory right; and (2) a

5

direct causal link between the policy or custom and the injury alleged. *See Graves v. Thomas,* 450 F.3d 1215, 1218 (10th Cir. 2006) (citing *City of Canton v. Harris,* 489 U.S. 378, 385 (1989)). The existence of a policy or custom can be established many different ways, including demonstrating the existence of:

> (1) [A] formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; **(3) the decisions of employees with final policymaking authority**; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused.

*Bryson v. City of Okla. City,* 627 F.3d 784 (10th Cir. 2010) (citation and quotation marks omitted; emphasis added).

Defendants argue that there was no policy, practice, or custom involved here. But Defendants' argument applies the doctrine too narrowly. "[U]nder appropriate circumstances, a single decision by policymakers can be sufficient to create liability under § 1983." *Brammer–Hoelter v. Twin Peaks Charter Acad.,* 492 F.3d 1192, 1211 (10th Cir. 2007); *see Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986). As the Tenth Circuit has explained:

> While *Monell* found liability on the basis of an official policy as the moving force of the constitutional violation, it fell to the [Supreme] Court in *Pembaur* to establish that actions taken by a municipality's final policymakers also represent acts of official policy giving rise to municipal liability . . . . An act by a municipality's final policymaking authority is no less an act of the institution than the act of a subordinate employee conforming to a preexisting policy or custom. As the Court in *Pembaur* explained '[n]o one has ever doubted, for instance, that a municipality may

> be liable under [section] 1983 for a single decision by its properly
> constituted legislative body—whether or not that body had taken similar
> action in the past or intended to do so in the future—because even a
> single decision by such a body unquestionably constitutes an act of official
> government policy.'

*Simmons v. Uintah Health Care Special Dist.,* 506 F.3d 1281, 1285 (10th Cir. 2007) (quoting *Pembaur,* 475 U.S. at, 480) (further internal citations and quotation marks omitted).  Thus, "when a municipal official who is 'responsible for establishing final policy with respect to the subject matter in question' makes 'a deliberate choice to follow a course of action . . . from among various alternatives,' municipal liability will attach to that decision."  *Thomas v. City of Snyder, Okl.*, 1996 WL 662453, at *4 (10th Cir. 1996) (quoting *Pembaur,* 475 U.S. at 483–84).  "In the case where a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued."  *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996)

      Defendants filed separate motions for summary judgment on the other claims in this lawsuit—but here, as to the official-capacity claims, Defendants instead moved for judgment on the pleadings under Rule 12(c).  The Court must therefore accept as true the facts alleged in the Amended Complaint.  The Amended Complaint alleges, several times, that Sheriff Wegener knowingly directed or ordered unlawful conduct.  It also alleges a political motive that, however tenuous, the Court must accept as true.  Accordingly, so long as Sheriff Wegener is the "final policymaking authority" for purposes of *Monell*, the Complaint states a plausible claim.

"[W]hether a particular official has 'final policymaking authority' is a question of state law." *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988). The Tenth Circuit has identified three factors for determining whether someone is a final decision maker: "(1) whether the official is meaningfully constrained by policies not of that official's own making; (2) whether the official's decisions are final—*i.e.,* are they subject to any meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority." *Randle v. City of Aurora,* 69 F.3d 441, 448 (10th Cir. 1995) (quotation marks omitted). In Colorado, a sheriff is the final policymaker for his department's law-enforcement activities. *See Cortese v. Black*, 838 F. Supp. 485, 496 (D. Colo. 1993) (citing C.R.S. § 30–10–501 *et seq.*). Thus, for purposes of *Monell* liability, Sheriff Wegener's alleged decision directing his employees to obtain a warrant to seize Plaintiffs' property and to issue a criminal summons against them is the act of the municipality.

## Recommendation

For the foregoing reasons, the undersigned RECOMMENDS that that the County Defendants' Motion for Judgment on the Pleadings Pursuant to Fed.R.Civ.P. 12(c) Regarding Plaintiffs' Official Capacity Claims (Docket No. 63) be DENIED.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections**

8

**within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions, <u>Makin v. Colo. Dep't of Corr.</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996)**.

Dated: January 23, 2015  */s/ Michael J. Watanabe*
       Denver, Colorado  Michael J. Watanabe
                                    United States Magistrate Judge