# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 13-cv-02469-RM-MJW

RANDALL J. HATLEE and
RONALD L. SWIFT,

Plaintiffs,

vs.

CINDY HARDEY,
BOBBI PRIESTLY,
MONTE GORE,
FRED WEGENER and
ASHLEIGH OLDS,

Defendants.

---

## FINAL PRETRIAL
## ORDER

---

### 1.  DATE AND
### APPEARANCES

A pretrial conference was held in this matter on March 31, 2015, at 1:30 p.m. Plaintiffs were represented by Brice A. Tondre. Defendants Hardey, Priestly, Gore and Wegener were represented by Timothy Schimberg. Defendant Olds was represented by John Lebsack.

### 2.  JURISDICTION

The Court possesses jurisdiction in this matter pursuant to 28 U.S.C. § 1343 and 1367.

### 3.  CLAIMS AND
### DEFENSES

a.  Plaintiffs' Claims

Plaintiffs claim that all Defendants, while acting under color of state law, violated their rights under the Fourth and Fourteenth Amendments to the United States Constitution by causing Plaintiffs' to be seized and by causing Plaintiffs to deprived of their rights under contracts with the Sheriff without due process and by causing them to be prosecuted without probable cause.

Plaintiff also claims that there was a failure to train Hardey and a ratification of Hardey's conduct.

Plaintiffs also claim that the Sheriff's Office breached its contract with the Plaintiffs and that Defendant Olds maliciously caused Plaintiffs to be prosecuted and caused the prosecution to be continued.

On February 16, 2012, Defendant Cindy Hardey went to Echo Valley Ranch to investigate a report of skinny horses.  Hardey reported her findings to her supervisor, Bobbi Priestly, who contacted Kate Anderson, D.V.M., Britt Stubbelfield, D.V.M., and Scott Dutcher, chief State animal control investigator, and related to them the findings of Officer Hardey. After a thorough discussion, there was a unanimous agreement that it was in the best interests of the horses to issue a Notice of Warning and leave the horses at Echo Valley Ranch. The notice of warning provided that Plaintiffs would have thirty days to put weight on the skinny horses.

Defendant Ashleigh Olds, a veterinarian, went to the ranch at the same time. She was asked by Barbara Wright of Harmony HorseWorks to go to the ranch and pick up one of the

2

skinny horses on behalf of Routt County. Olds demanded that the other six skinny horses be seized. Without following the standard of care with regard to diagnosis, Olds aggressively asserted that the seven horses had been starved. Officer Priestly instructed Hardey to tell Olds to take the one horse she was there to remove and leave.

Captain Sven Bonnelycke, head of Park County Animal control, considered Olds to be unprofessional and instructed Hardey and Priestly to have the horses evaluated by an independent veterinarian. Hardey and Priestly recklessly failed to do so.

The decision to leave the six horses at Echo Valley Ranch infuriated Olds and Wright who embarked on a publicity campaign designed to force the Park County Sheriff to seize the six horses.

By February 19, 2012, the uproar generated by Olds and Wright reached a level which caused the Sheriff's Office to be fearful for the safety of Plaintiffs and their horses. In order to discharge the duty of the Sheriff to protect Plaintiffs and their horses, Undersheriff Gore asked Priestly to attempt to obtain Plaintiffs' agreement to place the horses in protective custody. Priestly asked Hardey to attempt to negotiate an agreement with Plaintiffs. Plaintiffs agreed on the condition that they would not be prosecuted if they demonstrated during the thirty day period of the agreement that they had not neglected the six horses.

On February 19, 2012, the six horses were moved to the ranch of Martin VanPoolen and Kirsten LeBeau where they were housed indoors. This caused the uproar to grow even louder. The threats continued. It became clear that the only thing which would quiet the uproar was seizure of the horses. On February 21, 2012, Undersheriff Gore contacted Olds to inquire if she would take temporary custody of the horses if they were seized. She responded that she would.

On February 22, 2012, Hardey obtained a warrant to seize the horses. On February 23, the horses were seized and Plaintiffs were charged with animal cruelty. Olds, Wright, Ferraro and Courtney were jubilant.

On April 10, 2012, the judge presiding over the criminal case found that the warrant had been obtained by Hardey's bad faith failure to disclose material facts and ordered the horses returned.

The order renewed the uproar. Undersheriff Gore assured Olds, Wright, Ferraro and Courtney that he was with them in their desire for an aggressive and successful prosecution. In his words, "I am with you."

Justice was done, Plaintiffs were acquitted.

Plaintiffs seek the following damages:

| | |
|---|---|
| Legal fees to defend criminal case | $  85,234.17 |
| Lost income | 850,000.00 |
| Lost value of feed store | 180,000.00 |
| Humiliation, embarrassment, indignity, public disgrace and loss of reputation | 2,000,000.00 |
| Punitive damages | 2,000,000.00 |
| Attorney's fees and costs for prosecuting this case | TBD |

**Defenses of Cindy Hardey, Bobbi Priestly, Monte Gore and Fred Wegener (hereafter referred to as PCSO Defendants)**

PCSO Defendants took humane measures and did the right thing in removing six horses from the Echo Valley Ranch, managed by Plaintiff Swift, in February, 2012.

In mid-February, 2012, PCSO was contacted by Routt County Sheriff's Office – Animal Control Officers as well as Sheriff Wiggins, concerning the condition of the horses

4

observed by the ACOs on February 13, 2012 at Echo Valley Ranch ("EVR").  In checking on two horses released to the care and custody of Mr. Hatlee, the Routt County ACOs found out that one horse had passed away weeks before, without notice to them.  The other horse that was the subject of their welfare check, was in "deplorable" condition, was emaciated, recumbent in a stall filled with muck, feces and urine.  The Sheriff reported that "the animal has been seriously abused once again."  It was further reported that there were other horses at EVR exhibiting the same or similar conditions and he requested that PCSO look into the matter.

Defendant ACO Hardey performed a welfare check on February 16, 2012, and personally observed the conditions reported by Routt County.  Dr. Ashleigh Olds was also present, at the behest of Routt County, to remove the above-referenced recumbent colt.  Due to the emaciated and extremely thin condition of other horses on the EVR property, Ms. Hardey issued a Notice of Warning.  Based upon the conditions she observed, an investigation ensued.  Based upon Plaintiffs' representation that the horses were under the care of a licensed veterinarian, state representatives opined that with careful observation, the horses might stay at the ranch.  Subsequently, PCSO was advised that the horses exhibiting an emaciated state were not under the care and treatment of a licensed veterinarian.

PCSO not only heard from Routt County, but also from Dr. Olds following up on her visit to the ranch on February 16.  In no uncertain terms, Dr. Olds opined that the horse she removed was the subject of a "very clear cut case of starvation and malnutrition."  She also informed PCSO that other horses appeared to be suffering from neglect as well.

Contemporaneously with the transfer, the PCSO Defendants communicated with the alleged treating veterinarian who opined that regardless of the cause of the condition of the horses, the Plaintiffs had waited far too long to take action for the horses' care, evaluation and

treatment.  This information was the motivating factor for ACO Hardey to prepare an affidavit in support for the seizure of the six horses involved.  Based upon the totality of circumstances and information provided to Hardey, she had more than a reasonable suspicion that some horses at Echo Valley Ranch had suffered from neglect and animal cruelty.  Upon rescuing the horses and transferring them to an equine center, improvement in the horses' condition was observed almost immediately based upon a regiment of proper feed, hay and water.  Those caring for the removed horses and a well-respected veterinarian who was providing veterinary care, opined that the horses exhibited signs of starvation/malnutrition.

PCSO began receiving a multitude of communications from horse owners in the Evergreen area expressing a wide range of emotion and innuendo as to what they might do.  Undersheriff Gore, assessing the situation, to include the potential for violence and/or aggressive acts by either the local horse owners or the Plaintiffs, suggested a transfer of the emaciated horses to an undisclosed location.  Plaintiffs agreed and moved six horses.

While the horses were transferred from Echo Valley Ranch, Plaintiffs and the Animal Control Office agreed that the measure was for the protection of the horses.  PCSO Defendants submit that the agreement to do so does not rise to the level of an enforceable contract due to the lack of consideration, but does reflect the objective of these Defendants to provide a safe environment for both horses and the Plaintiffs.

PCSO did not succumb to any public pressure.  Rather, through skillful communication by PCSO, a tense and perhaps injurious situation had been diffused.  This included attendance at a fundraiser in Evergreen where none of the PCSO representatives made any presentations, but rather appeared in appreciation for the fact that money generated was going to assist in paying for the veterinary care, treatment and boarding of the removed horses.

In April, 2012, a bond hearing was conducted in the county court.  County Court Judge Green found that there was probable cause that animal cruelty/neglect had occurred at Echo Valley Ranch, but that there was no exigent circumstances for the horses to remain at another facility.  Per the court's Order, the horses were returned to Echo Valley Ranch.  Following that hearing, District Attorney Thom LeDoux took over the prosecution.  He did not succumb to political pressure either and based upon his own independent professional judgment and, as an elected official of the State of Colorado, made a decision to continue the prosecution believing that the evidence was sufficient to convict the Plaintiffs of animal cruelty.  PCSO Defendants had no role in the decision making regarding further prosecution.

PCSO Defendants submit that Plaintiffs do not, and cannot, support the alleged damage claims and that the discovery process supports the fact that the Plaintiffs never had a sufficient amount of money to purchase the quality and quantity of hay necessary for the sizeable herd of horses at the ranch.

PCSO Defendants submit that they are clothed with qualified immunity and that the Plaintiff's claims asserted against them are barred.  They assert that their conduct was motivated in good faith and in accordance with Colorado law.  That their actions were objectively reasonable in light of the totality of circumstances and it was the conduct of the Plaintiffs themselves in allowing the horses to become emaciated and in poor physical condition that necessitated appropriate action being taken.  Defendants also assert that the Plaintiffs have failed to mitigate their damages, if any.  That their damages, if any, were caused by their own acts or omissions.  That for some of the claims Defendants Wegener, Gore and Priestly had no personal participation.  They assert that there was not a legally binding agreement by and between PCSO and the Plaintiffs.  They assert probable cause existed to believe that the Plaintiffs had committed the offense of cruelty to animals.

**Defenses of Dr. Olds**

Dr. Olds is a veterinarian who came to the plaintiffs' Echo Valley Ranch on February 16, 2012, at the request of the Routt County Sheriff's Office to assist the Park County Sherriff's Office in the seizure of a horse named Little Bear that was under the jurisdiction of Routt County.  At the ranch, Dr. Olds observed eight horses in very poor physical condition (Bear and Maggie in the barn, and six horses in pens outside the barn).  Dr. Olds had a reasonable basis to suspect that those horses showed signs consistent with starvation and neglect.  Based on her observations at the ranch, Dr. Olds in good faith informed Officer Hardey of Park County that the eight horses appeared to be suffering from neglect.  She did not make any false statements or provide any incorrect information about the horses or the plaintiffs.  She did not instigate a public outcry against the plaintiffs.  Her conduct did not fall below the standard of care.  She was not motivated by political or economic factors.  Dr. Olds was not acting under color of state law.  Dr. Olds is entitled to qualified immunity from civil liability.  Dr. Olds is also entitled to statutory immunity under C.R.S. § 12-64-121(4) (2013). The good faith of Dr. Olds shall be presumed pursuant to C.R.S. § 12-64-121(4) (2013). Because Dr. Olds had a reasonable suspicion that the horses had been victims of animal cruelty, she cannot be liable for malicious prosecution.

## 4.  STIPULATIONS

1. Plaintiffs were each charged with four misdemeanor counts cruelty to animals in violation of C.R.S. 18-9-202(1)(a)

2. Plaintiffs were acquitted of all charges against them at a trial in February 2013.

3. On February 16, 2012, the horse known as Bear or Little Bear was taken

from plaintiffs' ranch to defendant Olds' veterinary hospital.

4.  Six of Plaintiffs' horses were seized by the Park County Sheriff's Office on February 23, 2012.

5.   Defendants note that additional stipulations were set forth by the parties in the Case Management Order previously entered by the Court.  Defendants believe that these stipulations should still be in effect.

6.  Defendant Olds contends that the facts set forth in Defendant Olds' separate Statement of Undisputed Material Facts (ECF #62) that were not denied or responded to by Plaintiffs in ECF #73-2, 73-3 and 73-4 should be considered undisputed.  Plaintiffs do not stipulate to this.

7. The Park County Defendants contend that the facts set forth in their Statements of Undisputed Material Facts (ECF #64, 65 and 66) that were not denied or responded to by Plaintiffs should be considered undisputed. Plaintiffs do not stipulate to this.

## 5.  PENDING MOTIONS

Plaintiffs' Motion to supplement the Record with Respect to Summary Judgment Motions Number 61, 64, 65 and 66 [#95], opposition thereto [#97] and [#98] and a reply in support of the motion to supplement [#100].

PSCO's Motion for Summary Judgment Regarding Plaintiffs' Third Claim for Relief [Doc. 64]; Motion for Judgment on the Pleadings Regarding Official Capacity Claims [Doc. 63]; Motion for Summary Judgment Regarding Individual Capacity Claims [Doc. 65];

and Motion for Leave to File a Reply Brief in Support of the Objection to the Magistrate's Recommendation [Doc. 102].

Defendant Olds' Motion to Dismiss Claims Against Her in Amended Complaint filed November 19, 2013 (ECF No. 31); Plaintiff's Memorandum in Opposition to Motion to Dismiss filed December 10, 2013 (ECF No. 35); Reply in Support of Motion to Dismiss filed December 20, 2015 (ECF No. 36).

Defendant Olds' Motion for Summary Judgment filed December 15, 2014 (ECF No. 61); Plaintiff's Memorandum in Opposition filed January 3, 2015 (ECF No. 67); Defendant Olds' Reply in Support of Motion for Summary Judgment filed January 20, 2015 (ECF No. 81).

## 6.  WITNESSES

Attached hereto as Exhibit A is Plaintiffs' list of witnesses.

Attached hereto as Exhibit B is PCSO Defendants' list of witnesses

**a.      Nonexpert witnesses to be called by Defendant Olds:**

(1)      Witnesses who will be present at trial (see Fed. R. Civ. P. 26(a)(3)(A))

a.   Ashleigh Olds, DVM (also listed below as an expert).  Dr. Olds will testify about the request for her to go to Echo Valley Ranch on February 16, 2012; her observations at the ranch; her care of Bear; her communication with Officer Hardey; and all issues relating to the claims against her.  She is expected to testify in person.

(2)      Witnesses who may be present at trial if the need arises (see Fed. R. Civ. P.

26(a)(3)(A))

a. Troy Murdock.  He went to Echo Valley Ranch on February 16, 2012, and observed the condition of Maggie, Bear, and the six horses.  He cared for Bear when he was taken to Aspen Creek Veterinary Hospital.  He is expected to testify in person.

b. Dawn Smith (also listed below as an expert).  She is an animal control officer with the Routt County Sheriff's Office who will testify regarding her observations of Little Feather and Bear while they were in Routt County and after they were moved to Echo Valley Ranch.  She will also testify about her communication with the Park County Sheriff's Office.  She is expected to testify in person.

c. Cindy Del Valle (also listed below as an expert).  She is an animal control officer with the Routt County Sheriff's Office who will testify regarding her observations of Little Feather and Bear while they were in Routt County and after they were moved to Echo Valley Ranch.  She will also testify about her communication with the Park County Sheriff's Office.  She is expected to testify in person.  She is expected to testify in person.

d. Defendant Cindy Hardey.  She was an animal control officer with the Park County Sheriff's Office.  She observed the condition of the horses at Echo Valley Ranch on February 16, 2012.  She investigated the incident and issued misdemeanor animal cruelty charges to plaintiffs.  She is expected to testify in person.

e. Defendant Bobbi Priestly (also listed below as an expert).  She is a

sergeant in the animal control department of the Park County Sheriff's Office.  She was involved in the investigation and filing of charges against plaintiffs.  She is expected to testify in person.

f.  Defendant Monte Gore.  He is Undersheriff of Park County.  He was involved in the investigation and filing of charges against plaintiffs.  He is expected to testify in person.

g.  Defendant Fred Wegener.  He is sheriff of Park County.  He is expected to testify in person.

h.  Jenny Plutt.  She is a corporal in the Park County Sheriff's Office.  She was at Echo Valley Ranch on February 16, 2012, observed the condition of the horses, and took photos.  She is expected to testify in person.

i.  Thom LeDoux (also listed below as an expert).  He is District Attorney of the 11th Judicial District of Colorado.  He prosecuted the charges against the plaintiffs.  He is expected to testify in person.

j.  Rod Cameron.  He is a farrier who lives in Golden, Colorado.  He did farrier work on horses at Echo Valley Ranch and observed the condition of the horses there, including Bear, in January 2012.  He is expected to testify in person.

k.  Rhonda Cameron.  She is the spouse of Rod Cameron and handles his business records, including the records of his visit to Echo Valley Ranch in January 2012.  She is expected to testify in person.

l.  Melinda Liverant.  She lives in Bailey, Colorado.  She will testify about her observations of Mr. Swift's care of horses and his reputation

in the community.  She is expected to testify in person.

m.  Barbara Wright.  She is chairman of the board of Harmony

HorseWorks which is a horse rescue. Routt County contacted her to

help with the seizure of Bear.  She observed Bear after he was taken to

Aspen Creek Veterinary Hospital.  She is expected to testify in person.

n.  Scott Toppin, DVM, Littleton Equine Hospital.  He was involved in

the care of the six horses after they were taken to Harmony

Equine/Dumb Friends League.  He will testify about his observations

of the horses.  He is expected to testify in person.

o.  Bruce Carpenter.   303-838-7688, Cell 303-519-9173.  202 CR 1034,

Bailey, CO 80421.  He has sold hay to Mr. Swift.  He will testify about

an incident where Mr. Hatlee was taking Mr. Carpenter's hay from Mr.

Carpenter's truck without authorization.  He is expected to testify in

person.

p.  Peter Petlak.  He is a friend of the plaintiffs who will testify about his

observation of horses at Echo Valley Ranch and his discussions with

Mr. Hatlee about the feeding of horses at Echo Valley Ranch.  He is

expected to testify in person.

q.  Any witness necessary for impeachment.

r.  Any witness necessary for rebuttal.

(3)     Witnesses where testimony is expected to be presented by means of a

deposition and, if not taken steno graphically, a transcript of the pertinent portions of

the deposition testimony.  See Fed. R. Civ. P. 26(a)(3)(B).

a.  None at this time.

**b.**     **Expert witnesses to be called by Defendant Olds:**

(1)     Witnesses who will be present at trial (see Fed. R. Civ. P. 26(a)(3)(A))

    a.   Ashleigh Olds, DVM.  She is a veterinarian who will testify about her observations at Echo Valley Ranch on February 16, 2012, and her involvement with the investigation by the sheriff's office.  She is expected to testify in person.

(2)     Witnesses who may be present at trial (see Fed. R. Civ. P. 26(a)(3)(A))

    a.   Jenifer R. Gold, DVM.  She is a veterinarian who will testify as an expert witness as set forth in her reports.  She is expected to testify in person.

    b.   Dr. Richard Leone, DVM.  He is a veterinarian who will testify as an expert witness as set forth in his reports.  He is expected to testify in person.

    c.   Amy Murdock, DVM.  She is a veterinarian who provided care and treatment for Bear when he came to Aspen Creek.  She is expected to testify in person.

    d.   Shannon Harland, DVM.  She is a veterinarian who provided care and treatment for Bear when he came to Aspen Creek.  She is expected to testify in person.

    e.   Lois Toll, DVM.  She is a veterinarian who will testify as an expert witness as set forth in the expert disclosures.  She cared for the six horses after they were taken to Harmony Equine/Dumb Friends League.  She is expected to testify in person.

    f.   Michael H. Gotchey, DVM.  He is a veterinarian who will testify as an

expert witness as set forth in the expert disclosures  He observed Bear while in Routt County and he provided information to the Routt County animal control officers about the condition of Bear.  He is expected to testify in person.

g.  Dawn Smith.  She is an animal control officer with the Routt County Sheriff's Office who will testify as set forth in the expert disclosures. She will testify regarding her observations of Little Feather and Bear while they were in Routt County and after they were moved to Echo Valley Ranch.  She will also testify about her communication with the Park County Sheriff's Office.  She is expected to testify in person.

h.  Cindy Del Valle.  She is an animal control officer with the Routt County Sheriff's Office who will testify as set forth in the expert disclosures. She will testify regarding her observations of Little Feather and Bear while they were in Routt County and after they were moved to Echo Valley Ranch.  She will also testify about her communication with the Park County Sheriff's Office.  She is expected to testify in person.

i.  Garret Leonard.  He is manager of Harmony Equine/Dumb Friends League and will testify about the care of the six horses in question in February-April 2012.  He is expected to testify in person.

j.  Bobbi Priestley.  She is an animal control officer with the Park County Sheriff's Office.  She will testify as set forth in her deposition and the expert disclosures by the Park County defendants.  She is expected to testify in person.

k.  Thom LeDoux.  He is the District Attorney for the 11th Judicial District.

15

He will testify as set forth in the disclosures by the Park County defendants.  He is expected to testify in person.

l.   Matthew Giacomini.  He is a lawyer who will testify regarding the reasonableness of the claimed damages for attorney fees in the underlying case.  He is expected to testify in person.

(3)   Witnesses where testimony is expected to be presented by means of a deposition and, if not taken steno graphically, a transcript of the pertinent portions of the deposition testimony.  See Fed. R. Civ. P. 26(a)(3)(B).

a.   None at this time.

## 7.  EXHIBITS

(1)   Plaintiff(s):  Attached hereto as Exhibit C is Plaintiffs' list of exhibits.

(2)   Defendant(s): Attached hereto as Exhibit D is PCSO Defendants' list of exhibits

**Defendant Olds:**

B-1.       Photos of Bear taken in Routt County.

B-2.       Photos of Bear taken on February 13, 2012.

B-3.       Photos of Bear taken on February 16, 2012.

B-4.       Photos of Bear taken after February 16, 2012.

B-5.       Photos of Maggie taken on February 16, 2012.

B-6.       Photos of Chance taken on February 16, 2012.

B-7.       Photos of Chance taken at Dumb Friends/Harmony Equine Center.

B-8.       Photos of Echo taken on February 16, 2012.

B-9.       Photos of Echo taken at Dumb Friends/Harmony Equine Center.

B-10.      Photos of Fiona taken on February 16, 2012.

B-11.      Photos of Fiona taken at Dumb Friends/Harmony Equine Center.

B-12.      Photos of Lena taken on February 16, 2012.

B-13.      Photos of Lena taken at Dumb Friends/Harmony Equine Center.

B-14.      Photos of Midnight taken on February 16, 2012.

B-15.      Photos of Midnight taken at Dumb Friends/Harmony Equine Center.

B-16.      Photos of River taken on February 16, 2012.

B-17.      Photos of River taken at Dumb Friends/Harmony Equine Center.

B-18.      Photos of groups of horses taken on February 16, 2012.

B-19.      Photos of pens and water tanks at Echo Valley Ranch on February 16, 2012

B-20.      Photos taken by Dr. Olds at Echo Valley Ranch on February 16, 2012.

B-21.      Timberline Equine treatment records for the Six Horses.

B-22.      Timberline Equine treatment records for Bear.

B-23.      Timberline Equine treatment records for Maggie.

B-24.      Necropsy Report on Maggie.

B-25.      Timberline blog post April 26, 2012.

B-26.      Dr. Horton email May 5, 2012.

B-27.      Statement of the Veterinarian-Client-Patient Relationship.

B-28.      Hatlee court history.

B-29.      Aerial photo of Echo Valley Ranch.

B-30.      Aerial photo of Echo Valley Ranch, larger scale.

B-31.      Portions of the Park County Sheriff's Office Records.

B-32.      Records of Bear at Aspen Creek Veterinary Hospital.

B-33.      Dr. Olds email and summary of findings, February 16, 2012.

B-34.    Written declaration by Dr. Olds.

B-35.    Troy Murdock letter.

B-36.    Littleton Equine Records for the Six Horses.

B-37.    Dr. Toll report, May 23, 2012.

B-38.    Chart of weight gain of 6 horses

B-39.    Horse Body Condition Score Chart

B-40.    Exhibits necessary for rebuttal.

B-41.    Exhibits necessary for impeachment.

    (3)    Other Parties:

b.    Copies of listed exhibits must be provided to opposing counsel and any *pro se* party no later than 30 days before trial.  The objections contemplated by Fed. R. Civ. P. 26(a)(3) shall be filed with the clerk and served by hand delivery or facsimile no later than 14 days after the exhibits are provided.

## 8.  DISCOVERY

Discovery has been completed.

## 9.  SPECIAL ISSUES

None at this time.

## 10.  SETTLEMENT

Undersigned counsel certify:

a.    Counsel for the parties and any *pro se* party met in person on

January 22, 2015, to discuss in good faith the settlement of the case.

b.      The participants in the settlement conference, included counsel, party

representatives, and any *pro se* party.

c.      The parties were promptly informed of all offers of settlement.

d.      Counsel for the parties and any *pro se* party do not intend to hold future settlement

conferences.

e.      It appears from the discussion by all counsel and any *pro se* party that there is

little possibility of settlement

f.      Counsel for the parties and any *pro se* party considered ADR in accordance with

D.C.COLO.LCivR.16.6.


## 11. OFFER OF JUDGMENT

Counsel and any *pro se* party acknowledge familiarity with the provision of Rule 68

(Offer of Judgment) of the Federal Rules of Civil Procedure.  Counsel have discussed

it with the clients against whom claims are made in this case.


## 12. EFFECT OF FINAL
## PRETRIAL ORDER

Hereafter, this Final Pretrial Order will control the subsequent course of this action

and the trial, and may not be amended except by consent of the parties and approval by the

court or by order of the court to prevent manifest injustice.  The pleadings will be deemed

merged herein.  This Final Pretrial Order supersedes the Scheduling Order.  In the event of

ambiguity in any provision of this Final Pretrial Order, reference may be made to the record

of the pretrial conference to the extent reported by stenographic notes and to the pleadings.

## 13. TRIAL AND
## ESTIMATED TRIAL
## TIME; FURTHER TRIAL
## PREPARATION
## PROCEEDINGS

*1.*     Trial is to a jury

*2.*     Estimated trial time is ten days

*3.*     Trial will be in Denver

*4.*     There are no other orders pertinent to the trial proceedings.


DATED this _____day of _____, 20_____.

                                        BY THE COURT



                                        _____
                                        Michael J. Watanabe
                                        U.S. Magistrate Judge
                                        District of Colorado

APPROVED:

/s/ Brice A. Tondre
Brice A. Tondre
215 South Wadsworth Blvd., #500
Lakewood, Colorado 80226-1566
Telephone: 303-296-3300
ATTORNEY FOR PLAINTIFF


/s/ Timothy P. Schimberg
Timothy P. Schimberg & Flanagan, P.C.
1640 Grant Street, Suite 150
Denver, CO 80203
Telephone: 303-298-8603
ATTORNEY FOR THE DEFENDANTS
HARDEY, PRIESTLY, GORE and
WEGENER


/s/ John Lebsack
John Lebsack
White & Steele, P.C.
600 17th Street, Suite 600N
Denver, CO 80202
Telephone: 303-296-2828
ATTORNEY FOR DEFENDANT OLDS