UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.13-cv-02469-RM-MJW

RANDALL J. HATLEE and
RONALD L. SWIFT

Plaintiffs,
vs.

CINDY HARDEY,
BOBBI PRIESTLY,
MONTE GORE
FRED WEGENER and
ASHLEIGH OLDS,

Defendants.
_____

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANT SHERIFF WEGENER'S MOTION FOR SUMMARY JUDGMENT
REGARDING OFFICIAL CAPACITY CLAIMS [#115]
_____

Now come the Plaintiffs, by and through their attorney, and state in opposition to the

Sheriff's motion for summary judgment regarding official capacity claims as follows.

## INTRODUCTION

The issue presented is one of municipal liability under the principles of *Monell v. Dept. of*

*Soc. Servs. Of the City of New York*, 436 U.S. 658 (1978) and its progeny. Here, the municipality

which Plaintiffs seek to hold liable for their damages is the Office of the Sheriff of Park County

("PCSO"). *Tunget v. Board of County Commissioners*, 992 P.2d 650, 652 (Colo. App. 1999);

*Peterson v. Arapahoe Cty. Sheriff*, 72 P.3d 440, 443 (Colo. App. 2003); C.R.S. 30-10-519. The

persons whose conduct is alleged to be a basis for liability of PCSO are Sheriff Wegener,

1

Undersheriff Gore and Sgt. Priestly, all of whom were acting in their respective official capacities. Sheriff Wegener left animal control matters in the hands of the animal control officers. (Ex. 15-Wegener depo. p. 13,l 16-25) All divisions were supervised by Undersheriff Gore but he primarily left animal control issues to Capt. Bonnelycke and Sgt. Priestly. (Ex.16-Gore depo. p. 4) Capt. Bonnelycke was excluded from involvement in this matter.Gore was unusually and deeply involved because of the public outcry. (Ex. 17-Bonnelycke depo. pp. 40-42).

On February 22, 2012, a warrant to seize the six horses was issued upon the affidavit of Defendant Hardey. (Exs. 9 & 10) Defendant Hardey knowingly omitted several material facts which, if they had been disclosed, would have resulted in the judge refusing to issue the warrant. On February 23, 2012 the warrant was executed by Defendants Gore, Priestly and Hardey.

Under Colorado law, seizure of an animal by a peace officer is permitted only if he or she has probable cause to believe that the animal is a victim of  a violation of C.R.S. §18-9-202 **and** as a result of the violation is endangered if it remains with the owner or custodian. Here, not only was there no probable cause to believe that the horses were endangered if they remained with Plaintiffs, both Defendants Priestly and Hardey admitted that the horses were not endangered if they remained with Plaintiffs.

On February 16, 2012, Plaintiffs entered into a contract with the Park County Sheriff's Office ("PCSO") which provided that the six horses at issue would be left in the care of Plaintiffs giving them thirty days to demonstrate that the horses were not being mistreated and gave PCSO the right to come onto Plaintiffs' property every two days to monitor the health of the animals. It provided that Plaintiffs' may be charged with animal cruelty if they failed to rectify the condition

of the animals. (Ex. 3) This contract was authorized by Sheriff Wegener. (Ex. 15-Wegener depo.

pp.37-38)

On February 19, 2012, PCSO induced Plaintiffs to enter into a protective custody

agreement (Ex. 6) to protect Plaintiffs and the six horses from vigilantyism. This was not a

seizure but a relocation where the terms of the February 16, 2012, contract (Ex. 3) could be

carried out in safety. It was also provided that the six horses could not be impounded "if no other

contributing factors are present other than neglect." This contract was authorized by Sheriff

Wegener. Ex. 15-Wegener depo. pp. 31, 34)

The claim that the two contracts were breached is both a common law claim and a §1983

claim.

## LEGAL STANDARD FOR MUNICIPAL LIABILITY

*Monell*, at 694, held that local government units were persons for purposes of §1983 but

could not be held liable under a theory of respondeat superior but could be held liable when the

constitutional deprivation arises from a governmental custom or is done by those whose edicts or

acts may fairly be said to represent policy.

In *Butcher v. City of McAlester*, 956 F.2d 973, [fn 2] (10th Cir. 1992) the court held:

> …in a §1983 proceeding a municipality is liable for the acts of its "final policymaking authority" … or a final policymaker ratifies a subordinate's recommendation, and the basis for it , thus rendering a final decision chargeable to the municipality. [Citations omitted].

In *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) the court listed

five potential grounds which give rise to municipal liability to wit: (1) a formal regulation or

policy statement; (2) an informal custom amounting to a widespread practice; (3) the decisions of

final policymakers; (4) ratification by final policymakers of the decisions of subordinates and the

3

basis for the decision; and, (5) failure to adequately train or supervise.

A municipality can be liable for the unconstitutional conduct of its final policymakers. *Melton v. City of Oklahoma City,* 879 F.2d 706, 724 (10th Cir. 1989) rev'd *en banc* in part on other grounds, 928 F.2d 920 (10th Cir. 1991).

In *Pembaur v. Cincinnati*, 475 U.S. 469, 481 (1986), the Supreme Court indicated that an authorized decision maker's course of action "tailored to a particular situation and not intended to control decision in later situations" may, under certain circumstances, give rise to liability under §1983.

In *J.B. v.Washington County*, 127 F.3d 919, 923 (10th Cir. 1997) the Court held that where the sheriff approved an investigative course of action by one of his deputies in connection with an individual case was a decision "properly made by the County's  authorized decision makers, [which] 'surely represents an act of official government 'policy' as that term is commonly understood."

## FACTS WHICH SUPPORT MUNICIPAL LIABILITY

1.  Sheriff Wegener authorized the above described contract of February 16 , 2012 , was aware of the threats against Plaintiffs and the six horses and was consulted regarding and approved the contract to move the horses into protective custody on February 19, 2012. (Ex. 15-Wegener depo. pp. 31-38)

2. Sheriff Wegener delegated the duty of appeasing those who were questioning PCSO's handling of the investigation of the Plaintiffs to Undersheriff Gore. (Ex. 15-Wegener depo. p. 9)

3. Sheriff Wegener's responsibilities were to keep the peace, run the jail and supervise the undersheriff. (Ex. 15-Wegener depo. p. 6)

4. Undersheriff Gore was second in command and as such supervised all divisions of PCSO  but left animal control to Capt. Bonnelycke and Sgt. Priestly. (Ex. 16-Gore depo. p. 4)

5. By February 19, 2012, PCSO was inundated with telephone calls and e-mails which rendered the animal control division disfunctional. There was fear that there would be an attempt by concerned citizens to rescue the horses . Undersheriff Gore was aware of all of this and wanted to avoid potential problems. He thought moving the horses would defuse the situation. Defendant Hardey was delegated the task of asking the Plaintiffs to enter into an agreement to place the six horses in protective custody. Defendant Priestly drafted the agreement. Defendant Hardey induced the Plaintiffs to enter into the agreement. The horses were moved to Kirstin LeBrau's ranch. (Ex. 18-Priestly depo pp.83-84; Ex. 16-Gore depo. pp. 9-12;14)

6. Moving the horses did not defuse the situation. (Ex. 16-Gore depo. pp. 11-12) The reaction from one of the chief antagonist, Shelly Ferrero, is contained in an e-mail to Defendant Priestly dated February 21, 2012, which stated: (Ex. 8)

> Why don't you people do yourself a favor instead of continuing to shoot yourself in the foot. The community wants to know that the precious horses are getting intense medical care in a medical hospital. They want to know the horses are getting iv's and are being rehydrated and given electrolytes, water and food.Why do you continues to refuse to help the community in knowing that these little horses are safe and in truly competent care. It's pretty simple. Get over your power trip and settle this horrific situation down, or your [sic] just going to continue to get jammed by the public, this isn't going away anytime soon………if you don't know already this is all over the country and people are watching and ready to take more action.

7. Defendant Priestly forwarded this e-mail to Defendant Gore marked "Importance HI." Defendant Gore immediately contacted Dr. Olds to inquire if  she would temporarily take over care of the horses. She responded that she would. After receiving conformation that Dr. Olds had space available to provide temporary care Defendant Hardey began preparing her affidavit for a warrant. (Ex. 8) Defendant Hardey consulted with Defendant Priestly regarding seizure of the six

horses. (Ex. 18-Priestly depo. p. 90) Hence, two animal control officers, both of whom would be expected to know that, under the law, animals could only be seized if they are endangered by remaining in the custody of the accused violator. Both Defendants Wegener and Gore charged Defendant Priestly with finding a way to appease the concerned citizens. Gore was an advocate for moving the horses, so he accepted seizure as the methodology despite it being in violation of the law.

8. Based on Defendant Hardey's affidavit a warrant was issued at 5:24 p.m. on February 22, 2012. Exs. 9 & 10) It has been judicially determined that the affidavit omitted material information which, had it been included in the affidavit, the warrant would not have been issued. (Ex. 14)

9. On February 23, 2012, the warrant was served and executed by Defendants Gore, Priestly and Hardey. Ex. 16-Gore depo. p. 21; Ex. 18-Priestly depo. p.90)

10. Defendants Priestly and Hardey have admitted that at the time of the seizure the six horses were not endangered if they were allowed to remain at the LeBeau ranch. (Ex. 18-Priestly depo. p. 117; Ex. 19-Hardey depo. p. 41) Before proceeding with the seizure, Defendant Gore had a duty to make an investigation of whether there was a basis for seizure. A law enforcement officer is not entitled to rely on the judge who issues the warrant. As is the case here, there is no probable cause for seizure of the horses since it is conceded that they were not endangered. The warrant should not have been sought and if issued should not have been executed. A judge's mistake in issuing a warrant does not immunize a law enforcement officer from liability for executing a warrant which he should have known violated the applicable law. The plainly incompetent or knowing violator of the law is not immune. *Malley v. Briggs,* 475 U.S. 335, 341-

346 (1986). The least that can be expected from a law enforcement officer is that he or she know the law they are purporting to enforce.

11. Defendants Gore, Priestly and Hardey all knew that there was an agreement with Plaintiffs to give them 30 days to show that the condition of the six horses was attributable to contributing factors in addition to neglect. All three were charged with the knowledge that seizure of the six horses was permitted only if they would be endangered by leaving them with the Plaintiffs.

12. On February 23, 2012, each Plaintiff was served with a summons and complaint charging him with animal cruelty with respect to the six horses which were seized pursuant to the warrant. A warrant was not necessary to the issuance and service of a misdemeanor summons and complaint.

13. At the time the six horses were seized, Plaintiffs and their veterinarians were pursuing a course of testing designed to prove that the condition of the horses was due to illness, not neglect. (Ex. 5 & Ex. 13) Under the contracts with PCSO Plaintiffs were given 30 days to develop that proof. The seizure deprived Plaintiffs of that opportunity. There was nothing in the affidavits for warrants to establish endangerment. Under these circumstances a warrant should not have been applied for and should not have been executed. *Malley v. Briggs*, 475 U.S. 335, 345-346 (1986).

14. On April 10, 2012, the seizure was judicially determined to have been illegal and the horses were ordered returned to the Plaintiffs. (Ex. 14)

15. Defendants Gore and Priestly deny liability for the illegal seizure on the basis that they were not involved with obtaining the warrant. However, they did assist with its execution

which is tacit approval and was in furtherance of the PCSO's effort to defuse the public outcry which was making its animal control division dysfunctional.

## ARGUMENT AND AUTHORITIES

Defendant Wegener's motion presents no facts. It merely asserts that there are no facts to support municipal liability. Defendant Wegener admits he knew that the horses were moved into protective custody because of fear of criminal conduct by concerned citizens. (Ex. 15-Wegener depo. p. 10) Defendant Wegener admits that he delegated the duty of appeasing the concerned citizens to Defendant Gore. Ex. 15-Wegener depo. p. 9)

The claim by Defendants Gore and Priestly that they did not know that Defendant Hardey was going to  apply for a warrant to seize the six horses is highly suspect and likely not to be believed by a jury in light of the circumstantial evidence.

On February 22, 2012, at 7:23 a.m. less than three days after the horses were placed in protective custody, Defendant Priestly forwarded to Defendant Gore an e-mail threatening further public outcry. The activists were not appeased by the movement of the horses. The e-mail tacitly demanded seizure of the horses. (Ex. 8) Defendant Gore's reaction was to contact Doctor Olds to determine if she had space in her hospital for the six horses. At 11:23 a.m. she indicated she did have space. At about 5:24 p.m. Defendant Hardey applied for and received the warrants. Exs. 9 & 10) The next day Defendants Hardey, Priestly and Gore are out seizing the horses . The activists expressed their glee and thanked Defendant Gore. Coincidence or conspiracy?

While the affidavit specifically requested authority to seize the six horses and the warrant permitted their seizure, the statute sanctioned seizure only if the horses were endangered. As law officers, Defendants Gore, Priestly and Hardey were charged with knowledge of the law.

Defendants Priestly and Hardey admit that the horses were not endangered. The danger was from the activists whom Defendant Gore was charged by Defendant Wegener with the task of appeasing.

The judge who issued the warrant was not told that the horses were not endangered and that there was an agreement to leave the horses with Plaintiffs in order to give Plaintiffs the opportunity to show that the horses were sick, not neglected.

Illegally taking the horses was a violation of *Brady v. Maryland*, 373 U,S, 83 (1963) in that it deprived Plaintiffs of the means to develop exculpatory facts.

The circumstantial evidence leads to the inescapable conclusion that Defendant Gore made the decision that the only way to discharge his delegated task of appeasement was to seize the six horses. The seizure violated the law and breached the contract with Plaintiffs.  Since this was done in furtherance of Defendant Gore official duties and Defendant Wegener's specific delegation to him of the task of appeasing the concerned citizens, it is an act of  PCSO policy as that term is commonly understood. *J.B. v. Washington County, supra.*

The conduct of Defendant Gore is an illegal seizure directed by him and/or ratification of the conduct of Defendant Hardey. *See, Butcher v. City of McAlester, supra; Bryson v. City of U.S. Oklahoma City, supra*; and *Melton v. City of Oklahoma City, supra.*

A law officer who executes a warrant issued by a judicial officer does not have absolute immunity.  If, on an objective basis, no reasonably competent officer would have concluded that the warrant should have issued, it is an unconstitutional act by him to execute it. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Defendants Priestly and Hardey have admitted that the horses were not endangered. Defendant Gore could see when he arrived to execute the warrant that the

horses were not endangered and if he had any doubts he should have asked Defendants Priestly and Hardey who were knowledgeable regarding animal control law and the reasons why the horses had been left with Plaintiffs. The decision to leave the horses with Plaintiffs was a consensus decision. (Exhibits 1 and 2)

Under these circumstances Gore knew there was no legal basis for seizing the horses. However, he also knew that seizing the horses was the only way to appease the concerned citizens.

Judge Green in his opinion ordering return of the horses found that the judge who issued the warrant erred in authorizing the seizure. He also found, after an evidentiary hearing, that there was no evidence that the horses were endangered prior to their seizure. (Ex. 14)

## CONCLUSION

The events leading up to the seizure clearly demonstrate that this was an act carried out for the benefit of the PCSO. Defendants Wegener, Gore and Priestly were all decision makers who carried out the policy of  PCSO which, like the situation in J.B.v. Washington County, supra and Pembaur v. Cincinnati, supra, was for a particular situation not intended to control decisions in later situations. Defendant Hardey was the deputy chosen to implement the decision.

This was clearly an official act carried out the four individuals. This makes them official actors for whose acts PCSO is liable. The other alternative is to hold each participant individually liable. There is no doubt that the seizure was illegal.

It is respectfully submitted that the motion for summary judgment must be denied.

/s/ Brice A. Tondre
_____

Brice A. Tondre
215 South Wadsworth Blvd., #500
Lakewood, Colorado   80226
Telephone:  303-296-3300
Facsimile: 303-238-5310
briceatondrepc@msn.com

ATTORNEY FOR PLAINTIFF

CERTIFICATE OF SERVICE

I hereby certify that on this the 26th day of October, 2015, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of filing to the following.

Timothy P. Schimberg
t_schimberg@fsf-law.com

John Lebsack
jlebsack@wsteele.com

/s/ Brice A. Tondre
_____

11