EXHIBIT 14

AGREEN BLANDO COURT REPORTING & VIDEO INC.

61

1 that being the email presented to her by Dr. Old. That
2 being the information directly relayed to Cindy Hardy
3 by Dr. Horton. The email presented by Dr. Old involved
4 a horse that was in the care and custody of these two
5 Defendants. That horse that was in the care and
6 custody of these two Defendants, in the opinion of
7 Dr. Olds, appeared very hungry and had been eating
8 non-stop since being removed to a different location.
9 Blood work showed anemia for that horse, the horse was
10 not showing signs of botulism, and it appeared to
11 Dr. Olds to be a very clear cut case of starvation on
12 the part of these Defendants as it relates to that
13 separate horse.
14      Subsequent to that information, Cindy Hardy,
15 the investigator, received information from Dr. Horton.
16 Among that information was that the blood work results
17 on the six subject horses was consistent with anemia.
18 That being, in the opinion of Cindy Hardy as presented
19 here today, consistent with the idea that simply that
20 these horses were being malnourished. In addition,
21 Dr. Horton directly opined to Cindy Hardy that it was
22 her opinion, her position, that the horses had been
23 left out to pasture for too long without there being
24 sufficient supplemental feed provided, and that is how
25 they came to be in the very poor condition that they

AGREEN BLANDO COURT REPORTING & VIDEO INC.

62

1 were observed in.
2      All of that information, Judge, when taken
3 as a whole -- which is the Court's obligation here
4 today -- gives rise to objective probable cause to
5 believe that these horses had been mistreated by these
6 two Defendants, and to believe that if these two horses
7 were not seized as a result of that mistreatment their
8 health was in serious danger.
9      As a result, Cindy Hardy took the appropriate
10 action, took the action that was proper and appropriate
11 under the facts, and we ask this Court to confirm that
12 there was, in fact, objective probable cause for the
13 seizure of these horses in this matter. Thank you.
14      THE COURT: Okay, thank you everyone. I
15 appreciate the thorough presentation. The Court is
16 facing quite a dilemma right now, and it will become
17 apparent to the parties why I believe it's a dilemma in
18 just a moment. The case hinges on whether or not
19 Officer Hardy had probable cause to believe that the
20 animals were endangered if they remained in the
21 Defendants' care. And that sub-issue rarely is
22 presented as thoroughly as it has today. In fact, I've
23 never seen it addressed to this extent before. We've
24 instead focused generally on the cost of care to bond
25 the animals once the lawful order to seize the animals

AGREN BLANDO COURT REPORTING & VIDEO INC.
63

1  has been approved by a Court. And for the record
2  again, I am not the judge who signed this search
3  warrant which authorized seizure of the animals.
4         Now the problem I'm faced with is that the
5  search warrant authorizes animal control to seize the
6  animals, but the search warrant contains no information
7  regarding a belief that the animals were endangered if
8  they were to remain in the Defendants' care. The
9  information in the search warrant simply focuses on
10 whether there was probable cause to believe that they
11 had been neglected, and Officer Hardy clearly relied on
12 that warrant and the information therein to reach her
13 determination that these animals needed to be seized to
14 protect then from ongoing neglect.
15        What we get into today are some additional
16 factors whereby the Defendants had brought the animals
17 in from pasture, that they were being looked at by a
18 veterinarian, that animal control initially informed
19 the Defendants that they would have thirty days to turn
20 around the condition of the horses through proper care
21 under the supervision of the licensed veterinarian.
22        Most of the evidence presented by the State
23 today focuses on whether or not the animals were
24 suffering neglect, causing their emaciated state. But
25 very little evidence has been presented by the State as

AGREN BLANDO COURT REPORTING & VIDEO INC.
64

1  to why these horses, if they were to remain in the
2  Defendants' care under the watchful eye of a licensed
3  veterinarian and frequent visitation by animal control,
4  why that wouldn't suffice to determine if the animals'
5  condition were improving.
6         The search warrant obtained by Officer Hardy
7  was preceded by the information from one of the
8  veterinarians indicating that they believed that it was
9  neglect causing the starvation. However, that did not
10 indicate that the animals in their current situation,
11 when they had been removed to the barn and were being
12 cared for specifically, whether the neglect was
13 ongoing. And that's what this Statute is intended to
14 prevent, ongoing neglect and suffering of the animals,
15 and requiring removal to provide the appropriate care.
16 We have not heard anything from the State to indicate
17 that the animals were not receiving the appropriate
18 care once the Defendants were made aware of the fact
19 that they were being underfed or malnourished.
20        It's a difficult issue because Defendants in
21 a criminal action are presumed innocent. Animal
22 control has their duty to make sure the animals are not
23 suffering while the charges are pending. So the Court
24 does have to find a balance. What I have not seen
25 today is evidence that these horses absolutely had to

1  be removed to prevent their being endangered. As
2  reluctant as I am to say so, I think the prior judge
3  did err in authorizing a seizure of the animals without
4  any evidence that their removal was necessary to
5  curtail any ongoing neglect. Perhaps additional
6  information could have been included in the warrant
7  indicating what the current care of the animals was, so
8  it's hard to second guess based on that, but hearing
9  now that these animals were being treated while in the
10 care of the Defendants by a licensed veterinarian, that
11 animal control actually had recommended that they
12 remain in the Defendants' care for up to thirty days to
13 see if their condition improved, and the official
14 report recommending that one of the veterinarians was
15 supportive of leaving the horses at the property of the
16 Defendants until test results were in, the Court is
17 simply left to conclude that the animal control
18 officers did not have probable cause to believe that
19 the animals were endangered by remaining in the care of
20 the Defendants, since they had taken steps to remedy
21 the health issue of the animals. Obviously, I'm not
22 ruling on whether or not neglect took place. The Court
23 does find that the officer had probable cause to
24 believe that the animals suffered from animal cruelty,
25 but the Court finds that the animal control officer did

1  not have probable cause to believe that the animals
2  would suffer ongoing animal cruelty and would be
3  endangered if they were left in the care of the
4  Defendants, specifically due to the fact the Defendants
5  had made remedial measures and got a vet to look at the
6  animals, and had authorized animal control to visit
7  every other day to check on the welfare of the animals.
8  So the Court's ruling will be that the animals be
9  returned to the care of the Defendants during these
10 proceedings, and obviously animal control will have the
11 authority to inspect the animals, and if their
12 condition starts to degrade then that would indicate
13 that they would have probable cause to re-seize the
14 animals based on their condition deteriorating in the
15 Defendants' care. But at this time the Court does
16 order that the animals be returned to the Defendants.
17 Mr. Campbell, how much in the bond has actually been
18 paid by your clients?
19         MR. CAMPBELL:  They've paid the first month,
20 and that was just -- that was the amount that was set.
21 I think it was seven hundred and twenty dollars.
22         MALE:  Fourteen hundred and forty dollars.
23         MR. CAMPBELL:  Fourteen hundred and forty for
24 the total.
25         THE COURT:  What I would request is a written