# EXHIBIT 19

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02469-RM-MJW

RANDALL J. HATLEE
AND RONALD L. SWIFT,

Plaintiffs,

vs.

CINDY HARDEY,
BOBBIE PRIESTLY,
MONTE GORE,
FRED WEBENER
and ASHLEIGH OLDS,

Defendants.



------------------------------------------------------------
DEPOSITION OF CINDY HARDEY
June 20, 2014
------------------------------------------------------------

Deposition location:
9998 Havekost Road
Conifer, Colorado 80433

APPEARANCES:

  Brice A. Tondre, Esq.
  BRICE A. TONDRE, P.C.
  215 South Wadsworth Boulevard, #500
  Lakewood, Colorado 80226

                                   For the Plaintiffs.

  John Lebsack, Esq.
  WHITE and STEELE, P.C.
  Dominion Towers
  600 17th Street, Suite 600N
  Denver, Colorado 80202

                                   For the Defendant, Olds.



**AVERY WOODS REPORTING**

455 Sherman Street, Suite 250 • Denver, Colorado 80203
303-825-6119 • 1-800-962-3345 • FAX 303-893-8305
www.averywoods.net

Page 38

1  regarding what to do with the horses?
2     A  Can you rephrase that question, please?
3     Q  Sure. On February the 16th, 2012, did
4  you have input from Dr. Anderson, Dr. Britt, and
5  Mr. Dutcher regarding what should be done with the six
6  horses?
7     A  I did not.
8     Q  Who did?
9     A  Sergeant Priestly.
10    Q  And what was your understanding of the
11 input that came from Dr. Anderson?
12    A  My understanding was that if there was a
13 vet involved that I needed to leave the horses at that
14 time, sorry; and speak to the vet, get all my ducks in
15 a row, and go from there.
16    Q  What was your understanding of
17 Dr. Britt's input?
18    A  I don't recall getting input -- I don't
19 remember getting input from Dr. Britt on the 16th.
20    Q  Were you ever advised that Dr. Britt
21 offered to come to evaluate the horses if you asked him
22 to?
23    A  Yes.
24    Q  Did you ask him to come evaluate the
25 horses?

Page 39

1     A  No.
2     Q  Who is Dr. Britt?
3     A  In -- I've never met the gentleman, but I
4  believe he's a vet located south of Fairplay.
5     Q  How did you learn that he offered to come
6  evaluate the horses?
7     A  Sergeant Bobbi Priestly.
8     Q  And what was your understanding of the
9  input that came from Mr. Dutcher?
10    A  Dutcher.
11    Q  Dutcher?
12    A  He had the same input as Anderson.
13    Q  Now, do you know what information was
14 supplied to Dr. -- to Anderson, Dr. Britt, and
15 Mr. Dutcher?
16    A  I do not.
17    Q  Who is Mr. Dutcher?
18    A  He is the chief cruelty investigator.
19    Q  For the Department of Agriculture?
20    A  Yes, Bureau of Animal Protection League.
21    Q  Did you have any veterinarian go evaluate
22 the six horses?
23    A  At any time?
24    Q  At any time between February 16th and
25 February 22nd?

Page 40

1     A  No.
2        MR. TONDRE: Mark that as the next
3  number.
4        (Whereupon, Deposition Exhibit
5  No. 67 was marked for identification by the
6  reporter.)
7        MR. TONDRE: What is it?
8        THE COURT REPORTER: 67.
9     Q  (BY MR. TONDRE) I've handed you what has
10 been marked as Exhibit 67. What is that?
11    A  A state notice of warning.
12    Q  And did you prepare that?
13    A  I did.
14    Q  And was this prepared pursuant to a
15 consensus decision among you, Bobbi Priestly,
16 Dr. Anderson, Dr. Britt, and Mr. Dutcher?
17    A  No.
18    Q  They had nothing to do with it?
19    A  No.
20    Q  They didn't know you were doing it?
21    A  Sergeant Priestly knew I was doing it.
22    Q  Did Mr. Dutcher, Dr. Britt, and
23 Dr. Anderson concur that the horses should be left
24 where they were?
25       MR. SCHIMBERG: Object to form. Go

Page 41

1  ahead.
2     A  Dr. -- or Anderson and Dutcher are very
3  confident in our abilities to handle cruelty cases. So
4  they stand by our decisions and did not concur or agree
5  or say anything towards my decision to write the state
6  notice of warning.
7     Q  (BY MR. TONDRE) Okay. Why did you
8  decide -- well, first of all, let me ask you another
9  question. If -- if the horses were in danger in that
10 location, you had an obligation to impound them, didn't
11 you?
12    A  Yes.
13    Q  So it follows, does it not, that you did
14 not consider them to be endangered?
15    A  No.
16       MR. SCHIMBERG: Object to form.
17    Q  (BY MR. TONDRE) It doesn't follow?
18    A  I guess reword the question, please.
19    Q  I'm sorry?
20    A  Can you reword --
21    Q  Did you believe the horses were
22 endangered if left on the premises of Echo Valley?
23    A  No.
24    Q  Had you ever issued a notice of warning
25 before?