**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 13-cv-02469-RM-MJW

RANDALL J. HATLEE and
RONALD L. SWIFT,

    Plaintiffs,

v.

CINDY HARDEY,
BOBBI PRIESTLY,
MONTE GORE,
FRED WEGENER, and
ASHLEIGH OLDS,

    Defendants.

---

## ORDER

---

Plaintiffs were prosecuted under Colorado state animal cruelty statutes for the alleged maltreatment of horses under their care, a jury found them not guilty, and Plaintiffs filed the present action against the officers who were involved in the investigation resulting in their prosecution and the veterinarian enlisted to assist those officers. This Court previously issued an Order on September 29, 2015 (ECF No. 110, the "Previous Order") granting summary judgment and dismissing many of Plaintiffs' claims, but leaving intact Plaintiffs' claims against Sheriff Fred Wegener in his official capacity under 42 U.S.C. § 1983 based on alleged Fourth Amendment violations relating to (i) the seizure of Plaintiffs' horses and (ii) malicious prosecution; one claim against Officer Cindy Hardey in her individual capacity under 42 U.S.C. § 1983 relating to the seizure of Plaintiffs' horses; and Plaintiffs' breach of contract claim. As to the remaining official

capacity claim against Sheriff Wegener, this Court granted leave for Sheriff Wegener to file a motion for summary judgment, which was subsequently filed with the Court on October 15, 2015. (ECF No. 115.)   This matter is presently before the Court on that motion and Plaintiffs' response thereto.   (ECF No. 117.)   For the reasons explained below, Sheriff Wegener's motion for summary judgment is GRANTED.

**I.  LEGAL STANDARD**

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.,* 41 F.3d 567, 569-70 (10th Cir. 1994).   Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one–sided that one party must prevail as a matter of law.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1136 (10th Cir. 2000).   Once the moving party meets its initial burden of demonstrating an absence of a genuine dispute of material fact, the burden then shifts to the non-moving party to move beyond the pleadings and to designate evidence which demonstrates the existence of a genuine dispute of material fact to be resolved at trial.   See *1-800-Contacts, Inc. v. Lens.com, Inc.,* 722 F.3d 1229, 1242 (10th Cir. 2013) (citation omitted).   A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party.   *Anderson*, 477 U.S. at 248.   In considering whether summary judgment is appropriate, the facts must be considered in a light most favorable to the non-moving

party. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013) (citations omitted). However, "[t]he mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant." *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997) (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)).

If a movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in her complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact") (citation omitted).

Only admissible evidence may be considered when ruling on a motion for summary judgment. *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005) (citation omitted) (holding that hearsay evidence is not acceptable in opposing a summary judgment motion); *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). Affidavits must be based on personal knowledge and must set forth facts that would be admissible evidence at trial. *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (quotations and citation omitted). "Conclusory and self-serving affidavits are not sufficient." *Id*. The Court will not consider statements of fact, or rebuttals thereto, which are not material or are not supported by competent evidence. Fed. R. Civ. P. 56(c)(1)(A), 56(e)(2), 56(e)(3). "[O]n a

motion for summary judgment, it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (internal quotation and citation omitted). The Court is "not obligated to comb the record in order to make [Plaintiff's] arguments for [her]." *See Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1199 (10th Cir. 2000). Further, Local Rule 7.1(e) provides that "[e]very citation in a motion, response or reply shall include the specific page or statutory subsection to which reference is made." D.C. Colo. L. Civ. R. 7.1(e).

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court previously engaged in an extensive recitation of the facts developed in this case in its Previous Order entered on September 29, 2015 (ECF No. 111) and the Court will presume the parties' knowledge of that Order.

Sheriff Wegener previously moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) as to claims brought against him in his official capacity. (ECF No. 63.) U.S. Magistrate Judge Michael Watanabe entered a Report and Recommendation on January 23, 2015 (ECF No. 90) finding that Defendants' motion should be denied on the grounds that the First Amended Complaint (ECF No. 22) alleges specific decisions and actions taken by Sheriff Wegener that, because of his status as a policymaker, would constitute the official policy of the Park County Sheriff's office and subject it to §1983 liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 477-84 (1986); *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1211-12 (10th Cir. 2007); *Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1285 (10th Cir. 2007). In its

Previous Order, the Court adopted Magistrate Judge Watanabe's Report and Recommendation in full and denied the motion to dismiss the official capacity claims brought against Sheriff Wegener.

However, in denying that motion the Court noted the seeming inconsistency in its result by granting summary judgment in favor of Sheriff Wegener as to claims brought against him in his individual capacity yet declining to grant judgment on the pleadings as to his official capacity claims where "the same factual basis upon which Plaintiffs assert their claims against Sheriff Wegener in his official capacity are the same facts upon which Plaintiffs base their claims against Sheriff Wegener in his individual capacity." (ECF No. 110 at 39.) The Court pointed out that the inconsistency was owing to the fact that the two claims had been put before the Court for determination in differing procedural contexts – Sheriff Wegener sought dismissal of his individual capacity claims in a motion for summary judgment, yet sought dismissal of his official capacity claims in the form of a motion for judgment on the pleadings. The Court noted in its Previous Order "the seemingly contradictory conclusion that the same set of facts could result in different outcomes as to claims brought against Sheriff Wegener in his official capacity versus claims brought against him in his individual capacity." (*Id.*) To resolve this inconsistency, the Court granted Sheriff Wegener leave to file the present motion.

**III.   ANALYSIS**

Plaintiffs have not come forward with any evidence that would indicate that Sheriff Wegener had any direct involvement in the decision to apply for a warrant to have Plaintiffs' horses seized or to prosecute Plaintiffs maliciously. Indeed, Plaintiffs do not even address their malicious prosecution claim or what involvement any Defendant had in the facts surrounding that

claim. As to the seizure of the horses, Plaintiffs posit that Sheriff Wegener "delegated the duty of appeasing the concerned citizens to Defendant Gore" who in turn had the horses seized in an effort to carry out that duty. (ECF No. 117 at 8.) However, even if this Court were to assume these facts as true, they would not be sufficient to impose municipal liability upon the Park County Sheriff's Office under the relevant legal standards. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978); *Pembaur*, 475 U.S. 469.

"A municipality or other local government may be liable under [§1983] if the governmental body itself 'subjects' a person to a deprivation of rights or causes a person 'to be subjected' to such a deprivation." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011) (quoting *Monell*, 436 U.S. at 692). "[A] municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691. Instead, to establish municipal liability, a plaintiff must show: (1) the existence of a municipal policy or custom; and (2) a direct causal link between the policy or custom and the constitutional injury alleged. *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)). The existence of a policy or custom can be established by more than one means, including demonstrating the existence of

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to

the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (citation and quotation marks omitted).

As to the third means by which municipal liability could arise, only "under appropriate circumstances" may "a single decision by policymakers . . . be sufficient to create liability under § 1983." *Brammer-Hoelter* , 492 F.3d at 1211. As the Tenth Circuit has explained:

> While *Monell* found liability on the basis of an official policy as the moving force of the constitutional violation, it fell to the [Supreme] Court in *Pembaur* to establish that actions taken by a municipality's final policymakers also represent acts of official policy giving rise to municipal liability . . . . An act by a municipality's final policymaking authority is no less an act of the institution than the act of a subordinate employee conforming to a preexisting policy or custom. As the Court in *Pembaur* explained '[n]o one has ever doubted, for instance, that a municipality may be liable [section] 1983 for a single decision by its properly constituted legislative body—whether or not that body had taken similar action in the past or intended to do so in the future—because even a single decision by such a body unquestionably constitutes an act of official government policy.'

*Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1285 (10th Cir. 2007) (quoting *Pembaur*, 475 U.S. at 480) (further internal citations and quotation marks omitted); *see also Thomas v. City of Snyder, Okl.*, No. 95-6252, 103 F.3d 145 (Table), 1996 WL 662453, at *4 (10th Cir. 1996) ("[W]hen a municipal official who is 'responsible for establishing final policy with respect to the subject matter in question' makes 'a deliberate choice to follow a course of action . . . from among various alternatives,' municipal liability will attach to that decision.") (quoting *Pembaur*, 475 U.S. at 483-84); *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) ("In the case where a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person

with authority to make policy decisions on behalf of the entity being sued.").

Here, even assuming that Sherriff Wegener did have authority sufficient to cause him to be considered a final policymaker for the Park County Sheriff's Office, Plaintiffs claim that Sheriff Wegener delegated the responsibilities of making decisions regarding Plaintiffs' horses is not sufficient to establish liability for the municipality. Significantly, Plaintiffs do not argue or submit any evidence showing that Sheriff Wegener had specific knowledge of the fact that a warrant was issued to seize Plaintiffs' horses following their placement into protective custody. Instead, Plaintiffs merely state that Sheriff "Wegener delegated the duty of appeasing the concerned citizens to Defendant Gore" who, as alleged by Plaintiffs, had the horses seized in furtherance of that delegated responsibility. However, the mere conclusory allegation that Sheriff Wegener delegated responsibility to one of his subordinates does nothing to prove that the seizure of Plaintiffs' horses was an act "taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued." *Jenkins*, 81 F.3d at 994. Indeed, it would tend to prove the contrary, as Sheriff Wegener clearly would not have made a decision to have Plaintiffs' horses seized if he had delegated that decision to his subordinates.

Likewise, this is not a case where municipal liability could attach to an action through "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval . . . ." *Bryson*, 627 F.3d at 788. Plaintiffs have not presented any evidence, nor has this Court found upon its own review of the record, showing that Sheriff Wegener became aware that a warrant was issued to seize Plaintiffs' horses, including the reasons for seeking that warrant, and ratified or

otherwise gave his approval for the actions of Officers Gore, Hardey or Priestly.

Plaintiffs further appear to argue that the actions and decisions of Officer Gore and Officer Priestly are sufficient to create municipal liability. (ECF No. 117 at 9.) However, individual actions can only lead to municipal liability where those acts are taken by one with "*final policymaking authority*" or ratification by one with such authority. *Bryson*, 627 F.3d at 788 (emphasis added). Thus, in order to attach liability to the Park County Sheriff's Office solely based on the actions of Officers Gore or Priestly, this Court would first need to determine that they were final policymakers for that entity.

The decision as to whether an official has "final policymaking authority" is a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). The Tenth Circuit has identified three factors to consider when deciding whether someone has final policymaking authority: "(1) whether the official is meaningfully constrained by policies not of that official's own making; (2) whether the official's decisions are final – *i.e.*, are they subject to any meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority." *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995) (internal quotation marks omitted). "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur*, 475 U.S. at 481-83 (citation omitted). "The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id.*

Here, Plaintiffs have presented no evidence establishing that either Officers Gore or

9

Priestly were in a position of such authority, nor does this Court's review of the record reveal that either Defendant would have such authority, as both Defendants were merely the subordinates of Sheriff Wegener.   Because neither Officer Gore nor Priestly are final policymakers for the Park County Sheriff's Office, liability for the municipality may not attach based solely upon their actions.

## IV.     CONCLUSION

Based on the foregoing, it is ORDERED that Defendant Sheriff Wegener's Motion for Summary Judgment Regarding the Remaining Official Capacity Claims Pursuant to the Court's September 29, 2015 Order (ECF No. 115) is GRANTED.   The only claims remaining before the Court in this matter are one claim against Officer Hardey in her individual capacity under 42 U.S.C. § 1983 based on alleged Fourth Amendment violations relating to the seizure of certain of Plaintiffs' horses and Plaintiffs' breach of contract claim.

DATED this 18th day of November, 2015.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge