**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**TENH CIRCUIT**

**December 6, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

---

RANDALL J. HATLEE; RONALD L.
SWIFT,

      Plaintiffs - Appellants,

v.

ASHLEIGH OLDS,

      Defendant - Appellee.

No. 16-1065
(D.C. No. 1:13-CV-02469-RM-MJW)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]
———————————————————

Before **MATHESON**, **BACHARACH**, and **MORITZ**, Circuit Judges.
———————————————————

A Colorado state court jury acquitted Randall Hatlee and Ronald Swift

("Appellants") of animal cruelty for their treatment of horses under their care.  Appellants

then sued police officers involved in the investigation that led to the criminal charges.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of this
appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may
be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and
10th Cir. R. 32.1.

They also sued a veterinarian, Dr. Ashleigh Olds, who urged police officers to remove

sick horses from Appellants' ranch.

This appeal addresses only Appellants' claims against Dr. Olds.  Appellants

brought Fourth Amendment claims under 42 U.S.C. § 1983 (for unreasonable seizure and

malicious prosecution), and a state claim for malicious prosecution.

The district court granted Dr. Olds's motion for summary judgment on (1) the

Fourth Amendment claims, concluding she did not act under color of state law; and (2)

the state malicious prosecution claim, concluding Dr. Olds was entitled to statutory

immunity under Colorado law.  Exercising jurisdiction under 28 U.S.C. § 1291, we

affirm.

## I.   BACKGROUND

Appellants worked at the Echo Valley Ranch in Park County, Colorado.  *Hatlee v.*

*Hardey*, No. 13-CV-02469-RM-MJW, 2015 WL 5719644, at *3 (D. Colo. Sept. 29,

2015); Aplee. Supp. App. at 538.  They provided boarding for several horses.  *Hatlee*,

2015 WL 5719644, at *3.  In a separate case, Mr. Hatlee's ex-wife faced animal cruelty

charges in Routt County, Colorado, for her treatment of two horses named Little Feather

and Bear.  *Id.*  During the timeframe relevant to this case, Appellants boarded Little

Feather and Bear at Echo Valley Ranch.  *Id.*

Routt County Sheriff's Officers Dawn Smith and Del Valle conducted an animal-

welfare check at the ranch on February 13, 2012.  *Id.* at *3-4.  The officers discovered

that Little Feather had died and that Bear and six other horses were in "deplorable"

- 2 -

condition.  *Id.* at \*4.  Officer Smith reported the horses' conditions to the Park County

Sheriff's Department ("the Department").  *Id.*  She also coordinated with the Department

to remove Bear from the ranch.  *Id.*

On February 16, 2012, the Department directed Officer Cindy Hardey to conduct a

welfare check on all the horses at Echo Valley Ranch and to move Bear to Dr. Olds's

clinic for veterinary care.  *Id.*  Dr. Olds accompanied Officer Hardey to the ranch.  *Id.*

They discovered (1) Bear was "extremely thin, covered in urine and manure and unable

to rise or stand on his own," (2) a horse named Maggie was "emaciated, down, and sore-

covered" and "could not rise into a sitting position," and (3) the six other horses Officer

Smith had mentioned were "in dirty pens with empty food bins and empty or frozen-over

water buckets."  *Id.*  They also learned that "several other horses at the ranch had already

died that winter."  *Id.*  Dr. Olds took Bear to her clinic, where she provided veterinary

care.  *Id.* at \*5.  She also told Officer Hardey that she suspected the six other horses were

malnourished and urged Officer Hardey to remove them from the ranch.  *Id.*

In response, Officer Hardey issued a Notice of Warning to Appellants stating

(1) they had one month to get the horses to a healthy weight, (2) animal control would

conduct routine visits to the ranch to check on the horses, and (3) failure to rectify the

horses' condition would result in criminal prosecution.  *Id.*

Following the welfare check and warning, a local news channel reported a story

about the sick horses, prompting phone calls to the Department from members of the

public expressing discontent about the horses' plight.  *Id.*  Appellants assert that Dr. Olds

helped orchestrate the public outcry.  They state she (1) urged the Department to remove all the horses, (2) complained to two private citizens, Barbara Wright and Shelly Ferraro, about the Department's initial refusal to seize the horses, and (3) told Ms. Wright and Ms. Ferraro that the horses were in bad condition.  Appellants also suggest Ms. Wright led an effort to publicly disseminate information about the horses after she communicated with Dr. Olds.

Following the public outcry, the Department became concerned that someone would attempt to rescue the horses without authorization, so it coordinated with Appellants to remove the six horses from Echo Valley Ranch.  *Id.*  With Appellants' consent, the horses were removed and placed in temporary protective custody with a private citizen.  *Id.*

After removing the horses from Echo Valley Ranch, the Department sought a warrant to seize them.  *Id.* at \*6.  Officer Hardey submitted an affidavit in support of the warrant application.  *Id.*  The warrant issued and the Department seized the horses on February 22, 2012.  *Id.*  Before the seizure, Dr. Olds offered to care for the horses at her clinic, but the Department did not pursue the offer.

The Park County District Attorney's Office later filed criminal charges for animal cruelty against Appellants.  *Id.*  At a motion hearing before trial, the state trial court judge concluded there was no probable cause to issue the warrant because the horses were not in imminent danger at the time of the seizure.  *Id.*  He suppressed evidence gathered during the seizure and the horses were returned to Appellants.  *Id.*  A jury eventually

acquitted Appellants.  *Id.*

After the trial, Appellants sued Dr. Olds and the officers involved in the

investigation that led to their prosecution.  *Id.*  Appellants brought Fourth Amendment

claims under § 1983 for unreasonable seizure and malicious prosecution and a state law

claim for malicious prosecution against Dr. Olds.  The district court granted Dr. Olds's

motion for summary judgment, concluding she did not act under color of state law and

therefore could not be liable under § 1983.  *Id.* at *10.  The court also concluded Dr. Olds

was entitled to statutory immunity for the state malicious prosecution claim.  *Id.*

Appellants appealed only the district court's ruling on Dr. Olds's motion for summary

judgment.  They do not challenge the court's rulings regarding the other defendants.

## II.  DISCUSSION

### A. *Standard of Review*

We review a district court's grant of summary judgment de novo, applying the

same legal standard as the district court.  *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151,

1155 (10th Cir. 2016).

The district "court shall grant summary judgment if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  "When applying this standard, we view the

evidence and draw reasonable inferences therefrom in the light most favorable to the

nonmoving party."  *Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012) (quotations

omitted).

- 5 -

"As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

## B.  *Section 1983 and Color of State Law*

1.  **Legal Standard**

To state a claim under § 1983, a plaintiff must demonstrate that the defendant acted under color of state law (i.e., acted as a state actor).  *See Scott v. Hern*, 216 F.3d 897, 906 (10th Cir. 2000).  Appellants argue Dr. Olds did so because she engaged in joint action with the Department.  "[A] private party acts under color of state law if that party is a willful participant in joint action with the State or its agents.  To apply the joint action test, courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights."  *Schaffer*, 814 F.3d at 1157 (citation and quotations omitted).  Joint action exists if (1) the "public and private actors share . . . a common, unconstitutional goal" or (2) "there is a substantial degree of cooperative action between state and private officials."  *Id.* (citation and quotations omitted).

In a context like the one at hand, "furnishing information to law enforcement officers, without more, does not constitute joint action under color of state law."  *Id.*

"[J]oint action arises only when an officer's decision to initiate an arrest or a prosecution was not independent of a private party's influence." *Id.* (citing *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1454 (10th Cir. 1995)).[1]

2. **Analysis**

On appeal, Appellants have failed to demonstrate a genuine issue of material fact that Dr. Olds acted under color of state law.  Their state-action theory focuses solely on the February 22, 2012 seizure of the six horses and asserts:  "A private actor who exerts influence over a police investigation in order to cause the unlawful seizure of a person is deemed to be a state actor."  Aplt. Br. at 25 (citing *Gallagher*, 49 F.3d at 1453-57 and *Wagenmann v. Adams*, 829 F.2d 196, 209-11 (1st Cir. 1987)).

In Appellants' opening brief, the portion that addresses state action contains no relevant record citations.  Only two record citations appear.  Appellants first cite to deposition testimony of a Park County Sheriff's officer to support the factual assertion that the Department "was inundated with e-mails and telephone calls which rendered the animal control division dysfunctional."  *Id.* at 26-27 (citing Aplt. App. at 205-06).

---

[1] *See also Carey v. Continental Airlines, Inc.*, 823 F.2d 1402, 1404 (10th Cir. 1987) (concluding the plaintiff did not allege facts showing "his arrest resulted from any concerted action, whether conspiracy, prearranged plan, customary procedure, or policy that substituted the judgment of a private party for that of the police or allowed a private party to exercise state power"); *Lee v. Town of Estes Park*, 820 F.2d 1112, 1115 (10th Cir. 1987) (concluding a property owner who made a citizen's arrest was not a state actor because the police officer made an independent decision despite the property owners "insistent" complaints and there was no evidence of any "prearrangement" between the property owner and the police officer that led to the charging decision).

Second, they appear to cite Officer Hardey's testimony at the state trial court suppression

hearing to support the assertion that she did not have probable cause to believe the horses

were neglected when she submitted her affidavit.  *Id.* at 27-28 (citing Aplt. App. at 318-

20).  Neither factual assertion concerns Dr. Olds's conduct and therefore does not support

Appellants' argument that Dr. Olds was a state actor.

In addition to the two irrelevant factual assertions that have record support,

Appellants' argument section contains factual assertions with no record support:

- Dr. Olds "demanded" that the Department seize the horses.

- In an email to Deputy Hardey, Dr. Olds said the horses were suffering from starvation and were without food and water.

- Dr. Olds complained to Ms. Wright and Ms. Ferraro, who were not affiliated with the Department, about the Department's refusal to seize the horses.

- Ms. Wright emailed the Department to urge them to seize the horses.

- Ms. Wright sent an email to "Monika" saying "wait and see what happens when the e-mail blast goes out."

- Ms. Ferraro sent an email to the Department containing a "threat."

- Dr. Olds agreed to take the horses in at the Department request.

- Deputy Hardey lacked a reasonable basis to believe the horses were in danger.

Aplt. Br. at 26-27.

Appellants' opening brief refers to some of these assertions in the Statement of the

Case, along with record citations.  But the argument section does not contain record

citations supporting the assertions.  We are not required to consider unsupported factual

assertions.  *See* Fed. R. App. P. 28(a)(8)(A) (stating an argument section in an appellate brief "must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").

In any event, the unsupported assertions show only that Dr. Olds (1) urged the Department to seize the horses, (2) complained to Ms. Wright and Ms. Ferraro about the Department's refusal to seize the horses, and (3) agreed to care for the horses after the seizure, which does not establish state action on her part.  But they do not show she was a state actor.

First, as to Dr. Olds's statements to the Department, she had no authority over the Department, the Department initially refused the "demand," and the Department did not seize the horses or file charges until it visited the ranch, observed the horses, and communicated with Appellants' veterinarian.  Appellants have failed to provide evidence that Dr. Olds's complaints rose to the level of a "conspiracy, prearranged plan, customary procedure, or policy that substituted the judgment of a private party for that of the police or allowed a private party to exercise state power." *Schaffer*, 814 F.3d at 1158 (quotations omitted).

Second, as to Dr. Olds's statements to Ms. Wright and Ms. Ferraro, even if they may have contributed to the public outcry, it is unreasonable to infer they caused the

Department to seize the horses and prosecute Appellants.  *See Deherrera v. Decker Truck Line, Inc.*, 820 F.3d 1147, 1159 (10th Cir. 2016) (stating parties are entitled to only reasonable inferences at summary judgment).  Complaining to the police about a suspected crime does not constitute state action.  *See Carey v. Continental Airlines, Inc.*, 823 F.2d 1402, 1404 (10th Cir. 1987).

Third, Appellants assert the Department sought a warrant to seize the horses based on Dr. Olds's assurance that she would care for the horses.  Dr. Olds submitted uncontroverted evidence that the Department did not accept her offer to care for the horses.  In other words, there is no evidence Dr. Olds's willingness to care for the horses influenced the Department's decision to seize them.

In sum, Appellants failed to provide evidence that the Department's decision "was not independent of [Dr. Olds's] influence."  *Schaffer*, 814 F.3d at 1157.  They have therefore failed to raise a genuine dispute of material fact regarding Dr. Olds's status as a state actor under § 1983.  The district court's grant of summary judgment was proper.

### C.  *Statutory Immunity for Malicious Prosecution*

1. **Legal Standard**

Under Colorado law,

> A licensed veterinarian who, during the course of attending or treating an animal, has reasonable cause to know or suspect that the animal has been subjected to cruelty in violation of section 18-9-202, C.R.S., . . . shall report or cause a report to be made of the animal cruelty . . . to a local law enforcement agency or the bureau of animal protection.

C.R.S. § 12-64-121(1).

The same statute provides immunity to veterinarians who report animal cruelty in good faith: "A licensed veterinarian who in good faith reports a suspected incident of animal cruelty . . . shall be immune from liability in any civil or criminal action brought against the veterinarian for reporting the incident." C.R.S. § 12-64-121(4). Further, "[i]n any civil or criminal proceeding in which the liability of a veterinarian for reporting an incident . . . is at issue, the good faith of the veterinarian shall be presumed." *Id.*

2. **Analysis**

The district court did not err in granting summary judgment in favor of Dr. Olds on the malicious prosecution claim. In Dr. Olds's motion for summary judgment, she argued she had a good-faith belief to suspect the horses at Echo Valley Ranch had been subjected to animal cruelty. In their brief in opposition to summary judgment, Appellants stated, "The statutory immunity granted by C.R.S. § 13-64-121 does not apply to § 1983 claims. Nor does the statutory immunity require dismissal of the common law malicious prosecution claim. The facts alleged support the conclusion that there was not a good faith basis for Dr. Olds' accusations." Dist. Ct. Doc. 67 at 10 (citations omitted). Appellants also stated, "Exhibit 26 details why Dr. Olds was not acting reasonably, in good faith or with probable cause." *Id.* The exhibit contained deposition testimony and three reports summarizing some facts of the case. Appellants did not explain which facts in the exhibit showed a lack of good faith. The district court granted summary judgment in favor of Dr. Olds because Appellants failed to refer specifically to material facts in

- 11 -

their brief.  *Hatlee*, 2015 WL 5719644, at \*10.

On appeal, Appellants do not argue the district court erred in concluding there was

no genuine dispute of material fact concerning Dr. Olds's good faith.  Instead, they assert

Dr. Olds did not have reasonable cause to report the animal cruelty.  The statute imposes

a duty on veterinarians to report animal cruelty when they have reasonable cause to

suspect it.  C.R.S. § 12-64-121(1).  It also immunizes them from liability if they report

suspected animal cruelty in good faith.  C.R.S. § 12-64-121(4).  For purposes of

immunity, the question is whether Dr. Olds lacked good faith, not whether she lacked

reasonable cause.  Appellants have therefore failed to show how the district court erred in

granting summary judgment in favor of Dr. Olds based on her good faith.

In addition, Appellants contend for the first time on appeal that statutory immunity

at most applies to Dr. Olds's statements on the day of the welfare check but does not

apply to Dr. Olds's "persistent efforts" to convince the Department to file charges.  Aplt.

Br. at 29.  Appellants have forfeited that argument by failing to raise it before the district

court at summary judgment.  *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128

(10th Cir. 2011).  We cannot reverse based on a forfeited argument unless Appellants

have shown plain error.  *Id.*  And they do not argue plain error on appeal.

Finally, Appellants' opening brief characterizes the state claim (i.e., the Fourth

Claim for Relief) as one for malicious prosecution, wrongful seizure, and abuse of

process under Colorado law.  Appellants did not assert wrongful seizure or abuse of

process state claims in district court.  The Fourth Claim for Relief in the Amended

Complaint is vague.  And during summary judgment proceedings, Appellants, Dr. Olds,

and the district court referred to the claim as one for malicious prosecution.  *Hatlee*, 2015

WL 5719644, at \*6, \*10; Dist. Ct. Doc. 61 at 14-18 (Dr. Olds); Dist. Ct. Doc. 67 at 10

(Appellants).  Appellants have forfeited any state wrongful seizure or abuse of process

claims by raising them for the first time on appeal, and we cannot entertain those claims

because Appellants do not argue plain error.  *See Richison*, 634 F.3d at 1128.

## III.  **CONCLUSION**

We affirm the district court's judgment.

ENTERED FOR THE COURT,


Scott M. Matheson, Jr.
Circuit Judge